UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

AT LAW AND IN ADMIRALTY

CASE NO.: *14-60885 Civ-Zloch*
                                    *Hunt*

ANDREZEJ TARASEWICZ, individually, and
JOANNA PASCHILKE TARASEWICZ,
individually,

                    Plaintiffs,

vs.

ROYAL CARIBBEAN CRUISES LTD., d/b/a
ROYAL CARIBBEAN, RCL and/or RCCL;
ROYAL CARIBBEAN INTERNATIONAL, f/k/a
ROYAL CARIBBEAN CRUISE LINE; the M/V
"LIBERTY OF THE SEAS", her boilers, engines,
tackle, equipment, freight, appliances,
appurtenances, etc., *in rem*; KJETIL GJERSTAD,
individually; MARINE GLOBAL GROUP AS, an
active foreign Norwegian private limited company;
MARINE GLOBAL NORWAY AS, active foreign
Norwegian private limited company; MARINE
GLOBAL HOLDING AS, an active foreign
Norwegian private limited company; MARINE
GLOBAL SWEDEN AB, an active foreign Swedish
limited company; MARINE GLOBAL GROUP,
INC., a Florida foreign business organization;
YARA INTERNATIONAL ASA, an active
Norwegian public limited company; GREEN TECH
MARINE AS, an active foreign Norwegian private
limited company; GREEN TECH MARINE GGG
AB, an active foreign Swedish private limited
company; BENGT PETER KENNY
STRANDBERG, an individual; AMT MARINE
AND INDUSTRIAL ENGINEERING LTD., an
active foreign United Kingdom private limited
company; and CEGA GROUP SERVICES LTD., a
foreign United Kingdom private limited company

                    Defendants.

_____/

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

**VERIFIED COMPLAINT FOR DAMAGES WITH REQUEST FOR ISSUANCE OF
SUPPLEMENTAL RULE C WARRANT OF ARREST
(JURY TRIAL DEMANDED)**

COME NOW the Plaintiffs, ANDREZEJ TARASEWICZ and JOANNA PASCHILKE

TARASEWICZ, by and through undersigned counsel and hereby file this their **Verified**

**Complaint For Damages With Request For Issuance Of Supplemental Rule C Warrant Of**

**Arrest (Jury Trial Demanded)**, and sue the Defendants, ROYAL CARIBBEAN CRUISES

LTD., d/b/a ROYAL CARIBBEAN, RCL and/or RCCL; ROYAL CARIBBEAN

INTERNATIONAL f/k/a ROYAL CARIBBEAN CRUISE LINE; the M/V "LIBERTY OF THE

SEAS", her boilers, engines, tackle, equipment, freight, appliances, appurtenances, etc., *in rem*;

KJETIL GJERSTAD, individually; MARINE GLOBAL GROUP AS, an active foreign

Norwegian private limited company; MARINE GLOBAL NORWAY AS, active foreign

Norwegian private limited company; MARINE GLOBAL HOLDING AS, an active foreign

Norwegian private limited company; MARINE GLOBAL SWEDEN AB, an active foreign

Swedish limited company; MARINE GLOBAL GROUP, INC., a Florida foreign business

organization; YARA INTERNATIONAL ASA, an active Norwegian public limited company;

GREEN TECH MARINE AS, an active foreign Norwegian private limited company; GREEN

TECH MARINE GGG AB, an active foreign Swedish private limited company; BENGT PETER

KENNY STRANDBERG, an individual; AMT MARINE AND INDUSTRIAL ENGINEERING

LTD, an active foreign United Kingdom private limited company; and CEGA GROUP

SERVICES LTD., a foreign United Kingdom private limited company; and would allege as

follows:

2

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

### *THE PARTIES, JURISDICTION & VENUE*

1.       This is an action for damages in excess of $75,000.00, exclusive of attorney fees
and costs, and is within this Court's *Subject Matter Jurisdiction* pursuant to 28 USC §1332(a)(1)
as there is complete diversity between the parties. Additionally, portions of this action may fall
within the *Subject Matter Jurisdiction* of the Court pursuant to 46 U.S.C.§30104 (*The Jones Act*);
46 USC §10313 (Foreign and Intracoastal Voyages-Wages); 46 USC §10504(Coastwise Voyages-
Wages); 28 U.S.C. §1333 *(Admiralty, Maritime and Prize Cases),* 33 U.S.C. § 901, et seq.
*(Longshore and Harbor Worker's Compensation Act)*, and 46 U.S.C. §31301 (*Maritime Liens*).
The Plaintiffs, however, do NOT make an election under Rule 9(h) to proceed in admiralty, but
rather elect to proceed at common law and preserve their right to a jury trial for any and all claims
and defenses so triable.

### *The Plaintiffs*

2.       At all material times, Plaintiff, ANDREZEJ TARASEWICZ (hereinafter
"TARASEWICZ"), was and is a citizen of the country of Poland presently residing at a medical
facility within Brevard County, Florida where he is receiving medical treatment and care for his
many disabling and paralyzing injuries.

3.       At all material times, Plaintiff, JOANNA PASCHILKE TARASEWICZ, was and
is a citizen of the country of Poland presently residing in Poland and is believed to be 43 years
old.

4.       At all material times, Plaintiffs, ANDREZEJ TARASEWICZ and JOANNA
PASCHILKE TARASEWICZ, were and now are husband and wife, and lived together as
husband and wife at their residence in Poland until the Plaintiff, ANDREZEJ TARASEWICZ,
received his disabling injuries while working as a *Jones Act Seaman* on board the M/V

3

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

"LIBERTY OF THE SEAS" owned, operated and controlled by the Defendants herein.

5.     At all material times, the Plaintiff, ANDREZEJ TARASEWICZ, was and is a professional seafarer actively engaged in maritime employment onboard vessels within and without the United States including but not limited to onboard the M/V "LIBERTY OF THE SEAS".

6.     At all material times, the Plaintiff, ANDREZEJ TARASEWICZ, was and is a professional seafarer performing the ship's work, providing necessary services supporting the function and mission of the vessel, performing the duties of a crewmember, and was assigned to a particular vessel in navigation, to wit: the M/V "LIBERTY OF THE SEAS" where he performed all of his work on board ship and was exposed to the perils of the sea on a regular and routine basis.

7.     At all material times, Plaintiff, ANDREZEJ TARASEWICZ, was provided housing, room and board on the M/V "LIBERTY OF THE SEAS" by the Defendants who were, and are, the owners, operators, and/or charters of the vessel.

8.     At all material times, Plaintiff, ANDREZEJ TARASEWICZ, was and is a *Jones Act Seaman* entitled to all of the protections of the *Jones Act* as enumerated therein, and was in the employ of the Defendants, and each of them, as the owners, operators and charterers of the Defendant, M/V "LIBERTY OF THE SEAS", and was a member of the working crew of the M/V "LIBERTY OF THE SEAS" providing necessary services and contributing to the function and mission of the M/V "LIBERTY OF THE SEAS" under the ultimate direction and control of the ship's Master, KJETIL GJERSTAD.

9.     Alternatively and/or additionally, at all material times, the Plaintiff was a

4

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

"borrowed servant" working as a *Jones Act* Seaman on board the M/V "LIBERTY OF THE SEAS" performing the work of the ship, placed at the disposal, control and/or loaned to the owners, operators and charters of the vessel who assumed the right to control and/or exercised authoritative and substantive direction and control or right to control, over the performance of the particular mode, manner and/or activities of the Plaintiff at the times of the acts causing or contributing to the Plaintiff's injuries rendering the owners, operators, and charterers of the vessel the actual *Jones Act* employer of the Plaintiff responsible for the Plaintiff's injuries.

10.     Alternatively and/or additionally, at all material times, the Plaintiff was performing the ship's work on board the vessel for a considerable length of time at the direction, under the supervision and control of the owners, operators, and charterers of the vessel who furnished the tools and equipment necessary for the Plaintiff's work and had the right to discharge the Plaintiff at any time.

11.     Alternatively and/or additionally, at all material times, there was an agreement or understanding or other meeting of the minds between the owners, operators and/or charterers of the vessel, on one hand, and the remaining Defendants, on the other hand, whereby the owners, operators, and/or charterers of the vessel would be borrowing the services of the Plaintiff to perform ship's work on the vessel over a considerable length of time, would exercise substantive control over the activities of the temporary employment, would direct the Plaintiff's work activities, had the right to terminate the shipboard employment of the Plaintiff, and had an obligation to pay the Plaintiff, and, at all material times, the Plaintiff acquiesced to the work situation and/or expressly or impliedly consented to the employment.

12.     Alternatively and/or additionally, at all material times, the Plaintiff was a "Sieracki

5

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

or Vicarious Seaman or Seaman Pro Hac Vice", performing seaman's and ship's work and was a member of the crew providing necessary services and performing the duties traditionally performed by seaman and contributing to the function and mission of the M/V "LIBERTY OF THE SEAS".

13.     Alternatively and/or additionally, at all material times, the Plaintiff was a longshoreman and/or a passenger and/or a business invitee on board the M/V "LIBERTY OF THE SEAS".

### *The Defendants*

14.     At all material times, Defendant, ROYAL CARIBBEAN CRUISES LTD. d/b/a ROYAL CARIBBEAN, RCL and/or RCCL (hereinafter "RCCL"), is believed to be a foreign business organization incorporated in the Country of Liberia and registered to do business in Florida with its principal business located at 1050 Caribbean Way, Miami, FL 33132.

15.     At all material times, Defendant, ROYAL CARIBBEAN CRUISES LTD., is subject to the personal jurisdiction of this Court, as an entity operating, conducting, engaging in or carrying on a business venture in the State of Florida or having an office or agent in Florida or otherwise:

    (a)     Committing a tortious act within this State;

    (b)     Owning, using, possessing, or holding a mortgage or other lien on any real property within this State;

    (c)     Contracting to insure a person, property, or risk located within this State at the time of contracting;

    (d)     Engaging in substantial and not isolated activity within the State;

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

    (e)    Engaging in solicitation or service within this State;

    (f)    Producing materials; or things processed, serviced, or manufactured, used or consumed within this State in the ordinary course of commerce, trade, or use;

    (g)    Causing injury to persons or property within this State arising out of an act or omission by the Defendant outside this State;

    (h)    Breaching a contract in this State by failing to perform acts required by the contract to be performed in this State; and

    (i)    Operating vessels within the state of Florida; and

    (j)    Other acts or omissions to be revealed throughout the course of discovery.

16. At all material times, Defendant, ROYAL CARIBBEAN INTERNATIONAL f/k/a ROYAL CARIBBEAN CRUISE LINE (hereinafter "ROYAL CARIBBEAN INTERNATIONAL"), is believed to be a foreign business organization incorporated in the Country of Liberia and registered to do business in Florida with its principal business located at 1050 Caribbean Way, Miami, FL 33132.

17. At all material times, Defendant, ROYAL CARIBBEAN INTERNATIONAL, is subject to the personal jurisdiction of this Court, as an entity operating, conducting, engaging in or carrying on a business venture in the State of Florida or having an office or agent in Florida or otherwise:

    (a)    Committing a tortious act within this State;

    (b)    Owning, using, possessing, or holding a mortgage or other lien on any real property within this State;

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

(c)    Contracting to insure a person, property, or risk located within this State at the time of contracting;

(d)    Engaging in substantial and not isolated activity within the State;

(e)    Engaging in solicitation or service within this State;

(f)    Producing materials; or things processed, serviced, or manufactured, used or consumed within this State in the ordinary course of commerce, trade, or use;

(g)    Causing injury to persons or property within this State arising out of an act or omission by the Defendant outside this State;

(h)    Breaching a contract in this State by failing to perform acts required by the contract to be performed in this State; and

(i)    Operating vessels within the state of Florida; and

(j)    Other acts or omissions to be revealed throughout the course of discovery.

18.    At all material times, Plaintiff is informed and believes and thereupon alleges that Defendants, ROYAL CARIBBEAN CRUISES LTD. and ROYAL CARIBBEAN INTERNATIONAL, and each of them, owned, operated, managed, and controlled, the M/V "LIBERTY OF THE SEAS" and all operations on board the ship including the activities resulting in the Plaintiff's injuries.

19.    At all material times, Defendant, M/V "LIBERTY OF THE SEAS" (hereinafter "vessel"), her boilers, engines, tackle, equipment, freight, appurtenances, appliances, etc., was and is a 2007, 154,407 gross ton, 1,111.9 foot long, 184 foot wide, Bahamian flagged commercial passenger (non-cargo carrying) freedom class cruise ship capable of carrying

8

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

approximately 3,634 passengers and 1,360 crew at speeds up to 21.6 knots (25 mph) with its

home port in Fort Lauderdale, Florida bearing IMO No. 9330032.

20.     At all times material hereto, Defendant, KJETIL GJERSTAD, was and is believed

to be a resident of a Norway, is otherwise *sui juris,* and was, at all material times, the Master of

the M/V "LIBERTY OF THE SEAS" responsible for the ultimate direction and control of the

ship, her crew and the safety of the ship, the crew and all passengers on board.

21.     At all times material hereto, Plaintiff is informed, believes, and thereupon alleges,

that Defendant, KJETIL GJERSTAD, was and is an employee and/or agent of Defendants,

ROYAL CARIBBEAN CRUISES LTD. d/b/a ROYAL CARIBBEAN, RCL and/or RCCL;

ROYAL CARIBBEAN INTERNATIONAL f/k/a ROYAL CARIBBEAN CRUISE LINE,

working within the scope of his agency and/or employment rendering the Defendants'

vicariously responsibly for any acts or omissions of KJETIL GJERSTAD causing damage to the

Plaintiffs herein.

22.     At all times material hereto, Plaintiff is informed, believes, and thereupon alleges,

that Defendant, KJETIL GJERSTAD, was and is responsible for the prompt payment of wages to

the crew of the M/V "LIBERTY OF THE SEAS" including the Plaintiff herein.

23.     At all material times, Defendant, KJETIL GJERSTAD, is subject to the personal

jurisdiction of this Court, as an individual operating, conducting, engaging in or carrying on a

business venture in the State of Florida or having an office or agent in Florida or otherwise:

(a)     Committing a tortious act within this State;

(b)     Owning, using, possessing, or holding a mortgage or other lien on any real

property within this State;

9

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

(c) Contracting to insure a person, property, or risk located within this State at the time of contracting;

(d) Engaging in substantial and not isolated activity within the State;

(e) Engaging in solicitation or service within this State;

(f) Producing materials; or things processed, serviced, or manufactured, used or consumed within this State in the ordinary course of commerce, trade, or use;

(g) Causing injury to persons or property within this State arising out of an act or omission by the Defendant outside this State;

(h) Breaching a contract in this State by failing to perform acts required by the contract to be performed in this State;

(i) Operating vessels within the state of Florida;

(ii) Failing to pay crew wages within this state, and

(j) Other acts or omissions to be revealed throughout the course of discovery.

24.    At all material times, Defendant, MARINE GLOBAL GROUP AS, is and was an active private limited company existing under the laws of the country of Norway with its principal business located Stranden #87, No. N-250, Oslo, Norway and Bakkeveien, #12, N-4580, Lyngdal, Norway. MARINE GLOBAL GROUP AS was established on March 18, 2002 and registered on March 26, 2002 (Company Registration No. 984366183).

25.    At all material times, Defendant, MARINE GLOBAL GROUP AS, is and was an independent and significant supplier of mechanical and electrical installations as to both marine and land based industry all over the world. The alleged strength of Defendant, MARINE GLOBAL

10

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

GROUP AS, is the ability to deliver turnkey packages to customers within the fields of mechanical and electrical services.

26.     At all material times, Defendant, BENGT PETER KENNY STRANDBERG, was and is the Chairman of Defendant, MARINE GLOBAL GROUP AS, and is one hundred percent (100%) owner of Defendant, MARINE GLOBAL GROUP AS.

27.     At all material times, Defendant MARINE GLOBAL GROUP AS, is and was one hundred percent (100%) owner of Defendant, MARINE GLOBAL NORWAY, which in turn was ninety-two percent (92%) owner of Defendant, GREEN TECH MARINE AS, 63% of which has since been acquired by Defendant, YARA INTERNATIONAL ASAA.

28.     At all material times, Defendant, MARINE GLOBAL GROUP AS, is and was seventy percent (70%) owner of Defendant, MARINE GLOBAL HOLDINGS, which is and was an owner of unknown percentage of Defendant, MARINE GLOBAL SWEDEN AB.

29.     At all material times, Defendant, MARINE GLOBAL GROUP AS, claims to have offices within the state of Florida, and is subject to the personal jurisdiction of this Court, as an entity operating, conducting, engaging in or carrying on a business venture in the State of Florida or having an office or agent in Florida or otherwise:

    (a)     Committing a tortious act within this State;

    (b)     Owning, using, possessing, or holding a mortgage or other lien on any real property within this State;

    (c)     Contracting to insure a person, property, or risk located within this State at the time of contracting;

    (d)     Engaging in substantial and not isolated activity within the State;

    (e)     Engaging in solicitation or service within this State;

11

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

(f)     Producing materials; or things processed, serviced, or manufactured, used or consumed within this State in the ordinary course of commerce, trade, or use;

(g)     Causing injury to persons or property within this State arising out of an act or omission by the Defendant outside this State;

(h)     Breaching a contract in this State by failing to perform acts required by the contract to be performed in this State;

(i)     Operating vessels within the state of Florida; and

(j)     Other acts or omissions to be revealed throughout the course of discovery.

30.     At all material times, Defendant, MARINE GLOBAL NORWAY AS (hereinafter "MARINE GLOBAL NORWAY"), is an active private limited company existing under the laws of the country of Norway with a principal address of as Stranden #87, No. N-250,Oslo, Norway and Bakkeveien #12, N-4580, Lyngdal, Norway. Defendant, MARINE GLOBAL NORWAY, was established on December 7, 2006 and registered on January 6, 2007 (Company Registration No. 990687811).

31.     At all material times, Defendant, BENGT PETER KENNY STRANDBERG, was and is Chairman/Managing Director of Defendant, MARINE GLOBAL NORWAY.

32.     At all material times, Defendant, MARINE GLOBAL NORWAY, was a ninety-two percent (92%) owner of Defendant, GREEN TECH MARINE AS (now acquired by Defendant, YARA INTERNATIONAL ASA), and was and is owned one hundred percent (100%) by Defendant, MARINE GLOBAL GROUP AS, which in turn is and was owned one hundred percent by Defendant, BENGT PETER KENNY STRANDBERG.

33.     Defendant, MARINE GLOBAL NORWAY, is subject to the personal jurisdiction of this Court, as an entity operating, conducting, engaging in or carrying on a business venture in

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

the State of Florida or having an office or agent in Florida or otherwise:

    (a)    Committing a tortious act within this State;

    (b)    Owning, using, possessing, or holding a mortgage or other lien on any real property within this State;

    (c)    Contracting to insure a person, property, or risk located within this State at the time of contracting;

    (d)    Engaging in substantial and not isolated activity within the State;

    (e)    Engaging in solicitation or service within this State;

    (f)    Producing materials; or things processed, serviced, or manufactured, used or consumed within this State in the ordinary course of commerce, trade, or use;

    (g)    Causing injury to persons or property within this State arising out of an act or omission by the Defendant outside this State;

    (h)    Breaching a contract in this State by failing to perform acts required by the contract to be performed in this State;

    (i)    Operating vessels within the state of Florida; and

    (j)    Other acts or omissions to be revealed throughout the course of discovery.

    34.    At all material times, Defendant, MARINE GLOBAL HOLDING AS (hereinafter "MARINE GLOBAL HOLDING"), is an active private limited company existing under the laws of the country of Norway with its principal business located at Stranden #87, No. N-250, Oslo Norway and Bakkeveien #12, N-4580, Lyngdal, Norway. Defendant, MARINE GLOBAL HOLDING, was established on June 9, 2011 and registered on August 30, 2011 (Company Registration No. 997282620).

    35.    At all material times, Defendant, BENGT PETER KENNY STRANDBERG, was and is the Chairman/Managing Director of Defendant MARINE GLOBAL HOLDING.

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

36.     At all material times, Defendant, MARINE GLOBAL HOLDING was and is owned seventy percent (70%) by Defendant, MARINE GLOBAL GROUP AS, which in turn was and is one hundred percent owned by Defendant, BENGT PETER KENNY STRANDBERG.

37.     At all material times, Defendant, MARINE GLOBAL HOLDING, is and was an owner of unknown percentage Defendant, MARINE GLOBAL SWEDEN.

38.     Defendant, MARINE GLOBAL HOLDING, is subject to the personal jurisdiction of this Court, as an entity operating, conducting, engaging in or carrying on a business venture in the State of Florida or having an office or agent in Florida or otherwise:

    (a)     Committing a tortious act within this State;

    (b)     Owning, using, possessing, or holding a mortgage or other lien on any real property within this State;

    (c)     Contracting to insure a person, property, or risk located within this State at the time of contracting;

    (d)     Engaging in substantial and not isolated activity within the State;

    (e)     Engaging in solicitation or service within this State;

    (f)     Producing materials; or things processed, serviced, or manufactured, used or consumed within this State in the ordinary course of commerce, trade, or use;

    (g)     Causing injury to persons or property within this State arising out of an act or omission by the Defendant outside this State;

    (h)     Breaching a contract in this State by failing to perform acts required by the contract to be performed in this State;

    (i)     Operating vessels within the state of Florida; and

    (j)     Other acts or omissions to be revealed throughout the course of discovery.

39.     At all material times, Defendant, MARINE GLOBAL SWEDEN AB (hereinafter "MARINE GLOBAL SWEDEN"), is an active limited company existing under the laws of the

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

country of Norway with its principal place of business located at Ringögatan #3, 41707, Gothenburg, Sweden. Defendant, MARINE GLOBAL SWEDEN was established on December 2, 2008 (Company Registration No. 556771-3226).

40.     At all material times, Defendant, BENGT PETER KENNY STRANDBERG, was and is the Chairman/Member of Defendant, MARINE GLOBAL SWEDEN.

41.     At all material times, Defendant, MARINE GLOBAL SWEDEN, is owned by an unknown percentage by Defendant, MARINE GLOBAL HOLDING, which is seventy percent (70%) owned by Defendant, MARINE GLOBAL GROUP AS, which in turn is one hundred percent (100%) owned by Defendant, BENGT PETER KENNY STRANDBERG.

42.     Defendant, MARINE GLOBAL SWEDEN, is subject to the personal jurisdiction of this Court, as an entity operating, conducting, engaging in or carrying on a business venture in the State of Florida or having an office or agent in Florida or otherwise:

(a)     Committing a tortious act within this State;

(b)     Owning, using, possessing, or holding a mortgage or other lien on any real property within this State;

(c)     Contracting to insure a person, property, or risk located within this State at the time of contracting;

(d)     Engaging in substantial and not isolated activity within the State;

(e)     Engaging in solicitation or service within this State;

(f)     Producing materials; or things processed, serviced, or manufactured, used or consumed within this State in the ordinary course of commerce, trade, or use;

(g)     Causing injury to persons or property within this State arising out of an act or omission by the Defendant outside this State;

(h)     Breaching a contract in this State by failing to perform acts required by the

15

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

      contract to be performed in this State;

(i)     Operating vessels within the state of Florida; and

(j)     Other acts or omissions to be revealed throughout the course of discovery.

43.     At all material times, Defendant, MARINE GLOBAL GROUP, INC. (hereinafter "MARINE GLOBAL GROUP"), is believed to be a foreign business organization with its principal business located at 7280 NW 7th Street, Suite 106, Miami, FL 33126.

44.     Defendant, MARINE GLOBAL GROUP, is subject to the personal jurisdiction of this Court, as an entity operating, conducting, engaging in or carrying on a business venture in the State of Florida or having an office or agent in Florida or otherwise:

(a)     Committing a tortious act within this State;

(b)     Owning, using, possessing, or holding a mortgage or other lien on any real property within this State;

(c)     Contracting to insure a person, property, or risk located within this State at the time of contracting;

(d)     Engaging in substantial and not isolated activity within the State;

(e)     Engaging in solicitation or service within this State;

(f)     Producing materials; or things processed, serviced, or manufactured, used or consumed within this State in the ordinary course of commerce, trade, or use;

(g)     Causing injury to persons or property within this State arising out of an act or omission by the Defendant outside this State;

(h)     Breaching a contract in this State by failing to perform acts required by the contract to be performed in this State;

(i)     Operating vessels within the state of Florida; and

(j)     Other acts or omissions to be revealed throughout the course of discovery.

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

45.     At all material times, Defendant, YARA INTERNATIONAL ASA (hereinafter "YARA"), is an active public limited company existing under the laws of the country of Norway with its principal place of business located at Bygdøy Allé 2, P. O. Box 2464, Solli, NO–0202 Oslo, Norway. YARA established on November 12, 2003 (Register Company No. 986228608).

46.     At all material times, Defendant, YARA, had a sales office (Yara North America, Inc.) located 100 North Tampa Street, Suite 3200, Tampa, Florida 33602, as well as sales teams located in West Virginia, Virginia, Pennsylvania, New York, Washington DC, Maryland, Delaware, New Jersey, North Carolina, South Carolina, South Dakota, Minnesota, Wisconsin, Texas, Louisiana, Arkansas, Missouri, Nebraska, Kansas, Oklahoma, Alabama, Georgia, Mississippi, Tennessee, Iowa, Illinois, Kentucky, Indiana, Ohio and all of the New England States excluding Maine.

47.     At all material times, the Plaintiff is informed and believes and thereupon alleges that Defendant, YARA, has acquired a sixty-three percent (63%) interest in Defendant, GREEN TECH MARINE AS, in an effort to expand its emissions control business and add to its nitrogen oxide portfolio recognizing that in the next ten years, ships worldwide will need equipment to comply with the latest International Maritime Organization exhaust gas emission rules designed to reduce sulphur oxide emission which causes a wide variety of health and environmental problems.

48.     At all material times, Defendant, YARA, is subject to the personal jurisdiction of this Court, as an entity operating, conducting, engaging in or carrying on a business venture in the State of Florida or having an office or agent in Florida or otherwise:

(a)      Committing a tortious act within this State;

17

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

    (b)    Owning, using, possessing, or holding a mortgage or other lien on any real property within this State;

    (c)    Contracting to insure a person, property, or risk located within this State at the time of contracting;

    (d)    Engaging in substantial and not isolated activity within the State;

    (e)    Engaging in solicitation or service within this State;

    (f)    Producing materials; or things processed, serviced, or manufactured, used or consumed within this State in the ordinary course of commerce, trade, or use;

    (g)    Causing injury to persons or property within this State arising out of an act or omission by the Defendant outside this State;

    (h)    Breaching a contract in this State by failing to perform acts required by the contract to be performed in this State;

    (i)    Operating vessels within the state of Florida; and

    (j)    Other acts or omissions to be revealed throughout the course of discovery.

49.    At all material times, Defendant, GREEN TECH MARINE AS (hereinafter "GREEN TECH MARINE"), is an active private limited company existing under the laws of the country of Norway with its principal place of business located at Stranden 87, Oslo, Norway. Defendant, GREEN TECH MARINE, was established on November 26, 2010 and registered on December 22, 2010 (Company Registration No. 996294609).

50.    At all material times, Defendant, GREEN TECH MARINE, developed innovative and high-performance solutions within environmental and energy-saving technology for the maritime and offshore industries. Defendant, GREEN TECH MARINE, has extensive experience and expertise in the marine industry and has the goal to become a major player within the fields of exhaust gas cleaning and energy saving for ships that will result in significant financial rewards

18

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

for their owners.

51.     At all material times, Defendant, BENGT PETER KENNY STRANDBERG, was

the Managing Director/Board Member/President/CEO of Defendant, GREEN TECH MARINE.

52.     At all material times, Defendant, GREEN TECH MARINE, was owned ninety-two

percent (92%) by Defendant, MARINE GLOBAL NORWAY, which in turn is and was owned

one hundred percent (100%) by Defendant, MARINE GLOBAL GROUP AS, which in turn is and

was owned by Defendant, BENGT PETER KENNY STRANDBERG.

53.     At all material times, on or around April 2014, the Plaintiff is informed, and

believes and thereupon alleges, that 63% of Defendant, GREEN TECH MARINE, was acquired

by Defendant, YARA INTERNATIONAL ASA.

54.     At all material times, Defendant, GREEN TECH MARINE, is subject to the

personal jurisdiction of this Court, as an entity operating, conducting, engaging in or carrying on

a business venture in the State of Florida or having an office or agent in Florida or otherwise:

    (a)     Committing a tortious act within this State;

    (b)     Owning, using, possessing, or holding a mortgage or other lien on any real
        property within this State;

    (c)     Contracting to insure a person, property, or risk located within this State at
        the time of contracting;

    (d)     Engaging in substantial and not isolated activity within the State;

    (e)     Engaging in solicitation or service within this State;

    (f)     Producing materials; or things processed, serviced, or manufactured, used
        or consumed within this State in the ordinary course of commerce, trade,
        or use;

    (g)     Causing injury to persons or property within this State arising out of an act
        or omission by the Defendant outside this State;

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

    (h)    Breaching a contract in this State by failing to perform acts required by the contract to be performed in this State;

    (i)    Operating vessels within the state of Florida; and

    (j)    Other acts or omissions to be revealed throughout the course of discovery.

55.    At all material times, Defendant, GREEN TECH MARINE GGG AB, was and is an active limited company existing under the laws of Sweden with its principal place of business located at Ringögatan #3, 41707, Gothenburg, Sweden. Defendant, GREEN TECH MARINE GGG AB, was registered on July 28, 2011 (Company Registration No. 556860-1321).

56.    At all material times, Defendant, BENGT PETER KENNY STRANDBERG, was and is a member of Defendant, GREEN TECH MARINE GGG AB.

57.    Defendant, GREEN TECH MARINE GGG AB, is subject to the personal jurisdiction of this Court, as an entity operating, conducting, engaging in or carrying on a business venture in the State of Florida or having an office or agent in Florida or otherwise:

    (a)    Committing a tortious act within this State;

    (b)    Owning, using, possessing, or holding a mortgage or other lien on any real property within this State;

    (c)    Contracting to insure a person, property, or risk located within this State at the time of contracting;

    (d)    Engaging in substantial and not isolated activity within the State;

    (e)    Engaging in solicitation or service within this State;

    (f)    Producing materials; or things processed, serviced, or manufactured, used or consumed within this State in the ordinary course of commerce, trade, or use;

    (g)    Causing injury to persons or property within this State arising out of an act or omission by the Defendant outside this State;

20

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

    (h)    Breaching a contract in this State by failing to perform acts required by the contract to be performed in this State;

    (i)    Operating vessels within the state of Florida; and

    (j)    Other acts or omissions to be revealed throughout the course of discovery.

58.    At all material times, Defendant, BENGT PETER KENNY STRANDBERG (hereinafter "PETER STRANDBERG"), was and is the Managing Director/Board Member/President/CEO of Defendant GREEN TECH MARINE AS; was and is Member of Defendant, GREEN TECH MARINE GGG AB; was and is Chairman/Managing Director of Defendant, MARINE GLOBAL NORWAY AS; was and is Chairman/Member of Defendant, MARINE GLOBAL SWEDEN AB; was and is Chairman/Managing Director of Defendant, MARINE GLOBAL HOLDING AS; and was and is Chairman of Defendant, MARINE GLOBAL GROUP AS.

59.    At all material times, Defendant, PETER STRANDBERG, was and is one hundred percent (100%) owner of Defendant, MARINE GLOBAL GROUP AS, which is and was one hundred percent (100%) owner of Defendant, MARINE GLOBAL NORWAY, which was ninety-two percent (92%) owner of Defendant, GREEN TECH MARINE AS before 63 percent of the company was acquired by Defendant, YARA INTERNATIONAL ASA.

60.    At all material times, Defendant, PETER STRANDBERG, was and is one hundred percent owner of Defendant, MARINE GLOBAL GROUP AS, which is and was seventy percent (70%) owner of Defendant, MARINE GLOBAL HOLDING, which is and was an unknown percentage owner of Defendant, MARINE GLOBAL SWEDEN AB.

61.    At all material times, Defendant, PETER STRANDBERG, is subject to the

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

personal jurisdiction of this Court, as an individual owning real property in the state of Florida

located at 5225 Collins Avenue, #1415, Miami, Beach, Florida 33149 (Parcel No. 02-3214-019-

1570), and also operating, conducting, engaging in or carrying on a business venture in the State

of Florida or having an office or agent in Florida or otherwise:

    (a)    Committing a tortious act within this State;

    (b)    Owning, using, possessing, or holding a mortgage or other lien on any real property within this State;

    (c)    Contracting to insure a person, property, or risk located within this State at the time of contracting;

    (d)    Engaging in substantial and not isolated activity within the State;

    (e)    Engaging in solicitation or service within this State;

    (f)    Producing materials; or things processed, serviced, or manufactured, used or consumed within this State in the ordinary course of commerce, trade, or use;

    (g)    Causing injury to persons or property within this State arising out of an act or omission by the Defendant outside this State;

    (h)    Breaching a contract in this State by failing to perform acts required by the contract to be performed in this State;

    (i)    Operating vessels within the state of Florida; and

    (j)    Other acts or omissions to be revealed throughout the course of discovery.

62.    At all material times, Defendant, AMT MARINE AND INDUSTRIAL

ENGINEERING LTD. (hereinafter "AMT MARINE"), is an active private limited company

existing under the laws of the country of the United Kingdom with its principal place of business

located at 3 Brindley Road, Cardiff, CF11 8TX, Wales, UK. Defendant, AMT MARINE, was

registered on March 17, 1989 (Companies House Registration No. 02362540).

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

63.     At all material times, Defendant, AMT MARINE, supplied heavy engineering services within the marine sector. Defendant, AMT MARINE'S, customer base includes the major cruise industry corporations as it specializes in providing a wide range of services while keeping the ship in service. Defendant, AMT MARINE, is based in Cardiff in the United Kingdom, but the majority of Defendant, AMT MARINE'S, work is carried out by small teams of engineers on board ships or in dry docks.

64.     Defendant, AMT MARINE, is subject to the personal jurisdiction of this Court, as an entity operating, conducting, engaging in or carrying on a business venture in the State of Florida or having an office or agent in Florida or otherwise:

    (a)    Committing a tortious act within this State;

    (b)    Owning, using, possessing, or holding a mortgage or other lien on any real property within this State;

    (c)    Contracting to insure a person, property, or risk located within this State at the time of contracting;

    (d)    Engaging in substantial and not isolated activity within the State;

    (e)    Engaging in solicitation or service within this State;

    (f)    Producing materials; or things processed, serviced, or manufactured, used or consumed within this State in the ordinary course of commerce, trade, or use;

    (g)    Causing injury to persons or property within this State arising out of an act or omission by the Defendant outside this State;

    (h)    Breaching a contract in this State by failing to perform acts required by the contract to be performed in this State;

    (i)    Operating vessels within the state of Florida; and

    (j)    Other acts or omissions to be revealed throughout the course of discovery.

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

65.     At all material times, Defendant, CEGA GROUP SERVICES LTD. (hereinafter "CEGA"), is believed to be a foreign business organization with its principal place of business located at Funtington Park, Cheesmans Lane, Funtington, Chichester, West Sussex, PO18 8UE, United Kingdom.

66.     Defendant, CEGA, is subject to the personal jurisdiction of this Court, as an entity operating, conducting, engaging in or carrying on a business venture in the State of Florida or having an office or agent in Florida or otherwise:

   (a)     Committing a tortious act within this State;

   (b)     Owning, using, possessing, or holding a mortgage or other lien on any real property within this State;

   (c)     Contracting to insure a person, property, or risk located within this State at the time of contracting;

   (d)     Engaging in substantial and not isolated activity within the State;

   (e)     Engaging in solicitation or service within this State;

   (f)     Producing materials; or things processed, serviced, or manufactured, used or consumed within this State in the ordinary course of commerce, trade, or use;

   (g)     Causing injury to persons or property within this State arising out of an act or omission by the Defendant outside this State;

   (h)     Breaching a contract in this State by failing to perform acts required by the contract to be performed in this State;

   (i)     Operating vessels within the state of Florida; and

   (j)     Other acts or omissions to be revealed throughout the course of discovery.

*Venue*

67.     At all material times, the actions giving rise to this Complaint occurred within the geographic jurisdictional boundaries of the United States District Court for the Southern District

24

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

of Florida.

68.     Venue is proper in this Court pursuant to 28 USC §1391 as the Defendants conduct

business in Dade, Broward and Palm Beach Counties, Florida, which are the within the jurisdiction

of this District; a substantial part of the events giving rise to the claim occurred in Dade, Broward

and Palm Beach Counties, Florida; and the Defendant vessel is, or soon will be, located in Broward

County, Florida.

### DIRECT LIABILITY, AGENCY, JOINT VENTURE, STRATEGIC PARRTERSHIP

#### *Direct Liability*

69.     At all material times, Defendants, RCCL, ROYAL CARIBBEAN

INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE

GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL

HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN

TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE,

held themselves out as experts in marine construction, design, manufacture, outfitting, repair, sale,

inspecting, installing, repairing, surveying, modifying, designing, brokerage, classifying,

warrantying, servicing and/or the accrediting of passenger cruise vessels including marine exhaust

scrubber systems to be installed and/or modified and/or repaired on various types of vessels,

including the M/V "LIBERTY OF THE SEAS", and at all times acted through their officers,

employees and agents within the scope of their employment or agency.

70.     At all material times, the marine exhaust scrubber systems installed and/or modified

and/or repaired on the M/V "LIBERTY OF THE SEAS" were produced, manufactured, made,

25

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

fabricated, constructed, prepared, vended, formulated, wholesaled, installed, warranted, repaired,

serviced, retailed, supplied, designed, re-manufactured, distributed, stored, assembled, packaged,

inspected, and/or warehoused by Defendants, RCCL, ROYAL CARIBBEAN

INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE

GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL

HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN

TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE.

71.     At all material times, Defendants, RCCL, ROYAL CARIBBEAN

INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE

GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL

HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN

TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE,

were engaged in, controlled or substantially participated in the producing, making, fabricating,

constructing, preparing, vending, formulating, wholesaling, installation, repair, retailing, supply,

design, manufacture, re-manufacture, distribution, storage, assembly, packaging, inspection,

warehousing, labeling, warrantying, servicing, modifying and/or sale of certain marine exhaust

scrubber systems, products and equipment including the exhaust scrubber systems installed on the

M/V "LIBERTY OF THE SEAS", and used in the maritime commercial industry and were so

engaged within and without the state of Florida, and were gaining profit or other benefit as a result

thereof, and were responsible in whole or in part for the marine exhaust scrubber systems' safety,

and were in the chain of distribution of the marine exhaust systems installed and/or modified on

the M/V "LIBERTY OF THE SEAS".

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

72.     At   all   material   times,   Defendants,   RCCL,   ROYAL   CARIBBEAN
INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE
GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL
HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN
TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE,
were direct brokers, sellers, suppliers, servicers, warrantors and were and are engaged in the
business of marine inspection, construction, design, manufacture, outfitting, repair, installation,
modification, sale, warranting and servicing of various types of marine exhaust scrubber systems
to the general public, including the marine exhaust scrubber systems inspected, constructed,
designed, manufactured, outfitted, repaired, installed, modified, serviced, sold and warranted to
the Plaintiff herein and installed on the M/V "LIBERTY OF THE SEAS".

73.     At   all   material   times,   Defendants,   RCCL,   ROYAL   CARIBBEAN
INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE
GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL
HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN
TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE,
were and are successors in interest and/or alter egos of each other, engaged in the business of
marine construction, design, manufacture, outfitting, repair, servicing, warrantying, modification,
distribution, advertising, marketing, brokerage and the sale of various types of marine exhaust
scrubber systems, including the marine exhaust system installed and/or modified on the M/V
"LIBERTY OF THE SEAS" in and around Broward County, Florida.

74.     At   all   material   times,   Defendants,   RCCL,   ROYAL   CARIBBEAN

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE, determined or participated in determining the scheduling and pricing for the marine exhaust scrubber systems sold in the United States including, but not limited to, the marine exhaust system installed on the M/V "LIBERTY OF THE SEAS".

75.    At all material times, Plaintiff was and is informed, believes and thereupon alleges that Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE, received a percentage of the receipts that are generated by the sale of the marine exhaust systems in the United States including, but not limited to, the exhaust scrubber systems installed on the M/V "LIBERTY OF THE SEAS".

*Agency*

76.    Alternatively and/or additionally, on or before the installation and/or modification and/or repair of the marine exhaust scrubber systems on the M/V "LIBERTY OF THE SEAS", Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER

28

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

STRANDBERG, and AMT MARINE, became agents, actual or apparent, of each other relative to the advertising, sale, maintenance, repair, servicing, modifying and warranty of marine exhaust scrubber systems sold and/or installed on vessels in the United States, including the exhaust scrubber systems installed and/or modified and/or repaired on board the M/V "LIBERTY OF THE SEAS". The Defendants, with the addition of CEGA, also became agents, actual or apparent, of each other relative to providing the Plaintiff maintenance, cure, earned and unearned wages following his injuries.

77.     Alternatively and/or additionally, at all material times, a non-disclosed agency and/or employment and/or contractual relationship and/or other meeting of the minds existed between RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS" KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, and CEGA rendering RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, and CEGA vicariously liable for each other's acts and omissions in addition to being liable for their own respective acts and omissions relative to the advertising, brokerage, sale, supply, delivery, service, repair, modification, installation, servicing and warranty of marine exhaust scrubber systems sold and/or installed on vessels in the United States, including the exhaust system installed and/or modified and/or repaired on board the M/V "LIBERTY OF THE SEAS", and the provision

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

of maintenance, cure, earned and unearned wages to the Plaintiff after his injuries.

78.     Alternatively and/or additionally, at all material times, Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, and CEGA were the agents, actual or apparent, or the employees of each other, and acted within the course and scope of their agency and/or employment relative to the marine inspection, construction, design, manufacture, outfitting, advertising, brokerage, sale, supply, delivery, service, repair, modification, installation, servicing and warranty of marine exhaust scrubber systems sold and/or installed on vessels in the United States, including on the M/V "LIBERTY OF THE SEAS", and the provision of maintenance, cure, earned and unearned wages to the Plaintiff after his injuries.

79.     Alternatively and/or additionally, Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, and CEGA, held each other out to the public in general, as agents and/or employees of each other relative to the advertising, brokerage, sale, supply, delivery, service, repair, installation, modification and warranty of marine exhaust scrubber systems sold and/or installed on vessels in the United States, including the exhaust scrubber systems installed and/or modified on board the M/V "LIBERTY OF THE SEAS", and the provision of maintenance, cure, earned and unearned

30

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

wages to the Plaintiff after his injuries.

80.     Alternatively and/or additionally, Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, and CEGA, as the employees and/or agents of each other, advertised, installed, brokered, sold, supplied, delivered, serviced, repaired, modified and warranted marine exhaust scrubber systems sold and/or installed on vessels in the United States, including the exhaust scrubber systems installed and/or modified on board the M/V "LIBERTY OF THE SEAS", and relative to the provision of maintenance, cure, earned and unearned wages to the Plaintiff after his injuries.

81.     Alternatively or additionally, Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, and CEGA, were performing an essential function for each of the others by the advertising, installing, brokering, selling, supplying, delivering, servicing, repairing, modifying and warrantying marine exhaust scrubber systems sold and/or installed on vessels in the United States, including the exhaust scrubber systems installed and/or modified on board the M/V "LIBERTY OF THE SEAS", and relative to the provision of maintenance, cure, earned and unearned wages to the Plaintiff after his injuries.

82.     At all material times, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

"LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE

GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN,

MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE

GGG, PETER STRANDBERG, AMT MARINE, and CEGA accepted and acknowledged the

agency and/or employment and/or contractual relationship and/or parent-controlling-subsidiary

between them.

### *Joint Venture/Strategic Partnership*

83.     Alternatively and/or additionally, at all material times, RCCL, ROYAL

CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD,

MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL

HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN

TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, and

CEGA were joint venturers, partners, and/or strategic partners engaged in a joint venture,

partnership and/or strategic partnership in purpose, in concerted action, or joint service regarding

the advertising, brokerage, sale, supply, delivery, service, repair, modification and warranty of

marine exhaust scrubber systems sold and/or installed on vessels in the United States, including

the exhaust scrubber systems installed and/or modified and/or replaced on board the M/V

"LIBERTY OF THE SEAS", and the provision of maintenance, cure, earned and unearned wages

to the Plaintiff after his injuries.

84.     At all material times, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V

"LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE

GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN,

MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

GGG, PETER STRANDBERG, AMT MARINE, and CEGA benefitted from the joint venture, partnership and/or strategic partnership financially.

85.     At all material times, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, and CEGA shared in the profits as well as the losses arising from the advertising, brokerage, sale, supply, delivery, service, repair, modification and warranty of marine exhaust scrubber systems sold and/or installed on vessels in the United States, including the exhaust scrubber systems installed and/or modified on board the M/V "LIBERTY OF THE SEAS", and the provision of maintenance, cure, earned and unearned wages to the Plaintiff following his injuries.

86.     At all material times, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, and CEGA, paid for and/or participated in the payment for marketing and other expenses directed at the advertising, brokerage, sale, supply, delivery, service, repair, modification and warranty of marine exhaust scrubber systems sold and/or installed and/or repaired on vessels in the United States to United States and Florida citizens or businesses, including the M/V "LIBERTY OF THE SEAS", and the provision of maintenance, cure, earned and unearned wages to the Plaintiff following his injury, and profited and lost funds based on such expenditures.

33

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

87.    At all material times, the names of Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, and CEGA, were identified with the advertising, brokerage, sale, supply, delivery, service, repair, modification and warranty of marine exhaust scrubber systems sold and/or installed on vessels in the United States, including the exhaust scrubber systems installed and/or modified and/or repaired on board the M/V "LIBERTY OF THE SEAS", and the provision of maintenance, cure, earned and unearned wages to the Plaintiff following his injuries.

88.    As joint venturers, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, and CEGA, were and are vicariously liable for each other's acts or omissions, including acts of negligence and/or breach of contract.

### *GENERAL ALLEGATIONS*

89.    At all material times, Plaintiff, TARASEWICZ, was and is a citizen of the country of Poland presently residing within Brevard, County, Florida where he is receiving medical treatment and care for his many disabling and paralyzing injuries incurred at the hands of the Defendants, and each of them, herein.

90.    At all material times, Plaintiff, JOANNA PASCHILKE TARASEWICZ, was and is a citizen of the country of Poland presently residing in Poland.

34

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

91.    At all material times, Plaintiff, TARASEWICZ, is 48 years old, is married to

JOANNA PASCHILKE TARASEWICZ, and has a 22 year old daughter, one brother, and an

elderly mother.

92.    At all material times, the Plaintiff was and is a professional seafarer actively

engaged in maritime employment onboard vessels within and without the United States including

but not limited to onboard the M/V "LIBERTY OF THE SEAS".

93.    At all material times, the Plaintiff was and is a *Jones Act Seaman* entitled to all of

the protections of the *Jones Act* as enumerated therein, and was in the employ of the Defendants,

and each of them, as the owners, operators and charterers of the Defendant, M/V "LIBERTY OF

THE SEAS", and was a member of the crew of the M/V "LIBERTY OF THE SEAS".

94.    At all material times, the Plaintiff contributed to the financial support of his wife,

daughter and mother.

95.    At all material times, the Plaintiff graduated from the Polish equivalent to United

States high school receiving a diploma in technical construction in Gdansk, Poland which

permitted him to work in the shipyards between approximately 1985-2000 where he received

additional certificates in welding and pipefitting.

96.    At all material times, the Plaintiff has been consistently employed as a seaman

since approximately 1988 working on cruise vessels including the Celebrity Millennium (Royal),

Jewel of the Seas (Royal), Brilliance of the Seas (Royal), Celebrity Infinity (Royal), Disney

Magic, Crystal Cruise Symphony, Splendor of the Seas (Royal), and Liberty of the Seas (Royal),

among others, repairing engines and other machinery essential to the function and mission of the

vessels.

97.    At all material times, the Plaintiff would return to shipyards in Gdansk, Poland to

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
<u>Verified Complaint for Damages</u>

work and maintain his skills between shipboard assignments on the cruise lines.

98.  At all material times, and as more specifically set forth herein, the Plaintiff was employed to work on board the RCCL vessel, "Liberty of the Seas", from January, 2012 through April, 2012, and again, beginning in September, 2012 through July 31, 2013. Unfortunately, the Plaintiff was injured at the hands of the Defendants, and each of them, on or before December 13, 2012, when he suffered a massive ischemic stroke that had gone misdiagnosed by shipboard crew physicians who failed to evacuate him days prior while working on board the "Liberty of the Seas", and was admitted to the Broward General Hospital Critical Care Unit where he remained unconscious until January, 2013.

99.  At all material times, while the Defendants initially responded to provide land based medical care and treatment to the Plaintiff who has been paralyzed as a result of his injuries, the Plaintiff has since been abandoned here in the United States to fend for himself in a country where he has no relatives, has no money, cannot care for himself, and cannot speak the English language.

**<u>The RCCL Pilot Program and Installation of the Prototype Scrubber System</u>**

100.  At all material times, the Bush Administration, in 2007, was concerned about air pollution arising from the use of maritime fuels containing a high sulfur content and the emission of PM (particulate matter) and other gases such as NOx (mono-nitrogen oxides NO and NO$_2$), CO$_2$ (Carbon dioxide), and SOx (Sulphur Dioxides SO$_2$ and Sulphur Trioxide SO$_3$) which form Sulphuric Acid when combined with water. Accordingly, legislation was proposed to limit the use of these maritime fuels within two hundred miles of the United States and otherwise requiring the marine industry, including the cruise line industry, to significantly reduce the toxic emissions resulting from the burning of bunker fuel. The Obama Administration passed the Bill into law

36

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
<u>Verified Complaint for Damages</u>

and the same went into effect in August of 2012.

101.    At all material times, the International Maritime Organization (IMO) similarly announced that it planned to create a buffer zone around the North American coast, to include Canada, where ships were prohibited from burning the world's dirtiest transportation fuel, known as "bunker fuel", which has a sulfur content four to five thousand times greater than gasoline.

102.    At all material times, marine bunker fuel is a waste product dredged from the pits of oil refineries after the oil refining process is completed and is often referred to as "toxic muck" with the consistency of tar. Bunker fuel cannot be burned as fuel without incombustible toxic pollutant particles being discharged into the atmosphere similar to burning an automobile tire.

103.    At all material times, bunker fuel while inexpensive, has a very high sulfur content, has a disastrous effect on the environment, and can have a deadly effect on those who are exposed to the toxic chemicals contained in the emissions discharged when it is burned.

104.    Notwithstanding its hazards, bunker fuel is the cornerstone and fuel of choice of the cruise line industry.

105.    At all material times, the new environmental laws required the cruise line industry to reduce air pollution dramatically by August 1, 2012. Cruise ships were required to reduce the sulfur content of their fuel from 15,000.00 parts per million to 10,000.00 parts per million by August of 2012, and to further reduce to 1,000.00 parts per million by January, 2015.   The cruise line industry estimated that low sulfur fuel would cost an extra 3.5 million to 5.5 million dollars per ship, depending on the ship and its itinerary.

106.    At all material times, in an effort to comply with the new environmental laws, the Defendants herein, and each of them, joined together to create an agency, joint venture or strategic partnership to develop, and did develop, a system that would permit them to continue to burn

37

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

inexpensive bunker fuel by removing or scrubbing the particulate matter (PM) and toxic pollutants such as NOx (mono-nitrogen oxides NO and $NO_2$), $CO_2$ (Carbon dioxide), and SOx (Sulphur Dioxides $SO_2$ and Sulphur Trioxide $SO_3$) which form Sulphuric Acid when combined with water from the ship's emissions before they were discharged into the atmosphere.

107.    At all material times, the system developed by the Defendants, and each of them, is known as a "sea water scrubber" which removed pollutants from the ship's exhaust by essentially installing a rain shower inside the smoke stacks of the ship so that when the smoke carrying toxic emissions is discharged from engines and rises up the smoke stack, the smoke is literally washed with sea water pouring down from the shower head as water droplets condense around toxic pollutant particles and fall to a hazardous waste collection tank below leaving a much cleaner exhaust to be released into the atmosphere.

108.    At all material times, the cruise line industry projected that the scrubbers could remove more than 90% of the particulate matter (PM) and toxic pollutants such as NOx (mono-nitrogen oxides NO and $NO_2$), $CO_2$ (Carbon dioxide), and SOx (Sulphur Dioxides $SO_2$ and Sulphur Trioxide $SO_3$) which form Sulphuric Acid when combined with water in a closed loop scrubber (used while the ship is close to land), which recycles water and uses it over and over or, an open loop scrubber (used when the ship is at sea) which purifies the water before it is discharged into the ocean.

109.    At all material times, the Defendants, and each of them, created a pilot program to test the scrubber system on board an operating cruise vessel for the first time. The Defendants anticipated that a tremendous and lucrative business opportunity existed to install their scrubber system on nearly every ship at sea, including all cruise ships, which were required to immediately comply with the new pollution laws. This future opportunity in maritime shipping spanned over

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
<u>Verified Complaint for Damages</u>

15,000 ships and was estimated to be worth in excess of 1.3 billion dollars.

110.    On or about September 26, 2011, the Defendants, and each of them, moved forward and agreed that the scrubber prototype would be installed on Royal Caribbean Cruise vessel "Liberty of The Seas". The installation was to be accomplished while the vessel was underway, without dry docking.

## The Defendants Failed to Perform a Job Safety Analysis

111.    At all material times, the Defendants failed to perform a Job Safety Analysis ("JSA") before the project began and/or during the work, and no safety meetings were held on board the vessel to identify, address anticipated safety risks, and provide reasonable safety measures to ensure a safe work environment for the crew.

112.    At all material times, risk assessment, the proactive and systematic assessment of risks via a Job Safety Analysis ("JSA"), was and is a standard element of responsible maritime companies to identify and control potential safety hazards to the ships passengers, crew and to the ship itself.

113.    At all material times, a Job Safety Analysis ("JSA" a/k/a Job Hazard Analysis, Job Risk Assessment, Task Risk Assessment, and/or Safe Job Analysis), is a task oriented risk assessment used to review the hazards associated with a particular work task, and to verify that adequate safeguards are in place to control those hazards with the primary goal of the analysis to prevent harm to the individuals carrying out the task.

114.    At all material times, a properly implemented JSA program constituted an important risk management tool for maritime ship operators and employers to comply with several regulations, standards, and industry best practices including the International Safety Management Code ("ISM Code"), the Occupational Health and Safety Assessment Standard ("OHSAS" 18001),

the Maritime Labor Convention, the Safety and Environmental Management Systems ("SEMS")

regulations for the offshore industry in the United States; the Occupational Safety and Health Act

("OSHA"); the International Convention for the Safety of Life At Sea ("SOLAS"); and 46 U.S.C.

3201-3205 which requires, among other things, maritime ship operators and employers to develop

and implement Safety Management Plans approved by the United States Coast Guarde.

115.    At all material times, the International Safety Management ("ISM") Code, 2010

Edition, provides that maritime ship operators and employers shall assess all identified risks to its

ships, personnel and the environment, and establish appropriate safeguards.

116.    At all material times, the Occupational Health and Safety and Assessment Series

Standard, "OHSAS" 18001:2007, in Section 4.3 (Planning), requires maritime ship operators and

employers to develop and implement procedures for the ongoing hazard identification, risk

assessment, and determination of necessary controls for the improvement of safety on board.

117.    At all material times, the International Labour Organization ("ILO") developed the

Maritime Labour Convention, 2006 which requires, at Part A of the Convention, Regulation 4.2-

Health and Safety Protection and Incident Prevention, that maritime ship operators and employers

perform risk evaluations for occupational health and safety risks and specifically mandates that

risks due to exposure to dangerous materials be identified and risk reduction controls be provided.

118.    At all material times, United States regulations for Safety and Environmental

Management systems ("SEMS") requires, among other things, maritime ship operators and

employers to develop and implement JSA programs to analyze tasks performed as part of most

maritime construction activities.

119.    At all material times, 46 U.S.C. 3201-3205 requires, among other things, maritime

ship operators and employers to develop and implement Safety Management Plans which establish

40

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

and implement safeguards against all identified risks approved by the United States Coast Guarde.

120.   At all material times, a JSA focuses on identifying hazards associated with performing a specific job, the potential safety, health, and in some cases environmental hazards associated with each step; and the recommended risk control measures needed to eliminate or reduce these hazards.

121.   At all material times, a formal JSA documents the job steps, the identified hazards, and the means by which the risk of those hazards is eliminated or mitigated. The formal JSA becomes the means of communicating information about the job. All personnel involved in the job and the assessment have access to the results and can provide additional input as appropriate. The JSA should be performed well in advance of the task in order to allow time to install any recommended engineering controls and should be reviewed again prior to commencement of the task with all personnel involved in the task.

122.   At all material times, a formal JSA is required when, among other items, a job entails:

    a.   non-routine tasks
    b.   tasks with known potential for harming crew
    c.   tasks requiring interaction of many people or systems
    d.   complex/difficult tasks
    e.   routine tasks performed under unusual or unfavorable situations
    f.   tasks involving a change from the norm or something new or different
    g.   work on critical equipment
    h.   tasks that generate employee complaints
    i.   work at heights
    j.   work around energy sources
    k.   hot work
    l.   working in confined spaces
    m.   working with dangerous substances such as toxic chemicals
    n.   retrofitting of machinery
    o.   commissioning of newly installed equipment or systems
    p.   tasks requiring crew and outside vendors working together or with different departments on board
    q.   tank cleaning operations

41

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
<u>Verified Complaint for Damages</u>

r.  routine or repetitive tasks where risk of complacency may be a factor
s.  work in areas of high temperatures
t.  tasks with new procedures
u.  newly modified jobs, operations or processes
v.  tasks associated with newly modified or new equipment
w.  tasks performed by new or inexperienced workers
x.  tasks requiring entry into void spaces with trapped gasses
y.  tasks with potential for chemical hazard or in areas where there could be chemical exposure, inadvertent release of toxic chemicals, or splashing from open chemicals
z.  tasks potentially causing nausea, dizziness, or eye injury.

123.    On or about September 26, 2011, the Defendants, and each of them, moved forward and agreed that the scrubber prototype would be installed on Royal Caribbean Cruise vessel "Liberty of The Seas". The installation was to be accomplished while the vessel was underway, without dry docking.

124.    At all material times, the Defendants, and each of them, failed to performed a JSA to assess the health and safety risk presented by the experimental project to the crew, including the Plaintiff, prior to installation of the prototype scrubber or at any point in time prior to the Plaintiff's injury in breach of several regulations, standards, and industry best practices including the International Safety Management Code ("ISM Code"), the Occupational Health and Safety Assessment Standard ("OHSAS" 18001), the Maritime Labor Convention, the Safety and Environmental Management Systems ("SEMS") regulations for the offshore industry in the United States; the Occupational Safety and Health Act ("OSHA"); the International Convention for the Safety of Life At Sea ("SOLAS"); and 46 U.S.C. 3201-3205 which requires, among other things, that maritime ship operators and employers develop and implement Safety Management Plans approved by the United States Coast Guard.

//

//

42

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

**The Slavic and Polish Crew**

125.    At all material times, the Defendants, to reduce expense, hired Slavic and Polish crewmembers, including the Plaintiff, to install the prototype scrubber and modify the existing exhaust system on board the Liberty of the Seas. Prior to employment, the crewmembers were required to pass a pre-employment physical confirming that they were physically fit for duty.

126.    At all material times, the Slavic and Polish crew, including the Plaintiff, were to be paid 12 euros per hour for a 10-12 hour work day, working every day on board the "Liberty of the Seas" until the project was completed. Payment to the crew was due on the 15th of each month.

127.    At all material times, the Polish and Slavic crew, including Plaintiff, were told that they were being hired to work on a confidential project on board the "Liberty of the Seas" working in the condenser or collection tank and in the chimney, and that after they boarded the ship, RCCL would instruct them regarding what and how to do their work, would supervise their work, inspect the progress and quality of their work, and had the authority to fire them.

128.    At all material times, the Defendants, and each of them, advised the ship's crew, including the Plaintiff, that the "exhaust scrubber" was a prototype or experimental system to decrease the ship's air pollution by removing or scrubbing the toxic pollutants from the ship's exhausts. The crew was advised that the experimental system sprayed sea water down into the smokestack where the water droplets would coagulate on pollution particles and fall into a collection tank below to ultimately be discharged from the ship at sea. Prior to the "Liberty of the Seas", the scrubber system had only been used on land. The crew was advised that this was the first time the system was used on a ship and that the motivation was to reduce the air pollution and avoid steep penalties. The crew was also advised that the Defendants would be installing the

43

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

system on a minimum of 24 additional vessels if the experiment was successful.

129.    At all material times, the initial installation of the prototype scrubber on the "Liberty of the Seas" occurred between January, 2012 and April, 2012.

130.    At all material times, the Polish and Slavic crew, including the Plaintiff, joined the Liberty of the Seas in Barcelona, Spain where it was preparing to make the transatlantic crossing to Ft. Lauderdale, Florida for the Caribbean cruising season.

131.    At all material times, some of the Slavic and Polish crew were provided C1/D1 visas which permitted them to work on board the vessel in United States waters, to be listed on the crew manifest, and to be housed in the crew quarters on board the ship. Other members of the same Slavic and Polish crew, including the Plaintiff, however, were not provided C1/D1 visas, but rather were provided B1/C1 tourist visas which did not permit them to work on board the ship within the territorial waters of the United States. Although these crewmembers performed the same ship's work as the crew listed on the crew manifest, they were listed on the passenger manifest and were provided a passenger cabin on level 8 of the ship which included a private bathroom, television, couch, table, chair, phone, mirror, closet, and a single bed. All utilities, meals, maid services, and toiletries were provided.

132.    At all material times, some of the Slavic and Polish crew who were provided tourist visas were also given employment documents indicating that they would be boarding the Liberty of the Seas in Spain and departing the vessel in Spain a few weeks later. The employment documents did not indicate that the vessel would travel to the United States or that the crewmembers would be working within United States waters notwithstanding that the vessel was preparing to make the transatlantic crossing to Ft. Lauderdale, Florida for the Caribbean cruising season. In fact, the ship's documents did not indicate that the crew members with tourist visas

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

were on board the vessel after she departed Spain, and any future accident or injury to one of these crewmembers would be undetected by government officials as they were not "officially" on board.

133.   Once in Florida, the "Liberty of the Seas" began its normal cruising schedule departing from Ft. Lauderdale to Mexico, Belize, Jamaica, Haiti and back to Ft. Lauderdale. The installation of the prototype scrubber took place while the vessel was in port and underway and did not require dry docking.

134.   At all material times, the Slavic and Polish crew, including the Plaintiff, worked Monday through Sunday for months at a time to install the prototype scrubber system. The crewmembers, including the Plaintiff, were required to bring their own work clothes, but were provided a white jump suit to wear during meals.

135.   At all material times, the Slavic and Polish crews, including the Plaintiff, were required to attend a meeting in the downstairs workshop every morning at 8:00 am where RCCL provided work assignments to each crew and directed the crew's day to day work activities often using particular drawings to indicate work assignments. Throughout the day, RCCL supervised, and inspected the work and intermittently assigned new tasks.

136.   At all material times, the Slavic and Polish crews, including the Plaintiff,   typically worked until 5:30 pm. RCCL, who had supervised the work throughout the day, inspected the crews' work at the end of the day, monitored how far they had progressed, and determined the work assignments to be completed the following day. The crew would then meet back at the workshop with RCCL for further instruction.

137.   At all material times, the Liberty of the Seas returned to Ft. Lauderdale to disembark and board passengers every Saturday and/or Sunday. United States immigration inspections occurred during this time.

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

138.    At all material times, immigration was a problem issue for the Defendants, and each of them, given that certain of the Slavic and Polish crew members were authorized to work in the United States while others, including the Plaintiff, were not properly identified on the ship's documents as ever being on board the vessel.

139.    At all material times, the Defendants instructed and advised the Polish and Slavic crew which had been provided only tourist visas, including Plaintiff, that United States immigration would remove them from the vessel if they were caught working without proper work permits. Accordingly, the Defendants, and each of them, instructed and required the crew which had been provided only tourist visas, including Plaintiff, to change passenger staterooms every week following the immigration inspection to avoid detection. These crewmembers, including Plaintiff, were also instructed and required to wear civilian clothes, and not to report to work on "immigration days" (generally Sunday) until after the immigration inspection was completed.

### The Hazardous Installation of the Experimental Exhaust Scrubber Prototype

140.    At all material times during the installation phase of the scrubber prototype, the Polish crew, including the Plaintiff, modified a hazardous toxic waste collection tank where the liquid residue from the smoke stack shower deposited the hazardous toxic waste particulate that was washed down the smoke stack to clean or "scrub" the ship's emissions. To perform this work, the Polish crew, included Plaintiff, were required to climb down inside the hazardous wste collection tank to mount metal plates to the walls (which were later welded) and to install additional piping and additional pumping systems to enable the pre-existing collection system to withstand anticipated corrosion which would be caused by the exposure to contaminating and toxic fluids "scrubbed" from the engine exhaust, and to further pump the contaminated fluid overboard.

141.    At all material times during the installation phase of the scrubber prototype, the

46

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

Polish crew, including the Plaintiff, were also required to modify and strengthen the ship's smokestacks and chimneys to withstand anticipated corrosion which would be caused by the exposure to contaminating and toxic fluids "scrubbed" from the engine exhaust by the experimental sea water shower/spray system.

142.    At all material times, RCCL controlled all of the working conditions on board the vessel including the conditions in the hazardous waste collection tank, in the chimney or smokestack, and was responsible for crew safety, including the Plaintiff's safety, on board the ship.

143.    At all material times, the Plaintiff is informed and believes that the installation of the prototype scrubber system on board "Liberty of the Seas" was completed during April, 2012 following which the Polish crew, including the Plaintiff, returned to work in certain shipyards in Gdansk, Poland until they were required to rejoin the vessel in September, 2012 to continue working on the experimental scrubber system.

**The Crew Returns to Correct Corrosion Issues With the Prototype Scrubber System**

144.    At all material times between April, 2012 and September, 2012, the salt water sprayers or showers utilized by the prototype emission scrubber within the smoke stacks of the "Liberty of the Seas" caused unacceptable corrosion leading to cracking of the smoke stacks and leaking of toxic emissions.

145.    At all material times between April, 2012 and September, 2012, the Defendants, and each of them, also experienced unacceptable corrosion levels and other problems within the hazardous waste collection tanks on board the Liberty of the Seas caused by exposure to contaminating and toxic fluids "scrubbed" from the engine exhaust. The tanks were leaking and the hazardous waste could not be pumped overboard due to malfunctions within the piping system.

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

146.     At all material times, on or about September, 2012, the Defendants, and each of them, called the Slavic and Polish crews back to the "Liberty of the Seas" to (a) repair the cracks in the smoke stacks permitting toxic emissions to leak from the chimney, and (b) to repair unacceptable corrosion levels and other problems within the hazardous waste collection tanks on board the Liberty of the Seas which caused the tanks to leak and prevented the hazardous waste from being pumped overboard.

147.     At all material times when this repair work was performed, the experimental scrubber system was fully installed, functional and operating unquestionably requiring the Slavic and Polish crewmembers to work in an environment exposed to deadly toxic chemicals, extremely hot temperatures and extremely hazardous working conditions. Nonetheless, the Defendants, and each of them, failed to perform a Job Safety Analysis ("JSA") before the project began and/or during the work, and no safety meetings were held on board the vessel to identify, address anticipated safety risks and provide reasonable safety measures to ensure a safe work environment for the crew, including the Plaintiff.

148.     At all material times, the Slavic and Polish crew, including the Plaintiff, provided with tourist visas were able to avoid detection by United States immigration officials throughout the initial installation of the Defendants' scrubber system and when the repairs were being made during the fall of 2012. In fact, the crew's presence on board the vessel would have remained undiscovered and hidden but for the Plaintiff's injury which required his medical evacuation on December 13, 2012, in Port Everglades, Florida due to an undiagnosed stroke occurring days before.

### Working Inside the Toxic Hazardous Waste Collection Tanks

149.     At all material times, on or about September, 2012, the Slavic and Polish crew

48

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

returned to the Liberty of the Seas to perform certain repairs to the hazardous toxic waste collection tanks in the ship's bilge that stored the contaminated and polluted water used to scrub contaminants from the ship's exhaust. The crew was required to weld metal plates, to realign internal compartments, correct corrosion issues and to repair certain water pumps which were designed to discharge contaminated water scrubbed from the exhausts out of the ship. To perform their duties, the crew was required to enter and perform their work inside the collection tanks for periods of 3-4 hours at a time surrounded by toxic water, residue and scale. The crew was told not to expose their skin to the toxic liquid in the tanks or the hazardous scale on the walls because the Defendants, and each of them, did not know exactly what chemicals were in the tanks and how dangerous they were.

150.    At all material times, the Slavic crew refused to perform the tank work because the Defendants, and each of them, were unable to confirm what type and what concentration of chemicals were in the tank, and what the health hazards were. Understandably, the Slavic crew perceived the work as unsafe. Accordingly, RCCL assigned the tank work to the Polish crew, and the Polish crew, including the Plaintiff, were forced to work in the hazardous waste collection tanks beginning in September, 2012 through November, 2012.

151.    At all material times, before the Polish crew, including the Plaintiff, entered the hazardous waste collection tanks, the doors were opened by RCCL to permit a certain amount of the toxic emission gases to escape and for RCCL to test the gas levels in the tank to determine whether there was enough oxygen to sustain human life. If so, RCCL instructed the Polish crew, including the Plaintiff, to enter the tanks and "be careful" because "...depending on what chemicals are in the tanks, the chemicals could be dangerous to your health and we are not exactly sure what the reaction will be because testing results on chemical samples sent for analysis had

49

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

not yet been received…"

152.    At all material times, the Polish crew, including the Plaintiff, were initially provided dust or paint masks to wear while working in the tank. The masks, however, were not adequate and lasted a few days only. After the crew ran out of masks, the Defendants, and each of them, refused to provide additional masks causing the crew to work without masks for the majority of time.

153.    At all material times, the Polish crew, including the Plaintiff, were initially provided an oxygen monitor to wear while working in the hazardous waste collection tank to confirm whether oxygen levels were sufficient to sustain human life in the tank. Otherwise, the crew was not provided any other protective gear.

154.    At all material times, the Polish crew, including the Plaintiff, was required to work in the hazardous waste collection tanks wearing their normal work jumpsuits. No protective gear was provided.

155.    At all material times, at coffee or lunch breaks, the Polish crew, including the Plaintiff, were required to remove their clothes after leaving the hazardous waste tanks if they intended to leave the immediate area because the Defendants were concerned that any chemical waste residue which may have made its way onto the crew's clothing would contaminate other areas of the ship and/or cause injury to other crew and/or passengers coming into contact with the toxin. Accordingly, the Polish crew, including the Plaintiff, removed their jumpsuits each time they left the tanks for a coffee, an extended break, or a meal. The jumpsuits were cleaned by the ship and returned to the crew in their rooms nightly.

156.    At all material times, the Polish crew, including the Plaintiff, after working in the hazardous waste collection tanks all day, often skipped dinner and returned to their rooms feeling

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
<u>Verified Complaint for Damages</u>

nauseous like they had to vomit, and poisoned.

157.    On or about the later part of November, 2012, the Slavic crew left the vessel and returned to their home countries. The Polish crew, including the Plaintiff, were nearing completion of the project assigned to them by RCCL in the hazardous waste collection tank. Accordingly, RCCL advised the Polish crew, including the Plaintiff, that they would be reassigned to work in the ship's smokestacks/chimney to repair critical leaks and to otherwise reinforce the smokestacks which had been eroded by corrosion caused by the sea water scrubber system.

### Working Inside the Ship's Smokestacks/Chimneys

158.    On or about the later part of November, 2012 or the beginning of December, 2012, the Polish Crew, including the Plaintiff, began working inside the smokestacks or chimneys of the Liberty of the Seas hanging metal plates and welding them to the walls of the smokestack which was covered with toxic residue, rust and soot to stop leaks and cracking caused by corrosion and permitting toxic emissions to circumvent the pollution scrubber and be released into the atmosphere.

159.    At all material times, the smoke stack was filled with exhaust fumes and smoke, and the internal piping was hot enough to burn human flesh.

160.    At all material times, the Polish crew, including the Plaintiff, worked inside the ship's chimneys and smokestacks in pairs of two crewmen at a time with one crewmember working inside the smokestack and the other crewmember remaining outside the smokestack to monitor the internal crewmember's tolerance of the toxic emissions and incredible heat inside the chimney.

161.    At all material times, the temperatures inside the smokestack where the Polish crew, including the Plaintiff, were required to work exceeded 40-50 degrees Celsius (104-122 degrees Fahrenheit) permitting the internal crewmember to work in 15 minute intervals only after which

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

he was allowed a 15 minute break, and required to return to the inside of the chimney to continue working without any proper respirators or thermal protective gear.

162.   At all material times, the Polish crew, including the Plaintiff, complained that it was hard to breathe in the smokestacks, that the heat caused them to sweat through their jumpsuits, and that fumes inside the smokestack and chimney made them feel nauseous and induced vomiting.

163.   At all material times, the Polish crew, including the Plaintiff, requested that ventilation fans be turned on to reduce the toxic emissions and lower the temperatures in the smokestack, but RCCL refused to turn on ventilation fans citing a need to control electrical costs.

164.   At all material times, the Polish crew, including the Plaintiff, initially were not able to withstand the exposure to toxic emissions and the 104-122 degree heat in the smokestacks, and could tolerate only 5-10 minute work intervals in the smokestacks and chimneys. Over time, however, the crew gradually acclimated and were able to withstand working for the full 15 minute intervals mandated by RCCL.

165.   At all material times, the Polish crew, including the Plaintiff, were initially provided dust or paint masks to wear while working in the smokestacks, however, the masks were not adequate and lasted a few days only. After the crew ran out of masks, the Defendants, and each of them, refused to provide additional masks causing the crew to work without masks for the majority of time.

166.   At all material times, the Defendants, and each of them, knew that the Polish crew, including the Plaintiff, were working without protective masks, were aware of the abhorrent work conditions, and nonetheless refused to provide adequate masks, thermal protection or any safety gear.

167.   At all material times, during and after working inside the smokestack, the Polish

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

crew, including the Plaintiff, showed visible signs of heat exposure and toxic poisoning including flush/red checks and face, profuse sweating, and complaints of feeling sick, nauseous, and dizzy. At the end of the work day, the crew was often so tired that they did not eat dinner and went to their rooms soaked with sweat and covered with soot.

168.    At all material times, Polish crew, including the Plaintiff, were hesitant to complain because they believed that their employment on board the ship would be terminated by RCCL.

### Plaintiff's Exposure to Hazardous Waste, Toxic Emissions and Scorching Heat Takes Its Toll

169.    At all material times and as a direct and proximate result of the hazardous environment and unsafe workplace within which the Polish crew, including the Plaintiff, were required to work including, but not limited to a work place where they were repeatedly exposed to toxic and hazardous chemicals and crippling temperatures, the Plaintiff began to experience severe headaches, loss of appetite, fever and sweating. The Plaintiff would complete his work on a daily basis and, feeling ill, would skip dinner opting instead to go directly to his cabin to sleep.

170.    At all material times, on or about the week of December 9, 2012, while the vessel was in Port Everglades, Florida, and following a morning of working in the chimney with no exhaust fans, the Plaintiff returned to his room during the lunch break to rest when his head started to hurt and he fell to his cabin's floor. The Plaintiff thereafter asked his roommate to advise RCCL and the rest of the Polish crew that he would not be returning to work that day.

171.    Later that same day, the Plaintiff joined the Polish crew in the break room during the 3:00 afternoon break for coffee. A crewman told the Plaintiff that he had blood vessels "shot" in his eyes and that the Plaintiff also showed symptoms of clamminess, sweats and general ill health. The Plaintiff was then taken from the break room to the crew physician (who was wearing

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

a RCCL nametag/badge) on board the ship who examined the Plaintiff's heart and lungs with a stethoscope. The crew physician provided the Plaintiff pain medication and instructed him to return to his cabin and lay down. The entire examination was completed in less than five minutes.

172.    At all material times, the Plaintiff returned to his room as instructed by the RCCL crew physician to rest. Shortly after arriving in his cabin, the Plaintiff lost the use of his left hand. The Plaintiff remained in his room for the night.

173.    On the following morning, the Plaintiff woke up and attended the 8:00 am meeting held by RCCL in the workshop anticipating his daily work assignment. During the RCCL morning meeting, the Plaintiff was instructed to stay in the workshop rather than heading to the chimney given that he could not use his left hand.

174.    At all materials times, the Plaintiff followed the RCCL instructions to remain in the workshop until he was released to return to his room where he stayed until 3:00 pm when he, once again, met up with the Polish crew for the afternoon coffee break. Upon seeing the Plaintiff in the break room, RCCL instructed the Plaintiff to report to the crew doctor. During this second trip to the crew doctor, there was no examination. The crew doctor simply provided the Plaintiff with more pain medication and instructed him to return to his cabin. The Plaintiff could not use his left hand at this time. Upon reaching his cabin, the Plaintiff began to notice numbness and tingling in his left side extremities and fell, losing consciousness until the following morning. The Plaintiff was also experiencing blurry vision which was worsening by the day.

175.    On or about the early morning of December 13, 2012, the Plaintiff was called by a RCCL crew nurse and asked if he was able to ambulate to the crew infirmary. The Plaintiff made his way to the infirmary where he was met by a group of men who had been waiting for him. The Plaintiff was told to lie down on a bed that had also been prepared for his arrival following which

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

he was wheeled to an ambulance. The Plaintiff lost consciousness at this time.

176.   At all material times, the Plaintiff was transported by ambulance from the Liberty of the Seas to the critical care unit at Broward General Hospital. The Plaintiff regained consciousness in the Broward General Hospital level one trauma facility more than two weeks later paralyzed as a result of his injuries, and abandoned in the United States to fend for himself in a country where he has no relatives, has no money, cannot care for himself, and cannot speak the English language.

**The Plaintiff Is Abandoned: The Defendants Fail To Provide
Maintenance, Cure, Earned and Unearned Wages**

177.   At all material times, the Plaintiff regained consciousness in Broward General Critical Care Unit shortly before January 1, 2013. The Plaintiff could not speak English, did not know where he was, and did not know what had happened to him. The Plaintiff remained in Broward General Hospital for more than three months.

178.   At all material times, the Plaintiff was advised that he had a stroke on board the Liberty of the Seas that had gone undiagnosed by the ship's crew doctors during the days prior to his medical evacuation. When he regained consciousness, the Plaintiff was dizzy, could not maintain his balance, had severe daily headaches, had poor vision in both eyes and could not see out of his left eye, had pain in his spine, neck, left leg, elbows, could not sit for any extended period, could not move his left arm at all, had a left hand which had started to curl in and atrophy, could not move his fingers, lost feeling in his left leg, and was unable to walk.

*General Facts Pertinent to the Payment of Maintenance,
Cure, Unearned Wages, Earned Wages and Penalty Wages*

179.   At all material times, the Plaintiff was hired as a seaman to work on board the M/V "Liberty of the Seas" on or about October 6, 2012 and was paid 12.00 euros per hour which is the

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

equivalent of $16.30 (U.S. Dollars) per hour, $163.00/day, $1,141/week, based on an average ten hour work day. The Plaintiff worked 8-12 hours per day, seven days per week.

180.    At all material times, the Plaintiff's employment began on or about October 6, 2012 and, absent his accident and injury, would have continued through July 31, 2013 when repair work on the vessel's emission control scrubber system was completed. The Plaintiff lived and worked on board the vessel during his employment. The vessel operated from her home port in Ft. Lauderdale, Florida on weekly cruises departing from Port Everglades, Florida to the Caribbean returning to Port Everglades, Florida.

181.    At all material times, the Plaintiff was provided room and board on the vessel. The Plaintiff was provided a stateroom which included two beds, closet, mirror, desk & chair and telephone, and all utilities comparable to an Extended Stay America Hotel which charges rates between $74.00-110.00 per day depending on the length of the stay. The Plaintiff was provided three meals per day in compliance with 46 USC §10303.

182.    At all material times, the Plaintiff's injury occurred on board the Liberty of the Seas on December 13, 2012, if not earlier. The Plaintiff was evacuated from the vessel to Broward General Hospital and has not returned to his employment due to the severity of his injuries.

183.    At all material times, the Plaintiff understands believes and thereupon alleges that repairs were completed to the vessel's experimental emission control system on or about July 31, 2013, and that the Polish repair crew, of which he was a member, was thereafter repatriated to their home countries in Europe.

### *The Maintenance, Cure and Unearned Wage Obligation*

184.    At all material times every seaman who becomes ill or injured during his employment, regardless of any fault of the vessel owner or operator, is entitled to maintenance,

56

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

cure and unearned wages as a matter of right. "Maintenance" is the seaman's reasonable expenses of room and board while ashore until the seaman has reached "Maximum Medical Improvement". "Cure" is the reasonable medical expenses incurred by the seaman. "Unearned wages" are wages the seaman would have received if he had not become sick or injured, to the end of the voyage or the period for which the seaman was employed.

185.    At all material times, as of the date of the Plaintiff's injury on or before December 13, 2012, the Defendants, and each of them, had an affirmative obligation to promptly investigate the Plaintiff's claim for maintenance, cure and unearned wages and, resolving any doubts as to entitlement in the Plaintiff's favor, promptly pay all amounts due.

### *Cure (Medical Expenses)*

186.    At all material times, the Defendants initially honored their obligation to pay cure and payments were made through January 11, 2013. Benefits were unilaterally terminated shortly thereafter without explanation. There has been virtually no response to the Plaintiff's ongoing cure claim. The Plaintiff has received no substantive assistance beyond January 11, 2013 from any of the Defendants relative to his medical care needs notwithstanding that he has undergone a massive ischemic stroke and left hemispheric paresthesia as a direct result of his unsafe workplace and exposure to toxic chemical emissions which the experimental emission control system was intended to reduce. As a result, the Plaintiff has suffered complete vision loss in his left eye, cognitive deficiencies including memory loss, and complete paralysis of his left arm and impaired function to his left leg.

187.    At all material times, the Plaintiff was abandoned without medical care in a country where he has no relatives and cannot communicate given that he does not speak the English language. To date, the outstanding expenses related to the Plaintiff's medical care and

rehabilitation exceed $898,376.80.

188.    At all material times, the Plaintiff was treated by Broward General Hospital from December 13, 2012 through March 13, 2013. The Plaintiff was discharged for non-payment after incurring $76,788.32 in unpaid charges. The Plaintiff was advised that the hospital refused further treatment and needed the bed in the trauma facility to accommodate other patients. As a result, the Plaintiff was threatened with eviction from the hospital against his will and before he could perform the critical functions necessary to daily living.

189.    On or about March 13, 2013, the Plaintiff was placed in Eden Inn Assisted Living Care Facility in Davie, Florida where he remained until June 15, 2013. Due to his financial straits, the Plaintiff was unable to afford any medical treatment during this critical period where a limited window existed for the possibility of complete recovery.

190.    On or about June 15, 2013, the Plaintiff was transferred to St. Mary's Hospital intensive rehabilitation unit in West Palm Beach, Florida to receive the therapy and rehabilitative care he should have been provided upon injury. The cost of care at St. Mary's exceeded $238,148.35.

191.    On or about August 22, 2013, the Plaintiff was transferred from St. Mary's to Neuro Rehab Solutions in Merritt Island, Florida. The Plaintiff is receiving medical care including cognitive, physical and occupational rehabilitation at an estimated cost of $2,200.00 per day which equated to $556,600.00 as of May 1, 2014. These charges are ongoing.

192.    At all material times, the Plaintiff suffered a seizure while hospitalized at Neuro Rehab Solutions causing him to be taken to the Wusethoff Hospital emergency room for treatment at a cost of $26,840.13 between September 30, 2013 through October 4, 2013.

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

### *Maintenance*

193.    At all material times under the applicable general maritime law, a seaman's duty to establish the value of his maintenance is "feather light" and he is entitled to the reasonable cost of obtaining room and board in the community in which he resides. The Plaintiff was provided room and board on the vessel. The Plaintiff was provided a stateroom which included two beds, closet, mirror, desk & chair and telephone, and all utilities comparable to an Extended Stay America Hotel which charges rates between $74.00-110.00 per day depending on the length of the stay. The Plaintiff was provided three meals per day.

194.    At all material times, the Plaintiff was entitled to the payment of maintenance immediately upon being injured on December 13, 2012. While the Defendants acknowledged their duty to pay maintenance, and paid maintenance through January 11, 2013 while the Plaintiff was at Broward General Hospital, maintenance has not been paid since.

195.    At all material times, after his abandonment on or about January 11, 2013, Broward General Hospital continued treatment and permitted the Plaintiff to remain in the facility until March 13, 2013 when he was transferred to Eden Inn Assisted Living Care Facility in Davie, Florida, where he languished until June 15, 2013 at a total cost of $7200.00 for room and board. The Plaintiff did not receive any medical treatment at Eden Inn.

196.    At all material times, the Plaintiff is not claiming maintenance for periods while he was hospitalized at Broward General Hospital beginning on December 12, 2013 through March 12, 2013 as maintenance would be included in the hospital charges and claimed as a cure expense. The Plaintiff further does not claim maintenance separate from the hospital charges while hospitalized at St. Mary's Hospital intensive rehabilitation unit in West Palm Beach, Florida from June 15, 2013 through August 22, 2013, and/or while an in-patient at Neuro Rehab Solutions from

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

August 22, 2013 through today's date. The Plaintiff does, however, claim maintenance for the period when the Plaintiff resided at the Eden Inn.

### *Unearned Wages*

197.    At all material times, "unearned wages" are wages the seaman would have received if he had not become sick or injured. Like maintenance and cure, the general maritime law imposes an affirmative obligation to promptly investigate the Plaintiff's claim for unearned wages and, resolving any doubts as to entitlement in the Plaintiff's favor, promptly pay amounts due.

198.    At all material times, the general maritime law provides that the amount to be considered "unearned wages" includes all amounts the seaman is reasonably expected to earn during the period at issue, including expected overtime, bonuses, "compensatory time", tips, accumulated shore leave, and similar employment benefits.

199.    At all material times, the Plaintiff was injured on or before December 13, 2012, and has not been paid nor received an average daily wage, or any other indemnity benefits. On the date of his injury, the Plaintiff was being paid at a rate of 12 Euros ($16.30 US) per hour, 8-12 hours per day, seven days per week. This amounts to an average of $163.00 average daily wage, plus other benefits, based on an average ten hour work day.

200.    At all material times, there were 230 days (seven months, eighteen days) between the accident date of December 13, 2012 and July 31, 2013 (the end of the voyage or contract term). Given that the Plaintiff worked seven days per week, this equates to unearned wages due and owing in the amount of $37,490.00.

### *Earned Wages and Penalty Wages*

201.    At all material times, the General Maritime Law considers seaman wards of the admiralty court and all inferences relative to wage entitlement are resolved in favor of the seaman.

60

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

With regard to earned wages, 46 USC §10313 (Foreign and Intracoastal Voyages) and 46 USC §10504(Coastwise Voyages) apply to foreign seaman when in a harbor of the United States and mandate that the master, the vessel and/or her owner must promptly pay every seaman upon discharge. When payment is not made, the seaman is entitled to two days wages for each day payment is delayed. The seaman is also entitled to recover interest on any amount not paid and may seek an award of attorney fees and punitive damages.

202.    At all material times, the Plaintiff was paid earned wages through October 31, 2012. The Plaintiff has not received any further wage payments since that time notwithstanding that he worked on the ship through the date of his injury on December 13, 2012.

203.    As of December 13, 2012, the Plaintiff was being paid at a rate of 12 Euros ($16.30 US) per hour, 8-12 hours per day, 7 days per week. This amounts to a $163.00 average daily wage, plus other benefits, based on an average ten hour work day. The Plaintiff was to be paid monthly.

204.    At all material times, on November 30, 2012, the Plaintiff was to be paid earned wages of $4890.00 for work performed between November 1 through November 30, 2012. The Plaintiff is entitled to recover statutory prejudgment interest on this amount at 4.75%. Accrued interest through May 1, 2014 is $327.73. Accordingly, the Plaintiff is owed earned wages in the amount of $5,217.73 for the month of November, 2012.

205.    At all material times, the Plaintiff also earned wages for the period December 1, 2012 through December 13, 2012 when he was evacuated from the vessel. On December 31, 2012, the Plaintiff was to be paid earned wages of $2119.00 for this time period. The Plaintiff is entitled to recover statutory prejudgment interest on this amount at 4.75%. Accrued interest through May 1, 2014 is $133.74. Accordingly, the Plaintiff is owed earned wages in the amount of $2,252.74 for work performed during the month of December, 2012.

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

206.    At all material times, the General Maritime Law including but not limited to 46 USC §10313 (Foreign and Intracoastal Voyages) and 46 USC §10504(Coastwise Voyages) mandate that the master, the vessel and/or her owner must promptly pay every seaman upon discharge. When payment is not made, the seaman is entitled to two days wages for each day payment is delayed. The seaman is also entitled to recover an award of attorney fees and punitive damages.

207.    At all material times, the Plaintiff's average daily wage was $163.00. Accordingly, the double wage penalty is appropriately calculated at $326.00 per day. The Plaintiff's November, 2012 wages were due on November 30, 2012, and are 518 days delinquent resulting in a penalty of $168,868.00 through May 1, 2014. The Plaintiff's December, 2012 wages were due on December 31, 2012, and are 487 days delinquent resulting in a penalty of $158,762.00 through May 1, 2014.

208.    At all material times, the Plaintiff's earned and penalty wage claim totals $327,630.00 as of May 1, 2014. This amount will increase daily as statutory interest accrues and the wage penalty continues to accumulate relative to wages owed for work performed in November and December, 2012.

*The Defendants' Continued Malicious Failure to Respond to the Plaintiff's Workplace Injury Notwithstanding the Defendants' Acknowledgement of Fault and that the Plaintiff's Stroke Was Misdiagnosed On Board the Liberty of the Seas*

209.    At all material times, the Defendants, and each of them were promptly informed of the injuries sustained in the course of Plaintiff's employment. The Defendants, however, have failed and refused, and continue to fail and refuse, to provide Plaintiff full and complete maintenance, cure, earned and unearned wages to date which is a non-delegable duty owed by the Defendants, and each of them.

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

210.    At all material times and before the Plaintiff regained consciousness, the Plaintiff's

brother, Jaroslaw Tarasewicz, communicated with the Defendants via managing director, board

member, CEO, president, etc., PETER STRANDBERG, and CEGA on or about December 22,

2012 stating:

> Dear Sir/Madame:
>
> My name is Jaroslaw TaraSewicz,
>
> I am a brother of Andrzej Tarasewicz. My brother had a stroke at work. He works for Green Tech Marine AS. He is insured in your company. [He] is in Broward General Hospital, Fort Lauderdale, in Miami room no 6016. His condition is no good. I am in constant contact with doctors in Miami. **Against stroke my brother was to the doctor several times on the ship and they did not recognize the disease.** Today, I spoke with a doctor who takes care of my brother. The doctor informed me that your company wants to take my brother from the hospital in Miami.
>
> My brother is not insured in Poland. We do not have money to treat him. The accident was at work. My brother is insured only in your company. I want to get my brother was being treated in Miami. The family did not agree to carry him to Polish cause here waiting for him to die. We kindly ask you as an insurer for further assistance and professional approach to a very sick man. You are an insurance company. At the moment, we have a contact with lawyer at the embassy, which will take care of this matter in Miami. The lawyer will contact with your company. I would be very grateful if you would reply as soon as possible.
>
> Jeroslaw Tarasewicz.

*See*, E-mail correspondence dated December 22, 2012, attached hereto as Exhibit "A" [Emphasis

Added].

211.    At all material times, on or about December 22, 2012, the Defendants, through

PETER STRANDBERG, replied to the Plaintiff's brother's cry for help stating:

> Hi
>
> The strange thing is that if he not had have an insurance, the hospital need to take care of him until full recovery. Now it is a discussion between insurance companies. You should contact a lawyer and ask him what to do. If you need any assistance, I will try to help as much as I can.

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

> **Regarding the onboard treatment and diagnostic failure from the ship's doctor, I'm totally agree. This was a rely bad and slow evaluation and reaction**.
>
> Regards,
>
> Peter Strandberg
> Managing Director
> Green Tech Marine AS
> Lundeveien 171
> 4550 Farsund Norway
> Cell: XXXXXXXXXXX

*See*, E-mail correspondence dated December 22, 2012, attached hereto as Exhibit "A" [Emphasis Added].

212.   At all material times and in light of the Defendants' recognition and acknowledgement by and through managing director, board member, CEO, president, etc., PETER STRANDBERG, that there had been onboard mistreatment and a diagnostic failure by the ship's doctor resulting in "really bad and slow evaluation and reaction", the Plaintiff followed the instructions of the Defendants and retained an attorney in Miami to pursue his medical and other employment related benefits. The Defendants, however, denied that they owed the Plaintiff any benefits. In particular, RCCL, failed and refused to respond to the Plaintiff's request for employment benefits and medical care despite admitting under oath that RCCL was the Plaintiff's "actual employer" which directed and supervised the Plaintiff's work activities on board ship. RCCL crew claims adjuster, Stacey Stanley, clearly testified on August 8, 2012 that the Plaintiff was under the control and direction of, and abided by the orders of the vessel's master and other Royal Caribbean --- or R.C.L. employees that shall be designated by the master, while on board the Liberty of the Seas. *See*, excerpts from the <u>Deposition of Stacey Stanley</u>, dated August 8, 2013, at p.3, ln.9-19; p.4, ln.5-10; p.14, ln.7 through p.15, ln.2; p.20, ln.20 through p.21, ln.3, attached

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

hereto as Exhibit "B".  Notwithstanding, the Defendants failed and refused to respond to the Plaintiff's workplace injury in any way leading to the additional aggravation of the Plaintiff's injury.

213.    At all material times, the Plaintiff via numerous telephone, facsimile and written communications beginning shortly after he regained consciousness in January, 2013 made demand on the Defendants, and each of them, to provide the maintenance, cure, earned, and unearned wages he is owed. To date, however, the Plaintiff's maintenance payments, earned and unearned wages have been completely refused without explanation or justification, and are severely delinquent, and only limited cure has been provided.

214.    At all material times, the Defendants provided cure (medical expenses) from December 13, 2012 following the Plaintiff's emergency medical evacuation from the vessel in Port Everglades, Florida to the Level V Trauma Facility at Broward General Hospital in Fort Lauderdale, Florida to January 11, 2013. No explanation has been given for the unilateral termination of cure benefits on January 11, 2013 despite the Defendants' knowledge that the Plaintiff required intensive care, remained critically hospitalized through March 13, 2013, and was in desperate need of medical care and intensive rehabilitation to prevent his injuries from becoming permanent and disabling. The Defendants have been kept abreast of the seriousness of the Plaintiff's medical condition, his continuing digression, and need for ongoing care and treatment, yet no assistance has been offered.

215.    At all material times, a written demand for maintenance, cure, earned and unearned wages, and penalty wages was made on the Defendants on December 1, 2013, and is attached hereto as Exhibit "C". Less formal demands were made prior to December 1, 2013. The Defendants have, however, remained steadfast in their refusal to honor their non-delegable duty to care for the

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

Plaintiff causing additional injury, and aggravating existing injuries of the Plaintiff.

216.    At all material times, the Plaintiff has brought the damages claimed in his December 1, 2013 maintenance and cure demand current through May 1, 2014, and hereby makes demand as follows:

| | |
|---|---|
| **Past Cure (Medical Expenses):** | $898,376.80 |
| **Maintenance (Living Expenses):** | $7,200.00 |
| **Unearned Wages:** | $37,490.00 |
| **Earned Wages (11/2012):** | $5,217.73 |
| **Earned Wages (12/2012):** | $2,252.74 |
| **Penalty Wages (11/2012):** | $168,868.00 |
| **Penalty Wages (12/2012):** | $158,762.00 |
| **TOTAL:** | $1,278,167.27 |

217.    At all material times and to date, the Defendants, and each of them, have refused all requests for assistance made by the Plaintiff since he regained consciousness at Broward General Hospital notwithstanding that they have acknowledged that his injury occurred while at work; that they supervised, controlled, and directed his daily work activities, and that the crew doctor on the vessel misdiagnosed and failed to appropriately treat the Plaintiff's stroke on board ship. At all material times, the Defendants have acted maliciously, and with wilful and wonton disregard for the health, safety and wellbeing of the Plaintiff aggravating the injuries he sustained on board ship to the point of permanency, and causing additional injury, pain, suffering and mental discomfort.

218.    At all material times, the Plaintiff has attempted to obtain reimbursement from the Defendants short of litigation, without success. Consequently, the Plaintiff has been required to

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

retain the services of the undersigned law firms to file the instant complaint and to pursue his rights in this case. The Plaintiff is obligated to pay the undersigned firms a reasonable attorney fee for services rendered.

## COUNT I

### JONES ACT NEGLIGENCE

**(AGAINST RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE)**

219.    Plaintiff re-alleges paragraphs 1 through 218 above as if fully set forth herein.

220.    At all material times, the Plaintiff, ANDREZEJ TARASEWICZ, brings this cause of action pursuant to 46 U.S.C. §30104 hereinafter referred to as *The Jones Act*, and the *Jones Act's* incorporated provisions of the *Federal Employers Liability Act of 1908 ("FELA")*, including, but not limited to 45 U.S.C. §51 and §53.

221.    At all material times, the Plaintiff is informed, believes and thereupon alleges that the M/V "LIBERTY OF THE SEAS" was and is a commercial passenger vessel subject to a number of regulations, laws, statute, treaties and conventions intended to promote maritime safety including the safety of the passengers and crew on board, including the Plaintiff herein.

222.    At all material times, the *Jones Act* and the *Act's* incorporated provisions of FELA, provide that an employer is strictly liable for any injury caused by the violation by the employer of any regulations, laws, statute, treaty and/or conventions intended to promote maritime safety irrespective of the negligence of the employer and any alleged comparative fault of the employee, including the Plaintiff herein, is to be disregarded.

67

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

223.   At all material times, under the *FELA*, 45 U.S.C. §53, the Defendants' breach of an applicable safety statute, regulation, law, treaty or convention enacted for the "safety of employees" which even slightly contributes to a seaman's injury renders the Defendants liable for 100% of the seaman's damages and any comparative negligence of the seaman is to be disregarded.

224.   At all material times and as is more specifically outlined below, by virtue of the Defendants', and each of them, breach of regulations, laws, statutes, treaties and/or conventions intended to promote maritime safety, the *General Maritime Law* imposes the "Pennsylvania Rule" (*See*, The Pennsylvania, 86 U.S. 125 (1873)), which presumes that the Defendants' violation is a contributing cause of the Plaintiff's injuries and shifts the burden to the Defendants' to show not merely that their fault might not have been one of the causes, or that it probably was not, but that it could not have been a cause of the Plaintiff's injuries. The recognized purpose of the rule is to force strict compliance with maritime regulations pertaining to the safe operation of ships.

225.   At all times material hereto, Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE, owed Plaintiff an absolute duty of reasonable care to act non-negligently, and to provide Plaintiff a safe place to work.

226.   At all times material hereto, Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE, their captains, crew, agents,

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

servants, employees, and representatives acting within the course and scope of their employment,

breached their duty owed to Plaintiff and were negligent by, among other items, failing to:

(A)    provide and maintain a safe, non-hazardous place for Plaintiff to work;

(B)    provide and maintain a safe, non-hazardous and safe methods and manner for the Plaintiff to work;

(C)    provide and maintain safe, non-hazardous equipment and appliances on board the vessel;

(D)    provide and maintain safe, non-hazardous work policies and procedures on board the vessel;

(E)    correct known dangerous conditions on board the vessel;

(F)    provide adequate supervision, training and instruction as to basic safety matters;

(G)    provide safety rules and require the use of safety gear;

(H)    recognize danger and provide proper warnings;

(I)    undertake proper inspections of the vessel;

(J)    promulgate proper warnings of known hazards on board the vessel;

(K)    implement adequate safety rules, measures and practices on board the vessel;

(L)    perform a Job Safety Analysis ("JSA") prior to commencement of work and while work was being performed;

(M)    comply with ISM requirements to establish, comply with, and audit a Safety Management Plan ("SMP");

(N)    comply with several regulations, standards, and industry best practices including the International Safety Management Code ("ISM Code"), the Occupational Health and Safety Assessment Standard ("OHSAS" 18001), the Maritime Labor Convention, the Safety and Environmental Management Systems ("SEMS") regulations for the offshore industry in the United States; the Occupational Safety and Health Act ("OSHA"); the International Convention for the Safety of Life At Sea ("SOLAS"); and 46 U.S.C. 3201-3205 which requires, among other things, that maritime ship

69

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

operators and employers develop and implement Safety Management Plans approved by the United States Coast Guard;

(O)  provide safe and proper equipment so that duties could be performed with reasonable safety and failure to train crew to perform their duties safely;

(P)  provide adequate supervision and instruction as to basic safety matters on board the vessel;

(Q)  provide adequate ability to communicate on board ship given the language barriers and that the Polish seaman could not communicate in any other language to other crew or to health care providers;

(R)  provide adequate supervision on board the vessel;

(S)  provide non-negligent orders, instructions, and suggestions to Plaintiff regarding his work;

(T)  by overworking the Plaintiff requiring excessive duty and overtime causing undue stress and fatigue;

(U)  by negligently assigning duties to Plaintiff and other crew;

(V)  by failing to provide appropriate protective clothing, and safety gear including respiratory gear and thermal protection;

(W)  by providing inadequate safety equipment;

(X)  by failing to comply with industry custom and practice;

(Y)  by failing to provide adequate medical treatment to Plaintiff following Plaintiff's injuries, thereby causing aggravation to Plaintiff's injuries;

(Z)  by failing to diagnose the Plaintiff's medical condition, including, but not limited to stroke, on board ship, and failing to timely evacuate the Plaintiff for medical care;

(aa)  by acquiescing to the unsafe operation of the vessel as set forth herein; and

(bb)  by otherwise utilize reasonable care in regard to their acts and omissions, thereby causing injuries and aggravation of injuries to Plaintiff, as will be uncovered as discovery and investigation continue.

227.  As a direct and proximate result of Defendants' breach of duty, on or before

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

December 13, 2012, Plaintiff, ANDREZEJ TARASEWICZ, sustained serious bodily injury, to various areas of his body, all resulting in pain and suffering, aggravation of a pre-existing condition, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. The losses are either permanent or continuing in nature and Plaintiff will suffer ongoing losses in the future.

228.   At all material times and after learning of Plaintiff's injury, Defendants owed Plaintiff a duty and obligation to furnish Plaintiff with prompt, adequate medical aid, care and attention.

229.   At all material times and after Plaintiff was injured as herein related by reason of the negligence of Defendants as set forth in Count I and the unseaworthiness of the vessel as set forth in Count II, Plaintiff required prompt, adequate medical aid, care and attention.

230.   Defendants breached their duty and failed to provide Plaintiff with prompt, adequate medical aid, care and attention.

231.   As a direct and proximate result of Defendants' breach of duty and failure to provide Plaintiff with prompt, adequate medical aid, care and attention, Plaintiff has suffered further and additional serious bodily injury, including aggravation of the injuries to various areas of his body, all resulting in additional pain and suffering, and additional aggravation of a pre-existing condition, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and additional loss of the ability to earn money. These losses are either permanent or continuing in nature and Plaintiff will suffer ongoing losses in the future.

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

WHEREFORE, Plaintiff, ANDREZEJ TARASEWICZ, individually, demands judgment for his damages from Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE, jointly and severally, in an amount in excess of $77,108,750.00 together with pre-judgment interest, costs, attorneys' fees, punitive damages in an amount exceeding $194,450,00.00, general relief, and for such other and further relief that this Court deems just and proper.

## COUNT II

### BREACH OF THE IMPLIED WARRANTY OF SEAWORTHINESS

**(AGAINST RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE)**

232.    Plaintiff re-alleges paragraphs 1 through 218 above as if fully set forth herein.

233.    At all material time, the Plaintiff, ANDREZEJ TARASEWICZ, brings this cause of action pursuant to the *General Maritime Law of the United States*.

234.    At all material times, the Plaintiff is informed, believes and thereupon alleges that the M/V "LIBERTY OF THE SEAS" was and is a commercial passenger vessel subject to a number of regulations, laws, statute, treaties and conventions intended to promote maritime safety including the safety of the passengers and crew on board, including the Plaintiff herein.

72

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

235.   At all material times and as is more specifically outlined below, by virtue of the Defendants', and each of them, breach of regulations, laws, statutes, treaties and/or conventions intended to promote maritime safety, the *General Maritime Law* imposes the "Pennsylvania Rule" (*See*, The Pennsylvania, 86 U.S. 125 (1873)), which presumes that the Defendants' violation is a contributing cause of the Plaintiff's injuries and shifts the burden to the Defendants' to show not merely that their fault might not have been one of the causes, or that it probably was not, but that it could not have been a cause of the Plaintiff's injuries. The recognized purpose of the rule is to force strict compliance with maritime regulations pertaining to the safe operation of ships.

236.   At all material times, Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE, owed Plaintiff an absolute non-delegable duty to provide a seaworthy and safe vessel, including crew, appurtenances, appliances and equipment.

237.   At all material times, the vessel was unseaworthy and Defendants breached their duty to provide a seaworthy vessel by, among other items, by, among other items, failing to:

(A)   provide and maintain a safe, non-hazardous place for Plaintiff to work;

(B)   provide and maintain a safe, non-hazardous and safe methods and manner for the Plaintiff to work;

(C)   provide and maintain safe, non-hazardous equipment and appliances on board the vessel;

(D)   provide and maintain safe, non-hazardous work policies and procedures on board the vessel;

73

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

(E)    correct known dangerous conditions on board the vessel;

(F)    provide adequate supervision, training and instruction as to basic safety matters;

(G)    provide safety rules and require the use of safety gear;

(H)    recognize danger and provide proper warnings;

(I)    undertake proper inspections of the vessel;

(J)    promulgate proper warnings of known hazards on board the vessel;

(K)    implement adequate safety rules, measures and practices on board the vessel;

(L)    perform a Job Safety Analysis ("JSA") prior to commencement of work and while work was being performed;

(M)    comply with ISM requirements to establish, comply with, and audit a Safety Management Plan ("SMP");

(N)    comply with several regulations, standards, and industry best practices including the International Safety Management Code ("ISM Code"), the Occupational Health and Safety Assessment Standard ("OHSAS" 18001), the Maritime Labor Convention, the Safety and Environmental Management Systems ("SEMS") regulations for the offshore industry in the United States; the Occupational Safety and Health Act ("OSHA"); the International Convention for the Safety of Life At Sea ("SOLAS"); and 46 U.S.C. 3201-3205 which requires, among other things, that maritime ship operators and employers develop and implement Safety Management Plans approved by the United States Coast Guard;

(O)    provide safe and proper equipment so that duties could be performed with reasonable safety and failure to train crew to perform their duties safely;

(P)    provide adequate supervision and instruction as to basic safety matters on board the vessel;

(Q)    provide adequate ability to communicate on board ship given the language barriers and that the Polish seaman could not communicate in any other language to other crew or to health care providers;

(R)    provide adequate supervision on board the vessel;

74

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

(S)     provide non-negligent orders, instructions, and suggestions to Plaintiff regarding his work;

(T)     by overworking the Plaintiff requiring excessive duty and overtime causing undue stress and fatigue;

(U)     by negligently assigning duties to Plaintiff and other crew;

(V)     by failing to provide appropriate protective clothing, and safety gear including respiratory gear and thermal protection;

(W)    by providing inadequate safety equipment;

(X)     by failing to comply with industry custom and practice;

(Y)     by failing to provide adequate medical treatment to Plaintiff following Plaintiff's injuries, thereby causing aggravation to Plaintiff's injuries;

(Z)     by failing to diagnose the Plaintiff's medical condition, including, but not limited to stroke, on board ship, and failing to timely evacuate the Plaintiff for medical care;

(aa)    by acquiescing to the unsafe operation of the vessel as set forth herein; and

(bb)    by otherwise utilize reasonable care in regard to their acts and omissions, thereby causing injuries and aggravation of injuries to Plaintiff, as will be uncovered as discovery and investigation continue.

238.    As a direct and proximate result of Defendants' breach of duty, on or before December 13, 2012, Plaintiff, ANDREZEJ TARASEWICZ, sustained serious bodily injury, including injury to various areas of his body, all resulting in pain and suffering, aggravation of a pre-existing condition, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. The losses are either permanent or continuing in nature and Plaintiff will suffer ongoing losses in the future.

WHEREFORE, Plaintiff, ANDREZEJ TARASEWICZ, individually, demands judgment for his damages from Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

"LIBERTY OF THE SEAS", MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE, jointly and severally, in an amount in excess of $77,018,750.00 together with pre-judgment interest, costs, punitive damages exceeding $194,450,000.00, general relief, and for such other and further relief that this Court deems just and proper.

## COUNT III

### FAILURE TO PROVIDE MAINTENANCE, CURE
### AND UNEARNED WAGES

### (AGAINST RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE)

239.    Plaintiff re-alleges paragraphs 1 through 218 above as if fully set forth herein.

240.    At all material times, the Plaintiff, ANDREZEJ TARASEWICZ, brings this cause of action pursuant to the *General Maritime Law of the United States*.

241.    At all material times, Plaintiff was injured in the course and scope of his employment on board the vessel, and was injured as a direct and proximate result of the negligence of Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG,

76

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

and AMT MARINE, in the operation of the vessel and/or unseaworthiness of the vessel.

242.    Upon Plaintiff becoming ill and injured as aforesaid, it became the absolute duty of Defendants to promptly furnish Plaintiff with medical care and attention and medicines, expenses of his maintenance and cure, and unearned wages, until Plaintiff is able to return to his employment on the vessel or otherwise reaches maximum cure. Defendants' duty was absolute and existed regardless of their fault for Plaintiff's injury.

243.    RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE, were aware of Plaintiff's injuries. The Defendants were advised of Plaintiff's injury shortly after it occurred. Nevertheless, Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS" KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE, largely ignored Plaintiff's demands and, without just cause, have failed and refused to pay Plaintiff the full and complete maintenance, cure earned and unearned wages to which he is entitled until he is able to return to his employment on the vessel or otherwise reaches maximum cure.

244.    Defendants' refusal to pay Plaintiff maintenance, cure earned and unearned wages neither has nor had any basis in law or fact, and Defendants have not asserted and do not now assert that Plaintiff did not become injured while in the service of the vessel. Defendants' failure to pay Plaintiff maintenance and cure, and unearned wages, came before and after being advised

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

that Plaintiff could no longer care for himself and could not afford necessary medical treatment.

245.   Defendants had an absolute duty to promptly investigate and fully and completely pay Plaintiff's claim. Yet, Defendants refused to pay Plaintiff the maintenance, cure earned and unearned wages owed to date.

246.   Defendants' failure to pay Plaintiff the maintenance and cure, earned and unearned wages, to which he is entitled, was intentional, arbitrary, reckless, malicious, wilful, wanton, and in callous disregard of Plaintiff's health and well-being.

247.   By reason of the foregoing, Plaintiff was required to retain the services of the undersigned counsel to assist him in collecting sums that are rightfully due him as maintenance, cure earned and unearned wages, and has obligated himself to pay reasonable attorneys' fees for legal services in regard to the collection of maintenance, cure and unearned wages rightfully due him.

248.   At all material times, the Plaintiff has brought the damages claimed in his December 1, 2013 maintenance and cure demand current through May 1, 2014, and hereby makes demand as follows:

| | |
|---|---|
| **Past Cure (Medical Expenses):** | **$898,376.80** |
| **Maintenance (Living Expenses):** | **$7,200.00** |
| **Unearned Wages:** | **$37,490.00** |
| **TOTAL:** | **$943,066.80** |

249.   By reason of the foregoing, Plaintiff, ANDREZEJ TARASEWICZ, individually, prays that Defendants, jointly and severally, be ordered to pay all maintenance, cure and unearned wages due and owing him, together with interest thereon, reasonable attorneys' fees and costs to

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

the undersigned counsel for legal counsel and assistance rendered in collecting Plaintiff's maintenance, cure and unearned wages, and for punitive damages given Defendants' malicious and outrageous conduct.

250.    As a direct and proximate result of Defendants' breach of duty and failure to provide Plaintiff with maintenance, cure and unearned wages, Plaintiff has suffered further and additional serious bodily injury, including additional injuries to various areas of his body, all resulting in additional pain and suffering, and additional aggravation of a pre-existing condition, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and additional loss of the ability to earn money. These losses are either permanent or continuing in nature and Plaintiff will suffer ongoing losses in the future.

WHEREFORE, Plaintiff, ANDREZEJ TARASEWICZ, individually, demands judgment for his damages from Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE, jointly and severally, in an amount in excess of $77,018,750.00 together with pre-judgment interest, costs, attorneys' fees, general relief, punitive damages exceeding $194,450,000.00, and for such other and further relief that this Court deems just and proper.

//

79

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

## COUNT IV

### FAILURE TO PAY EARNED WAGES

**(AGAINST RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AND AMT MARINE)**

251.    The Plaintiff re-alleges paragraphs 1 through 218 above as if fully set forth herein.

252.    At all material times, the Plaintiff, ANDREZEJ TARASEWICZ, brings this cause of action pursuant to the *General Maritime Law of the United States*, the *Laws of the State of Florida,* the *Federal Laws of The United States*, and *46 U.S.C. §10313.*

253.    At all material times, Plaintiff was employed as a seaman on board the M/V "LIBERTY OF THE SEAS" in exchange for the payment of wages in the sum of $163.00 per day plus expenses and subsistence, all of which Defendants agreed to pay.

254.    Plaintiff has not been paid wages which are rightfully due and owing and Defendants have failed to pay Plaintiff's wages without any basis in law or fact.

255.    By reason of the refusal and neglect to pay Plaintiff's wages when the wages became due and owing, Plaintiff has been damaged and pursuant to the *General Maritime Law of the United States*, the *Laws of the State of Florida,* the *Federal Laws of The United States*, and *46 U.S.C. §10313*, Plaintiff is entitled to penalty wages of two days pay for each and every day during which payment is delayed in an amount believed to be in excess of the jurisdictional requirements of this Court and to be determined with specificity at time of trial.

256.    At all material times, the Plaintiff has brought the damages claimed in his December 1, 2013 maintenance and cure demand current through May 1, 2014, and hereby makes

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

demand as follows:

| | |
|---|---|
| **Earned Wages (11/2012):** | $5,217.73 |
| **Earned Wages (12/2012):** | $2,252.74 |
| **Penalty Wages (11/2012):** | $168,868.00 |
| **Penalty Wages (12/2012):** | $158,762.00 |
| **TOTAL:** | $335,100.47 |

WHEREFORE, Plaintiff, ANDREZEJ TARASEWICZ, individually, demands judgment for his damages from Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, jointly and severally, in an amount in excess of the jurisdictional requirements of this Court together with pre-judgment interest, costs, attorneys' fees, general relief, punitive damages, and for such other and further relief that this Court deems just and proper.

//

//

//

//

//

//

//

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
<u>Verified Complaint for Damages</u>

**COUNT V**

<u>**NEGLIGENCE**</u>

**(AGAINST RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AND AMT MARINE)**

257.     Plaintiff re-alleges paragraphs 1 through 218 above as if fully set forth herein.

258.     At all material times, the Plaintiff, ANDREZEJ TARASEWICZ, brings this cause of action is brought pursuant to the *General Maritime Law of the United States*.

259.     At all material times, Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, owed Plaintiff an absolute duty of reasonable care to act non-negligently, and to provide Plaintiff a safe place to work.

260.     At all material times, the Plaintiffs are informed, believe and thereupon allege that the M/V "LIBERTY OF THE SEAS" was and is a commercial passenger vessel subject to a number of regulations, laws, statute, treaties and conventions intended to promote maritime safety including the safety of the passengers and crew on board, including the Plaintiff herein.

261.     At all material times and as is more specifically outlined below, by virtue of the Defendants', and each of them, breach of regulations, laws, statutes, treaties and/or conventions intended to promote maritime safety, the *General Maritime Law* imposes the "Pennsylvania Rule"

82

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

(*See*, The Pennsylvania, 86 U.S. 125 (1873)), which presumes that the Defendants' violation is a contributing cause of the Plaintiff's injuries and shifts the burden to the Defendants' to show not merely that their fault might not have been one of the causes, or that it probably was not, but that it could not have been a cause of the Plaintiff's injuries. The recognized purpose of the rule is to force strict compliance with maritime regulations pertaining to the safe operation of ships.

262.   At all material times, Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, its captains, crew, agents, servants, employees, and representatives acting within the course and scope of their employment, breached their duty owed to Plaintiff and were negligent by, among other items, by, among other items, failing to:

      (A)    provide and maintain a safe, non-hazardous place for Plaintiff to work;

      (B)    provide and maintain a safe, non-hazardous and safe methods and manner for the Plaintiff to work;

      (C)    provide and maintain safe, non-hazardous equipment and appliances on board the vessel;

      (D)    provide and maintain safe, non-hazardous work policies and procedures on board the vessel;

      (E)    correct known dangerous conditions on board the vessel;

      (F)    provide adequate supervision, training and instruction as to basic safety matters;

      (G)    provide safety rules and require the use of safety gear;

      (H)    recognize danger and provide proper warnings;

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

(I)     undertake proper inspections of the vessel;

(J)     promulgate proper warnings of known hazards on board the vessel;

(K)     implement adequate safety rules, measures and practices on board the
        vessel;

(L)     perform a Job Safety Analysis ("JSA") prior to commencement of work and
        while work was being performed;

(M)     comply with ISM requirements to establish, comply with, and audit a Safety
        Management Plan ("SMP");

(N)     comply with several regulations, standards, and industry best practices
        including the International Safety Management Code ("ISM Code"), the
        Occupational Health and Safety Assessment Standard ("OHSAS" 18001),
        the Maritime Labor Convention, the Safety and Environmental
        Management Systems ("SEMS") regulations for the offshore industry in the
        United States; the Occupational Safety and Health Act ("OSHA"); the
        International Convention for the Safety of Life At Sea ("SOLAS"); and 46
        U.S.C. 3201-3205 which requires, among other things, that maritime ship
        operators and employers develop and implement Safety Management Plans
        approved by the United States Coast Guard;

(O)     provide safe and proper equipment so that duties could be performed with
        reasonable safety and failure to train crew to perform their duties safely;

(P)     provide adequate supervision and instruction as to basic safety matters on
        board the vessel;

(Q)     provide adequate ability to communicate on board ship given the language
        barriers and that the Polish seaman could not communicate in any other
        language to other crew or to health care providers;

(R)     provide adequate supervision on board the vessel;

(S)     provide non-negligent orders, instructions, and suggestions to Plaintiff
        regarding his work;

(T)     by overworking the Plaintiff requiring excessive duty and overtime causing
        undue stress and fatigue;

(U)     by negligently assigning duties to Plaintiff and other crew;

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

(V)     by failing to provide appropriate protective clothing, and safety gear including respiratory gear and thermal protection;

(W)     by providing inadequate safety equipment;

(X)     by failing to comply with industry custom and practice;

(Y)     by failing to provide adequate medical treatment to Plaintiff following Plaintiff's injuries, thereby causing aggravation to Plaintiff's injuries;

(Z)     by failing to diagnose the Plaintiff's medical condition, including, but not limited to stroke, on board ship, and failing to timely evacuate the Plaintiff for medical care;

(aa)    by acquiescing to the unsafe operation of the vessel as set forth herein; and

(bb)    by otherwise utilize reasonable care in regard to their acts and omissions, thereby causing injuries and aggravation of injuries to Plaintiff, as will be uncovered as discovery and investigation continue.

263.   As a direct and proximate result of Defendants' breach of duty, on or before December 13, 2012, Plaintiff, ANDREZEJ TARASEWICZ, sustained serious bodily injury, to various areas of his body, all resulting in pain and suffering, aggravation of a pre-existing condition, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and loss of ability to earn money. The losses are either permanent or continuing in nature and Plaintiff will suffer ongoing losses in the future.

WHEREFORE, Plaintiff, ANDREZEJ TARASEWICZ, individually, demands judgment for his damages from Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, in an amount in excess of $77,018,750.00

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

together with pre-judgment interest, costs, punitive damages exceeding $194,450,000.00, general

relief, and for such other and further relief that this Court deems just and proper.

## COUNT VI
## LOSS OF CONSORTIUM

**(AGAINST RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, and CEGA)**

264.    Plaintiff re-alleges paragraphs 1 through 218 above as if fully set forth herein.

265.    At all material times, and as a direct and proximate result of RCCL, ROYAL

CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS" KJETIL GJERSTAD,

MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL

HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN

TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, and

CEGA's negligence, Plaintiff, JOANNA PASCHILKE TARASEWICZ, has in the past suffered

and will in the future continue to suffer the loss of consortium of her husband, ANDREZEJ

TARASEWICZ, and has suffered the loss of his services, comfort, society, attentions, and has

become indebted for his economic expenses including medical expenses and will lose other

economic and non-economic benefit, in the past and in the future, from the loss of her husband.

WHEREFORE, Plaintiff, JOANNA PASCHILKE TARASEWICZ, individually, demands

judgment for her damages from Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL,

M/V "LIBERTY OF THE SEAS" KJETIL GJERSTAD, MARINE GLOBAL GROUP AS,

MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH

MARINE GGG, PETER STRANDBERG, AMT MARINE, and CEGA, in an amount in excess of

$19,437,500.00 together with pre-judgment interest, costs, general relief, punitive damages, and

for such other and further relief that this Court deems just and proper.

## COUNT VII
## MARITIME LIEN

### (AGAINST THE M/V "LIBERTY OF THE SEAS")

266.    Plaintiffs re-allege paragraphs 1 through 218, and Counts I through VI, above as if

fully set forth against Defendant, M/V "LIBERTY OF THE SEAS", herein.

267.    At all material times, the Plaintiffs, ANDREZEJ TARASEWICZ and JOANNA

PASCHILKE TARASEWICZ, bring this cause of action pursuant to the *General Maritime Law

of the United* States, including, but not limited to 46 U.S.C. 31301 (*Maritime Liens*).

268.    At all material times, the negligence of Defendants as alleged in Count I, the

unseaworthiness of the vessel as alleged in Count II, the Defendants' failure to pay maintenance,

cure earned and unearned wages as alleged in Count III, the Defendants' failure to pay wages as

set forth in Count IV, the Defendants' negligence as alleged in Count V, and the loss of consortium

as set forth in Count VI, give rise to a maritime lien against the M/V "LIBERTY OF THE SEAS"

in favor of Plaintiffs, ANDREZEJ TARASEWICZ and JOANNA PASCHILKE TARASEWICZ,

in a sum in excess of $96,456,250.00.

269.    At all material times, the services provided by Plaintiff to the vessel as a member

of its crew were necessary to the function and mission of the vessel; were necessary for the use of

the vessel; were provided in reliance on the credit of the vessel; and were provided upon the

demand of the vessel, the vessel's owner, master, charterer, agent, or other duly accredited

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

representative of the vessel authorized in fact or law to bind the vessel.

270.    At all material times, and by reason of the preceding, Plaintiffs have a maritime lien against the vessel in an amount in excess of $96,456,250.00 and accordingly request that the vessel be immediately arrested pursuant to Rule C of the Supplemental Rules For Certain Admiralty and Maritime Claims to secure Plaintiffs' *in rem* claims against the vessel.

**WHEREFORE**, the PLAINTIFFS, ANDREZEJ TARASEWICZ and JOANNA PASCHILKE TARASEWICZ, pray:

A.    That judgment be entered against Defendant, M/V "LIBERTY OF THE SEAS", her engines, tackle, freights, etc., in the amount exceeding $96,456,250.00 plus interest, reasonable attorney's fees, and costs;

B.    That a warrant of arrest be issued against the M/V "LIBERTY OF THE SEAS", her boilers, engines, tackle, equipment, freight, appurtenances, etc., *in rem*, and that all persons/entities claiming any right, title, or interest therein may be cited to appear and answer all and singular the matters aforesaid;

C.    That Defendant vessel, M/V "LIBERTY OF THE SEAS", her engines, tackle, freights, etc. be arrested pursuant to Supplemental Rule C to the extent of Plaintiffs' maritime liens against her in the amount of at least $96,456,250.00, plus interest, costs, and attorney's fees;

D.    That the M/V "LIBERTY OF THE SEAS", her engines, tackle, freights, etc., be condemned and sold and the proceeds applied to pay Plaintiff a sum equal to the extent of the maritime liens asserted above and a sum equal to the damages found by this Court to have been suffered by Plaintiff in the amount of at least $96,456,250.00, plus interest, costs, and attorneys' fees;

E.    That Plaintiff may have such other relief as may be deemed just and proper.

//

//

//

//

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

## COUNT VIII

### NEGLIGENCE
### (AGAINST CEGA GROUP SERVICES LTD.)

271.    Plaintiff re-alleges paragraphs 1 through 218 above as if fully set forth herein

272.    At all material times, this cause of action is brought pursuant to the *General Maritime Law of the United States*.

273.    At all times material hereto, Plaintiff was injured in the course and scope of his employment on board the vessel, and was injured as a direct and proximate result of the negligence of Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, and CEGA, in the operation of the vessel and/or unseaworthiness of the vessel.

274.    At all material times, upon Plaintiff becoming ill and injured as aforesaid, it became the absolute duty of Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS" KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, and CEGA, to promptly furnish Plaintiff with medical care and attention and medicines, expenses of his maintenance and cure, and unearned wages, until Plaintiff is able to return to his employment on the vessel or otherwise reaches maximum cure. Defendants' duty was absolute and existed regardless of their fault for Plaintiff's

89

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

injury.

275.    The Plaintiff is informed, believes and thereupon, alleges that Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS" KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, and AMT MARINE, retained the services of CEGA to administer the Plaintiff's maintenance, cure and unearned wage claim.

276.    At all material times, Defendant, CEGA, owed the Plaintiff a duty of reasonable care to administer the Plaintiff's maintenance, cure and unearned wage claim non-negligently.

277.    At all material times, CEGA, breached its duty of reasonable care and failed to non-negligently administer the Plaintiff's maintenance and cure claim.

278.    At all material times, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS", KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, and CEGA were aware of Plaintiff's injuries. The Defendants were advised of the Plaintiff's injury shortly after it occurred. Nevertheless, Defendants, RCCL, ROYAL CARIBBEAN INTERNATIONAL, M/V "LIBERTY OF THE SEAS" KJETIL GJERSTAD, MARINE GLOBAL GROUP AS, MARINE GLOBAL GROUP NORWAY, MARINE GLOBAL HOLDING, MARINE GLOBAL SWEDEN, MARINE

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

GLOBAL GROUP, YARA, GREEN TECH MARINE, GREEN TECH MARINE GGG, PETER STRANDBERG, AMT MARINE, and CEGA largely ignored Plaintiff's demands and, without just cause, have failed and refused to pay Plaintiff the full and complete maintenance, cure and unearned wages to which he is entitled until he is able to return to his employment on the vessel or otherwise reaches maximum cure.

279.   At all material times, Defendants' refusal to pay Plaintiff maintenance, cure and unearned wages neither has nor had any basis in law or fact, and Defendants have not asserted and do not now assert that Plaintiff did not become injured while in the service of the vessel. Defendants' failure to pay Plaintiff maintenance and cure, and unearned wages, came before and after being advised that Plaintiff could no longer care for himself and could not afford necessary medical treatment.

280.   At all material times, CEGA had an absolute duty to promptly investigate and fully and completely pay Plaintiff's claim. Yet CEGA refused to pay Plaintiff the maintenance, cure and unearned wages owed to date.

281.   At all material times, CEGA's failure to pay Plaintiff the maintenance and cure, and unearned wages, to which he is entitled, was intentional, arbitrary, reckless, malicious, wilful, wanton, and in callous disregard of Plaintiff's health and well-being.

282.   At all material times, by reason of the foregoing, Plaintiff was required to retain the services of the undersigned counsel to assist him in collecting sums that are rightfully due him as maintenance, cure and unearned wages, and has obligated himself to pay reasonable attorneys' fees for legal services in regard to the collection of maintenance, cure and unearned wages rightfully due him.

283.   At all material times and by reason of the foregoing, Plaintiff, ANDREZEJ

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

TARASEWICZ, individually, prays that CEGA be ordered to pay all maintenance, cure and unearned wages due and owing him, together with interest thereon, reasonable attorneys' fees and costs to the undersigned counsel for legal counsel and assistance rendered in collecting Plaintiff's maintenance, cure and unearned wages, and for punitive damages given CEGA's malicious and outrageous conduct.

284.    At all material times and as a direct and proximate result of CEGA's breach of duty and failure to provide Plaintiff with maintenance, cure and unearned wages, Plaintiff has suffered further and additional serious bodily injury, including additional injuries to various areas of his body, all resulting in additional pain and suffering, and additional aggravation of a pre-existing condition, disability, disfigurement, mental anguish, loss of the capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, and additional loss of the ability to earn money. These losses are either permanent or continuing in nature and Plaintiff will suffer ongoing losses in the future.

WHEREFORE, Plaintiff, ANDREZEJ TARASEWICZ, individually, demands judgment for his damages from Defendant, CEGA, in an amount in excess of $77,018,750.00 together with pre-judgment interest, costs, attorneys' fees, general relief, punitive damages exceeding $194,450,000.00, and for such other and further relief that this Court deems just and proper.

## IX.

## JURY TRIAL DEMAND

### (ALL COUNTS)

285.    Plaintiff, ANDREZEJ TARASEWICZ, hereby demands trial by jury on all counts, claims and defenses so triable.

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
<u>Verified Complaint for Damages</u>

Dated: April 14, 2014

Respectfully Submitted,

| | | |
|---|---|---|
| Michael W. McLeod, Esq. | Mario R Arango, Esq. | John F. Romano, Esq. |
| Fla. Bar #956831 | Fla. Bar # 136890 | Fla. Bar # 175700 |
| Rumrell, Bate, McLeod & | De Varona, Arango & | Physical Address: |
| Brock, P.A. | Weinstein LLC | EcoCentre |
| Mailing Address: | 75 Valencia Avenue | The Living Building |
| 24 Cathedral Place, Suite 504 | Suite 100 | 1005 Lake Avenue |
| St. Augustine, Florida 32084 | Coral Gables, FL 33134 | Lake Worth, FL 33460 |
| Physical Address: | (305) 441-7400 Office | Mailing Address: |
| 1200 North Federal Highway | (305) 441-7888 Fax | P.O. Box 21349 |
| Suite 200 | marango@lawd-a.com | West Palm Beach, FL 33416 |
| Boca Raton, FL 33432 | Co-Counsel for Plaintiffs | (561) 533-6700 Office |
| (561) 350-7010 Cellular | | (561) 533-1285 Fax |
| (904) 996-1100 Office | | john@romanolawgroup.com |
| (904) 825-0287 Fax | | Co-Counsel for Plaintiffs |
| mmcleod@rumrelllaw.com | | |
| Co-Counsel for Plaintiffs | | |

By: _____       By: _____       By: _____
Michael W. McLeod, Esq.              Mario R Arango, Esq.              John F. Romano, Esq.
Fla. Bar #956831                     Fla. Bar #136890                 Fla. Bar #175700

Malgorzata J. Kon, Esq.
Fla. Bar. #456410
Kon & Associates, L.L.C.
2131 Hollywood Blvd., Ste. 201
Hollywood, Florida 33020
Telephone: (954) 925-4102
Facsimile: (954) 925-4104
Email: mkonlaw@aol.com
Co-Counsel for Plaintiffs

By: _____
Malgorzata J. Kon, Esq.
Fla. Bar #456410

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

### VERIFICATION

STATE OF FLORIDA

COUNTY OF BROWARD

BEFORE ME, the undersigned authority, a Notary Public, duly commissioned and qualified within and for the State and County aforesaid, personally came and appeared ANDREZEJ TARASEWICZ, who, being by me first duly sworn, did depose and say: *has been read to me in the Polish language*

That he is the Plaintiff in this action and that ~~he has read~~ the foregoing Complaint and that all and singular the allegations thereof are within his personal knowledge and are true and correct to the best of his knowledge, information, and belief.

Executed on April _11_, 2014.

BY: _A Tavasewicz_
ANDREZEJ TARASEWICZ

STATE OF FLORIDA

                              SS:

COUNTY OF BREVARD

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State and County aforesaid to take acknowledgments, personally appeared ANDREZEJ TARASEWICZ, who is personally known to me, and who did take an oath and acknowledge before me that he executed the foregoing to the best of his knowledge and belief.

WITNESS my hand and seal in the County and State last aforesaid, this _11_th day of April, 2014.

Sign: _____

Print: _MALGORZATA J. KON_

Notary Public, State of Florida
at Large

My Commission Expires:

MALGORZATA KON
Notary Public - State of Florida
My Comm. Expires Jun 25, 2017
Commission # FF 019538
Bonded Through National Notary Assn.

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
Verified Complaint for Damages

This certificate is attached to a ___ page document dealing with/entitled
_____ and
dated_____.

## AFFIDAVIT OF TRANSLATOR

State of _Florida_
County of _Broward_

I, _Katarzyna Zielinski_ hereby swear (affirm) that I know the English and the Polish languages, and can translate from either of the into the other, and that I have made a accurate and complete translation of the _Verified Complaint_ to _Andrzej Tarasewicz_ on this _11_ day of _April_, 2014.

_[signature]_
Signature of Translator

_Katarzyna Zielinski_
Printed Name of Translator

Sworn to (or affirmed) and subscribed before me this _10_ day of _April_, 2014, by
_Katarzyna Zielinski_

_Notary Seal_

_[signature]_
Signature of Notary Public, State of Florida

_MALGORZATA J KON_
Print, Type, or Stamp Commissioned Name of Notary

Public

MALGORZATA KON
Notary Public - State of Florida
My Comm. Expires Jun 25, 2017
Commission # FF 019638
Bonded Through National Notary Assn.

__ Personally Known
_✓_ Produced Identification

Type of Identification _FL DL_

ANDREZEJ TARASEWICZ v. ROYAL CARIBBEAN CRUISES LTD., et al.
<u>Verified Complaint for Damages</u>

<u>LOCAL ADMIRALTY RULE C(1) and A(5)VERIFICATION BY COUNSEL</u>

STATE OF FLORIDA
COUNTY OF PALM BEACH

BEFORE ME, the undersigned authority, a Notary Public, duly commissioned and qualified within and for the State and County aforesaid, personally came and appeared, MICHAEL W. McLEOD, who, being by me first duly sworn, did depose and say:

That he is counsel of record for the Plaintiff, JOANNA PASCHILKE TARASEWICZ, along with MARIO R. ARANGO, ESQ., MALGORZATA J. KON, ESQ., and JOHN F. ROMANO, ESQ., and that she has read the foregoing Complaint or that it has been read to her in Polish and that all and singular the allegations thereof are true and correct to the best of her knowledge, information, and belief based personal knowledge and/or representations made by Plaintiff, ANDREZEJ TARASEWICZ.

I, MICHAEL W. McLEOD, ESQ. have been authorized to execute this verification on behalf of Plaintiff, JOANNA PASCHILKE TARASEWICZ, who is presently physically located outside of the geographic jurisdictional boundaries of the United States District Court for the Southern District of Florida residing in the country of POLAND, and is beyond the reach of a United States Notary.

Executed on April /4/2014.                    BY: _____
                                                    MICHAEL W. McLEOD for, on behalf of,
                                                    and as authorized agent of JOANNA
                                                    PASCHILKE TARASEWICZ

STATE OF FLORIDA
                              SS:
COUNTY OF PALM BEACH

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State and County aforesaid to take acknowledgments, personally appeared MICHAEL W. McLEOD, who is personally known to me, and who did take an oath and acknowledge before me that he executed the foregoing to the best of his knowledge and belief.

WITNESS my hand and seal in the County and State last aforesaid, this ⁀ th day of April, 2014.

Sign: _____

Print: _Amanda Breigh Medeiros_

Notary Public, State of Florida
at Large

My Commission Expires:

June 27, 2016

96

AMANDA BREIGH MEDEIROS
MY COMMISSION # EE212159
EXPIRES June 27 2016
(407) 398-0153     FloridaNotaryService.com

# EXHIBIT "A"

**From:** peter.strandberg@greentechmarine.com
**To:** jaroslaw.tarasewicz@hotmail.com
**Subject:** SV: Update Ref 495945 about Andrzej Tarasewicz
**Date:** Sat, 22 Dec 2012 12:55:53 +0100

Hi

The strange thing is that if he not had have an insurance the hospital need to take care of him until full recovery. Now it is a discussion between the insurance companies. You should contact a lawyer and ask him what to do. If you need any assistance I will try to help as much as I can.
Regarding the onboard treatment and diagnostic failure from the ship's doctor I'm totally agree. This was a rely bad an d to slow evaluation and reaction.

Regards
Peter Strandberg
Managing Director
Green Tech Marine AS
Lundeveien 171
4550 Farsund Norway
Cell: + 47-90139336

**Fra:** Jaroslaw Tarasewicz [mailto:jaroslaw.tarasewicz@hotmail.com]
**Sendt:** 22. desember 2012 00:37
**Til:** assistance@cegagroup.com; peter.strandberg@greentechmarine.com
**Emne:** Update Ref 495945 about Andrzej Tarasewicz
**Viktighet:** Høy

Dear Sir/Madame
My name is Jaroslaw Tarasewicz,
I am a brother of Andrzej Tarasewicz. My brother had a stroke at work. He works for Green Tech Marine AS. He is insured in your company. Hi is in Broward General Hospital, Fort Lauderdale in Miami room no 6016. His condition is no good. I am in constant contact with doctors in Miami. Against stroke my brother was to the doctor several times on the ship and they did not recognize the disease. Today I spoke with a doctor who takes care of my brother. The doctor informed me that your company wants to take my brother from the hospital in Miami.
My brother is not insured in Poland. We do not have money to treat him. The accident was at work. My brother is insured only in your' company. I want to get my broth er was being treated in Miami. The family did not agree to carry him to the Polish cause here waiting for him to die. We kindly ask you as an insurer for further assistance and professional approach to a very sick man. You are an insurance company. At the moment, we have a contact with lawyer by the embassy, which will take care of this matter in Miami. The Lawyer will contact with your company.
 I would be very grateful if You would reply as soon as possible
Jaroslaw Tarasewicz



EXHIBIT
A

# EXHIBIT "B"

1

STATE OF FLORIDA

DIVISION OF ADMINISTRATIVE HEARINGS

OFFICE OF THE JUDGE OF COMPENSATION CLAIMS

DADE DISTRICT


ANDRZEJ TARASEWICZ,

 COPY

Employee/Claimant,

vs.                    No. 13-001294


ROYAL CARIBBEAN CRUISE LINE, &

GALLAGHER BASSETT SERVICES, MIAMI,


Alleged Employer/Carrier.


------------------------------------x


75 Valencia Avenue, #100

Coral Gables, Florida

Thursday, 10:48 a.m.

August 8, 2013



D E P O S I T I O N

of

STACEY STANLEY

taken on behalf of the Employee/Claimant pursuant to

a notice of taking deposition duces tecum


\*      \*      \*      \*

EXHIBIT
B

FRIEDMAN, LOMBARDI & OLSON
C O U R T   R E P O R T E R S

2

1    APPEARANCES:

2    DE VARONA, ARANGO & WEINSTEIN, LLC, by

     MARIO R. ARANGO, ESQ., of counsel

3    Attorneys for Employee/Claimant

4

5    PYSZKA, BLACKMON, LEVY, MOWERS & KELLEY, by

     ADAM STUART BARON, ESQ., of counsel (Via-telephone)

6    Attorneys for Alleged Employer/Carrier

7

8    ALSO PRESENT WITH WITNESS: Janet Palacio, Notary,

     Commission #DD899236, Expiration 10/14/2013

9

10                        I N D E X

11   WITNESS              DIRECT  CROSS  REDIRECT

12   Stacey Stanley  (Via-telephone)

13     (By Mr. Arango)     3              19

14     (By Mr. Baron)            15

15

16

17                      EXHIBITS

18   EMPLOYEE/CLAIMANT'S                    PAGE

19   1                                      21

20

21   ALLEGED EMPLOYER/CARRIER

22   A                                      22

23   B                                      22

24

25

FRIEDMAN, LOMBARDI & OLSON
C O U R T   R E P O R T E R S

3

1       THEREUPON:

2                               STACEY STANLEY

3       was called as a witness by the Employee/Claimant,

4       and having been first duly sworn by the notary

5       present with the witness was examined and testified

6       as follows:

7                          DIRECT EXAMINATION

8       BY MR. ARANGO:

9            Q.    Would you please state your name and

10      business address for the record, ma'am?

11           A.    Sure, my name is Stacey Stanley, working

12      for Royal Caribbean Cruises at 1050 Caribbean

13      Way, Miami, Florida 33132.

14           Q.    Okay, and Ms. Stanley are you currently

15      employed?

16           A.    I am currently employed.

17           Q.    And by whom?

18           A.    With Royal Caribbean Cruises, L.T.D.

19           Q.    Okay, and when you say L.T.D.; what does

20      that mean?

21           A.    Limited.

22           Q.    Right.  Is that a Miami based company; is

23      it an international company?

24           A.    Well, we are Royal Caribbean International

25      but we are Miami based, I work in the corporate

FRIEDMAN, LOMBARDI & OLSON
C O U R T   R E P O R T E R S

4

1     headquarters.

2              Q.    And in what capacity?

3              A.    I work as a worker's comp coordinator and

4     crew claims adjuster.

5              Q.    Okay.  And just out of curiosity because

6     that's a pretty fancy title, what is a crews claims

7     adjuster?

8              A.    I handle personal bodily injury claims of

9     crew members aboard our ships.

10             Q.    Okay, and how long have you done that,

11    ma'am?

12             A.    Seven years.

13             Q.    Ms. Stanley, as I told you prior to the

14    deposition I don't anticipate this to be very long.

15                   I am going to limit my questions

16    today pretty much just to the issues concerning the

17    worker's compensation case, and even at that just a

18    few issues because what we are trying to determine

19    here is exactly if there is any coverage and what

20    coverage would apply.  So I am going to limit my

21    deposition to just, you know, just limited areas and

22    I do reserve the right to take your deposition again

23    in a more lengthy basis at a different time should

24    the need present itself.

25                   At this point, you know ma'am that we

1        A.   Yes.

2        Q.   -- under section J, subsection -- it looks

3  like one there?

4        A.   Supervisor?

5        Q.   Supervisor.

6        A.   Okay, yes.

7        Q.   It says, "Supplier -- which in this case

8  would be Green Tech -- agrees that all supplier

9  employees shall be under the control and direction

10  of and abide by the orders of the vessel's master

11  and other Royal Caribbean -- or R.C.L. employees

12  that shall be designated by the master".

13        A.   Okay.

14        Q.   I am not knowledgeable of the sea terms;

15  who is the master?

16        A.   That would be the Captain of the ship.

17        Q.   Okay.  So, in other words, the supplier no

18  matter who the subcontractor is is under the direct

19  control of the master; right?

20        A.   Correct.

21        Q.   And I am just trying to understand what

22  that means.  And then the work here is under the

23  control and direction of the master and other R.C.L.

24  employees as shall be designated by the master; is

25  that accurate?

EXHIBIT

_β_

1          A.    That's accurate.

2          Q.    Okay.   That's really -- if you want to

3    take a moment to find out if you can tell me where

4    the ship was between December 10th and

5    December 12th, that's really the only things I had.

6    Let me just very quickly ask you though, do you

7    anticipate being able to get the coverage that we

8    had identified on page ten subsection K, in the near

9    future?

10         A.    I am working on it.

11              MR. ARANGO:   Okay.   Alright.   Good enough.

12    Adam, --

13              MR. BARON:   Yes, sir?

14              MR. ARANGO:   -- do you have anything?

15              MR. BARON:   Just a few questions, and if

16    we need to retake the deposition obviously upon

17    getting new information, --

18              MR. ARANGO:   Right.

19              MR. BARON:   -- I reserve the right to ask

20    additional questions as well.

21              MR. ARANGO:   Of course.

22                        CROSS EXAMINATION

23    BY MR. BARON:

24         Q.    Just a few questions, Stacey.   Do you know

25    whether or not Mr. Tarasewicz was paid specifically

1       Q.   Right.

2       A.   I don't know.

3       Q.   Alright, and that's fine.  It's just that

4   your attorney brought it up in cross examination so

5   I was just trying to figure out if you guys had a

6   copy of that.

7       A.   No.

8       Q.   Alright, so if I understand what your

9   attorney is saying here, Green Tech hires A.M.T. as

10  a kind of subcontractor to supply the labor?

11      A.   Correct.

12      Q.   Okay, and then you contract Green Tech to

13  do the work?

14      A.   Correct.

15      Q.   And the work that is being done on the

16  ship is governed by this contract that we have

17  already identified as the agreement between Royal

18  Caribbean and Green Tech; right?

19      A.   Yes.

20      Q.   And then Green Tech performs the work

21  obviously for the benefit of Royal Caribbean, and

22  whatever employees Green Tech brings on are under

23  the direct control for details of the work under the

24  master or any Royal Caribbean Cruise Line employees

25  the master designates; right?

FRIEDMAN, LOMBARDI & OLSON
C O U R T   R E P O R T E R S

EXHIBIT
B

1          MR. BARON:  Object to form.

2     A.    Based on this contract, yes.

3     Q.    Okay.  I believe your attorney asked you,

4  he was not being paid directly by Royal Caribbean

5  but Royal Caribbean was paying Green Tech; right?

6     A.    Right, he was not paid directly through

7  Royal Caribbean.

8     Q.    Right.

9     A.    I am not sure as far as the monetary

10  compensation between Royal Caribbean and Green Tech,

11  but I mean we do have a contract with them.

12     Q.    Right.  Alright, good enough.  Then

13  basically that's all I have today.  I really

14  appreciate your time.  I trust this wasn't too

15  difficult for you.

16               I do want to go ahead and attach the

17  copy of the contract I was supplied as Claimant's

18  number one.  And ma'am, do you want to read or do

19  you want to waive; you know what that means?

20     A.    You mean the deposition?

21     Q.    Yes.

22     A.    Waive.

23     (Thereupon, the document referred to was marked

24  for identification as Employee's Exhibit No. 1.)

25     (Thereupon, the documents referred to were

# EXHIBIT "C"

# RUMRELL, BATE, MCLEOD & BROCK, P.A.

A PROFESSIONAL ASSOCIATION

## ATTORNEYS AT LAW

24 Cathedral Place
Suite 504
St. Augustine, FL 32084

TELEPHONE:  904-829-3300
FACSIMILE:   904-825-0287
WEBSITE: www.rumrelllaw.com
EMAIL: mmcleod@rumrelllaw.com

9995 Gate Parkway, North
Suite 400
Jacksonville, Florida 32246

201 Front Street
Suite 201
Key West, Florida 33040

3838 N. Tamiami Trail
Suite 414
Naples, FL 34103

1200 North Federal Highway
Suite 200
Boca Raton, Florida 33432

**Michael W. McLeod**

*Board Certified Admiralty & Maritime Law*
*(California & Florida)*
*Admitted FL, CA, NY*





***Please reply to Boca Raton

December 1, 2013

## VIA EXPRESS MAIL

✓ Royal Caribbean Cruises, Ltd.
 d/b/a Royal Caribbean, RCL and/or RCCL
✓ Royal Caribbean International f/k/a
 Royal Caribbean Cruise Line
 C/O Adam Goldstein, President & Chief
 Executive Officer
 1050 Caribbean Way
 Miami, FL
 Tel. (305) 539-6000

✓ M/V "Liberty of the Seas"
 IMO # 9330032
 C/O her Owner,
 Royal Caribbean Cruises, Ltd.
 d/b/a Royal Caribbean, RCL and/or RCCL
 Royal Caribbean International f/k/a
 Royal Caribbean Cruise Line
 C/O Adam Goldstein, President & Chief
 Executive Officer
 1050 Caribbean Way
 Miami, FL
 Tel. (305) 539-6000

✓ Kjetil Gjerstad, Master
 M/V "Liberty of the Seas"
 IMO # 9330032
 C/O her Owner,
 Royal Caribbean Cruises, Ltd.
 d/b/a Royal Caribbean, RCL and/or RCCL
 Royal Caribbean International f/k/a
 Royal Caribbean Cruise Line
 C/O Adam Goldstein, President & Chief
 Executive Officer
 1050 Caribbean Way
 Miami, FL
 Tel. (305) 539-6000

✓ Green Tech Marine AS
 C/O Peter Strandberg,
 Managing Director
 Lundevelen 171
 4550 Farsund, Norway
 PO Box 136, 4552
 Farsund, Norway
 Tel. +47 47 88 85 44



EXHIBIT
C

Royal Caribbean Cruises, Ltd.
Royal Caribbean International
M/V "Liberty of the Seas"
Kjetil Gjerstad, Master of M/V "Liberty of the Seas"
MGG
Green Tech Marine, AS
Marine Global Norway, AS
Marine Global Sweden, AB
Marine Global Group, Inc.
AMT Marine & Industrial Engineering, Ltd.
UK P&I Club
Thomas Miller (Americas), Inc.
Gallagher Bassett Services
Novae Underwriting Limited
CEGA Group Services, Ltd.
December 1, 2013
Page 2

MGG
C/O Green Tech Marine AS
C/O Peter Strandberg,
Managing Director
Lundevelen 171
4550 Farsund, Norway
PO Box 136, 4552
Farsund, Norway
Tel. +47 47 88 85 44

Marine Global Norway, AS
Marine Global Sweden, AB
Marine Global Group, Inc.
7280 NW 7th Street
Suite 106
Miami, Florida 33126

AMT Marine & Industrial Engineering
Limited
3 Brindley Road, Cardiff, CF11 8TX
Wales, UK
Tel. (442) 920-3770.22
Fax (442) 920-2266.16

UK P&I Club
Harbourside Financial Center
Plaza Five, Suite 2710
Jersey City, NJ 07311
Tel. 201-557-7300
Fax. 201-946-0167

Thomas Miller (Americas) Inc.
Harborside Financial Center
Plaza Five, Suite 2710
Jersey City, NJ 07311
Tel: 201-557-7300
Fax: 201-946-0167
Newjersey.ukclub@thomasmiller.com

Gallagher Bassett Services
P.O. Box 279310
Miramar, FL 33027
Tel. (800) 473-9009

Novae Underwriting Limited
71 Fenchurch Street
London EC3M 4HH
+44(0)20 7903 7300

CEGA Group Services Limited
Funtington Park, Cheesmans Lane
Funtington, Chichester, West Sussex
PO18 8UE, United Kingdom
Tel. +44(0)1243 621000
Fax +44(0)1243 773169

Royal Caribbean Cruises, Ltd.
Royal Caribbean International
M/V "Liberty of the Seas"
Kjetil Gjerstad, Master of M/V "Liberty of the Seas"
MGG
Green Tech Marine, AS
Marine Global Norway, AS
Marine Global Sweden, AB
Marine Global Group, Inc.
AMT Marine & Industrial Engineering, Ltd.
UK P&I Club
Thomas Miller (Americas), Inc.
Gallagher Bassett Services
Novae Underwriting Limited
CEGA Group Services, Ltd.
December 1, 2013
Page 3

---

Re:     **Andrezej Tarasewicz vs. Royal Caribbean Cruises, Ltd., Royal Caribbean International, MGG, Green Tech Marine, AS, Marine Global Norway, AS, Marine Global Sweden, AB, Marine Global Group, Inc., AMT Marine & Industrial Engineering, Ltd., Kjetil Gjerstad, as Master of the M/V "Liberty of the Seas",** *in personam,* **and the M/V "Liberty of the Seas",** *her* **engines, bowsprit, anchor, cables, chains, rigging, tackle, apparel, furniture and all accessories, hereunto appertaining and belonging to her,** *in rem.*
        **UK Club Ship No.: 360468**
        **IMO No. 933032**
        **Our File No.: 2009.01**
        **Date of Loss: December 13, 2012**

Dear Sir or Madame:

        Please be advised that the undersigned working in conjunction with John Romano, Esq., Mario Arango, Esq. and Malgorzata Kon, Esq. have been retained by Andrezej Tarasewicz relative to Mr. Tarasewicz's injury occurring on or about December 13, 2012, while working as a Jones Act seaman performing services furthering the function, mission and operation of the M/V "Liberty of the Seas" and living on board the vessel owned, operated, controlled and/or crewed by Royal Caribbean Cruises, Ltd., Royal Caribbean International, Kjetil Gjerstad, MGG, Green Tech Marine, AS, Marine Global, AS, Marine Global AB, Marine Global Group, Inc., and/or AMT Marine & Industrial Engineering.

        We understand that the vessel or its operating or crewing companies are insured by UK P&I Club, Thomas Miller (Americas), Inc., Gallagher Bassett Services, Novae Underwriting Limited, and/or CEGA Group Services Limited, and that these entities have been involved with the adjustment of Mr. Tarasewicz's claim for maintenance, cure, earned and unearned wages. Accordingly, we write to each of you as the entities responsible to Mr. Tarasewicz for the prompt payment of maintenance, cure, unearned wages, earned wages, and penalty wages.

Royal Caribbean Cruises, Ltd.
Royal Caribbean International
M/V "Liberty of the Seas"
Kjetil Gjerstad, Master of M/V "Liberty of the Seas"
MGG
Green Tech Marine, AS
Marine Global Norway, AS
Marine Global Sweden, AB
Marine Global Group, Inc.
AMT Marine & Industrial Engineering, Ltd.
UK P&I Club
Thomas Miller (Americas), Inc.
Gallagher Bassett Services
Novae Underwriting Limited
CEGA Group Services, Ltd.
December 1, 2013
Page 4

---

We also write to you further to the numerous telephone, facsimile and written communications exchanged between Mr. Tarasewicz and his counsel, Mario Arango, Esq., on one hand, and each of you on the other. Notwithstanding the dialogue, Mr. Tarasewicz's independent maintenance payments have been completely refused without explanation or justification, and are severely delinquent. We understand that Mr. Tarasewicz has not received any earned or unearned wages since his accident. We are further advised that only limited cure has been provided.

More specifically, we are advised that cure (medical expenses) was provided from December 13, 2012 following Mr. Tarasewicz's emergency medical evacuation from the vessel in Port Everglades, Florida to the Level V Trauma Facility at Broward General Hospital in Fort Lauderdale, Florida to January 11, 2013. To date, no explanation has been given for the unilateral termination of cure benefits on January 11, 2013 despite your knowledge that Mr. Tarasewicz required intensive care, remained critically hospitalized through March 13, 2013, and was in desperate need of medical care and intensive rehabilitation to prevent his injuries from becoming permanent and disabling. We also understand that you have been kept abreast of the seriousness of Mr. Tarasewicz's medical condition, his continuing digression, and need for ongoing care and treatment, yet no assistance has been offered.

**General Facts Pertinent to the Payment of Maintenance,**
**Cure, Unearned Wages, Earned Wages and Penalty Wages:**

Mr. Tarasewicz was hired as a seaman to work on board the M/V "Liberty of the Seas" on or about October 6, 2012 and was paid 12.00 euros per hour which is the equivalent of $16.30 (U.S. Dollars) per hour, $163.00/day, $1,141/week, based on an average ten hour work day. We are advised that Mr. Tarasewicz worked 8-12 hours per day, seven days per week, but do not have daily work logs and therefore restrict this demand to a ten hour work day.

Mr. Tarasewicz was hired to modify and repair an emission control system installed on the vessel during the spring of 2012. We understand that the emission control system was a land based

Royal Caribbean Cruises, Ltd.
Royal Caribbean International
M/V "Liberty of the Seas"
Kjetil Gjerstad, Master of M/V "Liberty of the Seas"
MGG
Green Tech Marine, AS
Marine Global Norway, AS
Marine Global Sweden, AB
Marine Global Group, Inc.
AMT Marine & Industrial Engineering, Ltd.
UK P&I Club
Thomas Miller (Americas), Inc.
Gallagher Bassett Services
Novae Underwriting Limited
CEGA Group Services, Ltd.
December 1, 2013
Page 5

---

application modified for use on an experimental basis to verify whether the land based application would function at sea to bring the vessel into compliance with international and domestic pollution laws and emission standards (including, but not limited to MEPC 184) thereby avoiding the imposition of severe penalties on the vessel and its owners/operators.

Mr. Tarasewicz's employment began on or about October 6, 2012 and, absent his accident and injury, would have continued through July 31, 2013 when repair work on the vessel's emission control system was completed. Mr. Tarasewicz lived and worked on board the vessel during his employment. The vessel operated from her home port in Ft. Lauderdale, Florida on weekly cruises departing from Port Everglades, Florida to the Caribbean returning to Port Everglades, Florida. Mr. Tarasewicz is a Polish national and was required to carry a C1/D Visa. Mr. Tarasewicz was also listed on the vessel's manifest as crew to permit him to live and work on the vessel while it was operating from Port Everglades, Florida, USA.

Mr. Tarasewicz was provided room and board on the vessel. Mr. Tarasewicz was provided a stateroom which included two beds, closet, mirror, desk & chair and telephone, and all utilities comparable to an Extended Stay America Hotel which charges rates between $74.00-110.00 per day depending on the length of the stay. Mr. Tarasewicz was provided three meals per day in compliance with 46 USC §10303.

Mr. Tarasewicz's injury occurred on December 13, 2012. Mr. Tarasewicz was evacuated from the vessel to Broward General Hospital and has not returned to his employment due to the severity of his injuries. We understand that repairs were completed to the vessel's experimental emission control system on or about July 31, 2013, and that the repair crew was repatriated to their home countries in Europe.

**The Maintenance, Cure and Unearned Wage Obligation:**

Every seaman who becomes ill or injured during his employment, regardless of any fault of the vessel owner or operator, is entitled to maintenance, cure and unearned wages as a matter

Royal Caribbean Cruises, Ltd.
Royal Caribbean International
M/V "Liberty of the Seas"
Kjetil Gjerstad, Master of M/V "Liberty of the Seas"
MGG
Green Tech Marine, AS
Marine Global Norway, AS
Marine Global Sweden, AB
Marine Global Group, Inc.
AMT Marine & Industrial Engineering, Ltd.
UK P&I Club
Thomas Miller (Americas), Inc.
Gallagher Bassett Services
Novae Underwriting Limited
CEGA Group Services, Ltd.
December 1, 2013
Page 6

---

of right. "Maintenance" is the seaman's reasonable expenses of room and board while ashore until the seaman is fit for duty. "Cure" is the reasonable medical expenses incurred by the seaman. "Unearned wages" are wages the seaman would have received if he had not become sick or injured, to the end of the voyage or the period for which the seaman was employed.

As of the date of Mr. Tarasewicz's injury on December 13, 2012, each of you had an affirmative obligation to promptly investigate Mr. Tarasewicz's claim for maintenance, cure and unearned wages and, resolving any doubts as to entitlement in Mr. Tarasewicz's favor, promptly pay all amounts due. While the obligation to pay cure was initially acknowledged and payments were made through January 11, 2013, benefits were unilaterally terminated shortly thereafter without explanation. Accordingly, we hereby demand that Mr. Tarasewicz's benefits be brought current and provide the outline attached hereto as Exhibit "A" illustrating Mr. Tarasewicz's medical treatment. We have also attached a medical authorization executed by Mr. Tarasewicz to enable you to obtain Mr. Tarasewicz's medical records directly from his treating providers to facilitate and expedite your adjustment and payment of Mr. Tarasewicz's claim. See, Exhibit "B". We have also attached a CD containing Mr. Tarasewicz's medical records hereto as Exhibit "C".

## Cure (Medical Expenses)

Although the obligation to pay cure was acknowledged through January, 2013 and cure was initially provided while Mr. Tarasewicz was in critical care in the Level V Trauma Facility at Broward General Hospital, there has been virtually no response to Mr. Tarasewicz's ongoing cure claim. Mr. Tarasewicz has received no substantive assistance beyond January, 2013 from any of you relative to his medical care needs notwithstanding that he has undergone a massive ischemic stroke and left hemispheric paresthesia as a direct result of his unsafe workplace and exposure to toxic chemical emissions which the experimental emission control system was intended to reduce. **As a result, Mr. Tarasewicz has suffered complete vision loss in his left eye, cognitive deficiencies including memory loss, and complete paralysis of his left arm and impaired function to his left leg.** In short, Mr. Tarasewicz was abandoned without medical care in a country where he has no relatives and cannot communicate given that he does not speak the English language. To date, as

Royal Caribbean Cruises, Ltd.
Royal Caribbean International
M/V "Liberty of the Seas"
Kjetil Gjerstad, Master of M/V "Liberty of the Seas"
MGG
Green Tech Marine, AS
Marine Global Norway, AS
Marine Global Sweden, AB
Marine Global Group, Inc.
AMT Marine & Industrial Engineering, Ltd.
UK P&I Club
Thomas Miller (Americas), Inc.
Gallagher Bassett Services
Novae Underwriting Limited
CEGA Group Services, Ltd.
December 1, 2013
Page 7

---

you can imagine, the outstanding expenses related to Mr.Tarasewicz's medical care and rehabilitation exceed $561,308.10. It is your affirmative legal obligation to rectify this immediately.

Historically, Mr. Tarasewicz was treated by Broward General Hospital from December 13, 2012 through March 13, 2013. Mr. Tarasewicz was discharged for non-payment after incurring $76,788.32 in unpaid charges. We are advised that the hospital refused further treatment and needed the bed in the trauma facility to accommodate other patients. As a result, Mr. Tarasewicz was threatened with eviction from the hospital against his will and before he could perform the critical functions necessary to daily living.

On March 13, 2013, Mr. Tarasewicz was placed in Eden Inn Assisted Living Care Facility in Davie, Florida where he remained until June 15, 2013. Due to his financial straits, Mr. Tarasewicz was unable to afford any medical treatment during this critical period where a limited window existed for the possibility of complete recovery.

On or about June 15, 2013, Mr. Tarasewicz was transferred to St. Mary's Hospital intensive rehabilitation unit in West Palm Beach, Florida to receive the therapy and rehabilitative care he should have been provided upon injury. The cost of care at St. Mary's exceeded $238,148.35.

On August 22, 2013, Mr. Tarasewicz was transferred from St. Mary's to Neuro Rehab Solutions in Merritt Island, Florida. Mr. Tarasewicz is receiving medical care including cognitive, physical and occupational rehabilitation at an estimated cost of $2,200.00 per day which equated to $213,400.00 as of August 22, 2013. These charges are ongoing.

## Maintenance

Under the applicable general maritime law, a seaman's duty to establish the value of his maintenance is "feather light" and he is entitled to the reasonable cost of obtaining room and board in the community in which he resides. Mr. Tarasewicz was provided room and board on the vessel.

Royal Caribbean Cruises, Ltd.
Royal Caribbean International
M/V "Liberty of the Seas"
Kjetil Gjerstad, Master of M/V "Liberty of the Seas"
MGG
Green Tech Marine, AS
Marine Global Norway, AS
Marine Global Sweden, AB
Marine Global Group, Inc.
AMT Marine & Industrial Engineering, Ltd.
UK P&I Club
Thomas Miller (Americas), Inc.
Gallagher Bassett Services
Novae Underwriting Limited
CEGA Group Services, Ltd.
December 1, 2013
Page 8

---

Mr. Tarasewicz was provided a stateroom which included two beds, closet, mirror, desk & chair and telephone, and all utilities comparable to an Extended Stay America Hotel which charges rates between $74.00-110.00 per day depending on the length of the stay. Mr. Tarasewicz was provided three meals per day.

Mr. Tarasewicz was entitled to the payment of maintenance immediately upon being injured on December 13, 2012. While we appreciate your acknowledgement of the duty to pay maintenance, and your payment of maintenance through January 11, 2013 while Mr. Tarasewicz was at Broward General Hospital, maintenance has not been paid since. Accordingly, we request that you bring Mr. Tarasewicz's account current and that you commit to paying Mr. Tarasewicz's maintenance into the future until such time as a judicial determination has been made that Mr. Tarasewicz is no longer entitled to maintenance and cure benefits.

After his abandonment on or about January 11, 2013, Broward General Hospital continued treatment and permitted Mr. Tarasewicz to remain in the facility until March 13, 2013 when he was transferred to Eden Inn Assisted Living Care Facility in Davie, Florida, where he languished until June 15, 2013 at a total cost of $7200.00 for room and board. Mr. Tarasewicz did not receive any medical treatment at Eden Inn.

Mr. Tarasewicz is not claiming maintenance for periods while he was hospitalized at Broward General Hospital beginning on December 12, 2013 through March 12, 2013 as maintenance would be included in the hospital charges and claimed as a cure expense. Likewise, Mr. Tarasewicz does not claim maintenance separate from the hospital charges while hospitalized at St. Mary's Hospital intensive rehabilitation unit in West Palm Beach, Florida from June 15, 2013 through August 22, 2013, and/or while an in-patient at Neuro Rehab Solutions from August 22, 2013 through today's date. Mr. Tarasewicz does, however, claim maintenance for the period when Mr. Tarasewicz resided at the Eden Inn. Hopefully, Mr. Tarasewicz will also be discharged by Neuro Rehab Solutions at some point in the future and/or be transferred to an assisted living

Royal Caribbean Cruises, Ltd.
Royal Caribbean International
M/V "Liberty of the Seas"
Kjetil Gjerstad, Master of M/V "Liberty of the Seas"
MGG
Green Tech Marine, AS
Marine Global Norway, AS
Marine Global Sweden, AB
Marine Global Group, Inc.
AMT Marine & Industrial Engineering, Ltd.
UK P&I Club
Thomas Miller (Americas), Inc.
Gallagher Bassett Services
Novae Underwriting Limited
CEGA Group Services, Ltd.
December 1, 2013
Page 9

---

facility within Neuro Rehab Solutions (or elsewhere) at which time daily maintenance payments will be required independent of his medical care.

## Unearned Wages

"Unearned wages" are wages the seaman would have received if he had not become sick or injured. Like maintenance and cure, the general maritime law imposes an affirmative obligation to promptly investigate Mr. Tarasewicz's claim for unearned wages and, resolving any doubts as to entitlement in Mr. Tarasewicz's favor, promptly pay amounts due.

The general maritime law provides that the amount to be considered "unearned wages" includes all amounts the seaman is reasonably expected to earn during the period at issue, including expected overtime, bonuses, "compensatory time", tips, accumulated shore leave, and similar employment benefits. Mr. Tarasewicz was injured on or about December 13, 2012. Mr. Tarasewicz has not been paid nor received an average daily wage, or any other indemnity benefits. On the date of his injury, Mr. Tarasewicz was being paid at a rate of 12 Euros ($16.30 US) per hour, 8-12 hours per day, 7 days per week. This amounts to an average of $163.00 average daily wage, plus other benefits, based on an average ten hour work day.

There are 230 days (seven months, eighteen days) between the accident date of December 13, 2012 and July 31, 2013 (the end of the voyage or contract term). Given that Mr. Tarasewicz worked seven days per week, this equates to unearned wages due and owing in the amount of $37,490.00. We would request that this payment be made within ten days. Otherwise, we will ask the Court to compel payment and seek the recovery of attorney fees and punitive damages.

## Earned Wages and Penalty Wages:

The General Maritime Law considers seaman wards of the admiralty court and all inferences relative to wage entitlement are resolved in favor of the seaman. With regard to earned

Case 0:14-cv-60885-WJZ  Document 1  Entered on FLSD Docket 04/15/2014  Page 118 of 127

Royal Caribbean Cruises, Ltd.
Royal Caribbean International
M/V "Liberty of the Seas"
Kjetil Gjerstad, Master of M/V "Liberty of the Seas"
MGG
Green Tech Marine, AS
Marine Global Norway, AS
Marine Global Sweden, AB
Marine Global Group, Inc.
AMT Marine & Industrial Engineering, Ltd.
UK P&I Club
Thomas Miller (Americas), Inc.
Gallagher Bassett Services
Novae Underwriting Limited
CEGA Group Services, Ltd.
December 1, 2013
Page 10

---

wages, 46 USC §10313 (Foreign and Intercoastal Voyages) and 46 USC §10504(Coastwise Voyages) apply to foreign seaman when in a harbor of the United States and mandate that the master, the vessel and/or her owner must promptly pay every seaman upon discharge. When payment is not made, the seaman is entitled to two days wages for each day payment is delayed. The seaman is also entitled to recover interest on any amount not paid and may seek an award of attorney fees and punitive damages.

Mr. Tarasewicz was paid earned wages through October 31, 2012. Mr. Tarasewicz has not received any further wage payments since that time notwithstanding that he worked on the ship through the date of his accident on December 13, 2012. On the date of his injury, Mr. Tarasewicz was being paid at a rate of 12 Euros ($16.30 US) per hour, 8-12 hours per day, 7 days per week. This amounts to a $163.00 average daily wage, plus other benefits, based on an average ten hour work day. We understand that Mr. Tarasewicz was paid monthly.

On November 30, 2012, Mr. Tarasewicz was to be paid earned wages of $4890.00 for work performed between November 1 through November 30, 2012. Mr. Tarasewicz is entitled to recover statutory prejudgment interest on this amount at 4.75%. Accrued interest through December 1, 2013 is $232.27. Accordingly, Mr. Tarasewicz is owed earned wages in the amount of $5,122.27 for the month of November, 2012.

Mr. Tarasewicz also earned wages for the period December 1, 2012 through December 13, 2012 when he was evacuated from the vessel. On December 31, 2012, Mr. Tarasewicz was to be paid earned wages of $2119.00 for this time period. Mr. Tarasewicz is entitled to recover statutory prejudgment interest on this amount at 4.75%. Accrued interest through December 1, 2013 is $92.10. Accordingly, Mr. Tarasewicz is owed earned wages in the amount of $2,211.10 for work performed during the month of December, 2012.

As stated above, 46 USC §10313 (Foreign and Intercoastal Voyages) and 46 USC §10504(Coastwise Voyages) mandate that the master, the vessel and/or her owner must promptly pay every seaman upon discharge. When payment is not made, the seaman is entitled to two days

Royal Caribbean Cruises, Ltd.
Royal Caribbean International
M/V "Liberty of the Seas"
Kjetil Gjerstad, Master of M/V "Liberty of the Seas"
MGG
Green Tech Marine, AS
Marine Global Norway, AS
Marine Global Sweden, AB
Marine Global Group, Inc.
AMT Marine & Industrial Engineering, Ltd.
UK P&I Club
Thomas Miller (Americas), Inc.
Gallagher Bassett Services
Novae Underwriting Limited
CEGA Group Services, Ltd.
December 1, 2013
Page 11

_____

wages for each day payment is delayed. The seaman is also entitled to recover an award of attorney fees and punitive damages.

Mr. Tarasewicz average daily wage was $163.00. Accordingly, the double wage penalty is appropriately calculated at $326.00 per day. Mr. Tarasewicz's November, 2012 wages were due on November 30, 2012, and are 366 days delinquent resulting in a penalty of $119,316.00 through December 1, 2013. Similarly, Mr. Tarasewicz's December, 2012 wages were due on December 31, 2012, and are 336 days delinquent resulting in a penalty of $109,536.00 through September 30, 2013.

Mr. Tarasewicz's earned and penalty wage claim totals $236,185.37 as of December 1, 2013. This amount will increase daily as statutory interest accrues and the wage penalty continues to accumulate relative to wages owed for work performed in November and December, 2012.

To recap, demand is hereby made for the following amounts:

| | |
|---|---|
| **Cure (Medical Expenses):** | **$561,308.10** |
| **Maintenance (Living Expenses):** | **$7,200.00** |
| **Unearned Wages:** | **$37,490.00** |
| **Earned Wages (11/2012):** | **$5,122.27** |
| **Earned Wages (12/2012):** | **$2,211.10** |
| **Penalty Wages (11/2012):** | **$119,316.00** |
| **Penalty Wages (12/2012):** | **$109,536.00** |
| **TOTAL:** | **$842,183.47** |

Royal Caribbean Cruises, Ltd.
Royal Caribbean International
M/V "Liberty of the Seas"
Kjetil Gjerstad, Master of M/V "Liberty of the Seas"
MGG
Green Tech Marine, AS
Marine Global Norway, AS
Marine Global Sweden, AB
Marine Global Group, Inc.
AMT Marine & Industrial Engineering, Ltd.
UK P&I Club
Thomas Miller (Americas), Inc.
Gallagher Bassett Services
Novae Underwriting Limited
CEGA Group Services, Ltd.
December 1, 2013
Page 12

---

      We thank you in advance for your anticipated cooperation and would appreciate a response at your earliest opportunity. We look forward to working with you to resolve the portion of Mr. Tarasewicz's claims addressed in this correspondence. Please do not hesitate to contact John Romano, Esq., Mario Arango, Esq. or Michael McLeod, Esq. to discuss this matter further or if you need additional information. We will do our best to accommodate you.

Very Truly Yours,

By: _____
Michael W. McLeod, Esq.

By: _____
John Romano, Esq.

Encl.

cc: Mario Arango, Esq.
    Malgorzata Kon, Esq.
    Andrezej Tarasewicz

# EXHIBIT "A"

# Andrezej Tarasewicz
## Medical Expenses

| Medical Provider | Type of treatment received | Dates of service | Outstanding Balance |
|---|---|---|---|
| Broward Hospital<br>1600 South Andrews Avenue<br>Ft. Lauderdale, FL 33316<br>(954) 355-4400 | Initial emergency care for massive ischemic stroke | 12/13/12 - 3/13/13 | $77,012.32 balance (Total bill was $143,411.38) |
| St. Mary's Hospital<br>901 S. 45 Street<br>West Palm Beach, FL 33407<br>(866)904-6871 | Post emergency rehabilitation | 6/15/13 - 8/22/13 | $238,148.35 (this is rough estimate per rep thru 8/20/13) |
| InCare Medical Services<br>649 US Highway One, Ste. 2<br>North Palm Beach, FL 33408<br>561-775-6456 | Medical treatment at St. Mary's | 6/15/13 - 8/22/13 | $602.86 |
| Dr. Carrie Landass<br>100 NW 170 Street<br>Suite 206<br>North Miami Beach, FL 33169 | Preliminary post emergency care/neurological evaluation | 4/17/13 | $425.00 |
| Dr. Leonardo Alonso<br>719 NW 13th Avenue<br>Miami, FL 33125 | Initial psychological & psychiatric eval | 5/24/13 to date | $270.00 |
| Dr. Craig Lichtblau<br>550 North Lake Boulevard<br>North Palm Beach, FL 33408 | Physical rehabilitation and PCP | 5/29/13 to date | $4,137.00 only thru 8/7/13 |

| | | | |
|---|---|---|---|
| Injured Workers' Pharmacy<br>P.O. Box 338<br>Methuen, , MA 01844-0338<br>(888) 321-7945. | Medical<br>prescription<br>services | 6/13/13 to date | $318.44 |
| David L. Popper, M.D.<br>6850 Miramar Parkway<br>Miramar, FL 33023<br>(954)961-2200 | Optometrist\post<br>emergency<br>care\vison eval | 4/30/13 | $154.00 |
| Neuro Rehab Solutions<br>4279 Judith Avenue<br>Merritt Island, FL<br>(561)234-7161 | Intensive physical,<br>occupational and<br>strengthening<br>therapy | 8/22/13 to date and continuing | $213,400.00 + (balance<br>estimated at $2,200.00 per<br>day and continuing) |
| Wuesthoff Health System<br>110 Longwood Drive<br>Rockledge, FL 32955<br>(866)481-2553 | Emergency Room<br>visit\inpatient<br>hospitalization | 9/30/13 - 10/4/13 | $26,840.13 |

TOTAL THROUGH 11/27/13 $627,707.16

# EXHIBIT "B"

PATIENT AUTHORIZATION FOR THE
RELEASE OF PROTECTED HEALTH INFORMATION (PHI)
(HIPAA Compliant)

- I, _____ (name), hereby authorize _____
(hospital, health provider name), its agents, employees and associates, to release the protected
health information that is described below, to _____
_____

- The protected health information released herein is specifically as follows:

    Any and all hospital records and/or reports; any and all medical records, reports, office notes
and/or correspondence; any and all radiology films and/or radiology reports; photographs, slides
and/or videotapes; any and all progress notes, correspondence and/or records concerning any
psychological or psychiatric care rendered; or information concerning AIDS, alcohol use or drug use;
autopsy report; emergency medical services reports; any and all patient account information and
records; insurance information including explanation of benefit forms or other claims paid
documentation; and any other records, test results, reports or correspondence of any kind.

- The protected health information is to be used for the following purpose:
  Representation in a personal injury action.

- This release may be revoked by a signed and properly dated written revocation, delivered to
the hospital or to a health care provider, *provided* that this release cannot be revoked as to
protected health information that had been previously released in reliance on this document.

- I understand that a refusal to sign this form will not result in a denial of health care by the
hospital or any other health care provider and that this release has not been coerced by a
health care entity or any of its business associates.

- I understand that once the PHI is disclosed, it may be re-disclosed to individuals or
organizations that are not subject to the federal privacy regulations such as expert witnesses,
litigants, insurance companies and even may become public record if filed with a court of
law.

- This authorization will expire upon settlement of my wc case_____.
  Dated this _____ day of _____, _____.


                                    _____
                                    Patient or Personal Representative

                                    Birth Date _____/_____/_____

                                    Social Security #: _____

EXHIBIT "C"

