# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# IN ADMIRALTY

## CASE NO. 14-CIV-60885-BLOOM/Valle

ANDREZEJ TARASEWICZ, individually, and
JOANNA PASCHILKE TARASEWICZ,
individually,

       Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES LTD., d/b/a ROYAL
CARIBBEAN, RCL and/or RCCL; ROYAL
CARIBBEAN INTERNATIONAL, f/k/a ROYAL
CARIBBEAN CRUISE LINE; the M/V "LIBERTY OF
THE SEAS," her boilers, engines, tackle, equipment,
freight, appliances, appurtenances, etc., in rem; KJETIL
GJERSTAD, individually; Marine Global GROUP AS,
an active foreign Norwegian private limited company;
Marine Global NORWAY AS, active foreign
Norwegian private limited company; Marine Global
HOLDING AS, an active foreign Norwegian private
limited company; Marine Global SWEDEN AB, an
active foreign Swedish limited company; Marine
Global GROUP, INC., a Florida foreign business
organization; YARA INTERNATIONAL ASA, an
active Norwegian public limited company; GREEN
TECH MARINE AS, an active foreign Norwegian
private limited company; GREEN TECH MARINE
GGG AB, an active foreign Swedish private limited
company; BENGT PETER KENNY STRANDBERG,
an individual; AMT MARINE AND INDUSTRIAL
ENGINEERING LTD., an active foreign United
Kingdom private limited company; and CEGA GROUP
SERVICES LTD., a foreign United Kingdom private
limited company,

       Defendants.

_____/

## ORDER ON MOTIONS TO DISMISS

**THIS CAUSE** is before the Court upon the following motions:  (i) Defendant Marine Global Group AS's ("MGG") motion to dismiss Plaintiffs Andrezej Tarasewicz ("Plaintiff") and Joanna Paschilke Tarasewicz (together, "Plaintiffs") Verified Complaint, ECF No. [1] for lack of subject matter jurisdiction, lack of personal jurisdiction, for failure to state a claim, and on grounds of *forum non conveniens*, ECF No. [99] (the "MGG Motion to Dismiss"); (ii) Defendants Marine Global Norway AS ("MG Norway") and Green Tech Marine AS's ("Green Tech") joinder in the MGG Motion to Dismiss, ECF No. [144];[1] (iii) Green Tech's motion to dismiss Plaintiffs' Verified Complaint for lack of personal jurisdiction and for failure to state a claim, ECF No. [142] (the "Green Tech Motion to Dismiss"); (iv) MG Norway's[2] motion to dismiss Plaintiffs' Verified Complaint on similar grounds, ECF No. [143] (the "MG Norway Motion to Dismiss"); (v) Green Tech's motion, ECF No. [195] (the "Green Tech Motion on Royal Caribbean's Cross-Claims") to dismiss or compel arbitration regarding cross-claims asserted against it by Defendants Royal Caribbean Cruise Ltd. ("RCCL") and RCL Cruises Ltd. ("RCL", with RCCL, "Royal Caribbean"), ECF No. [95] (the "Royal Caribbean Cross-Complaint"); and (iv) Green Tech and MG Norway's motion, ECF No. [230] (the "Motion on AMT's Cross-Claims") to dismiss cross-claims asserted against them by Defendant AMT Marine and Industrial Engineering Ltd. ("AMT"), ECF No. [197] (the "AMT Cross-Complaint").  In addition to Plaintiffs, who oppose the Green Tech and MG Norway Motions to Dismiss, Royal Caribbean and the M/V "Liberty of the Seas" (the Defendant "Vessel," with Royal Caribbean, the "Royal Caribbean Parties") oppose the MGG Motion to Dismiss.  *See* ECF No. [161].  Royal Caribbean opposes Green Tech's motion to dismiss its cross-claims.  AMT, while conceding in certain respects, opposes the motion to dismiss its cross-claims.  The motions

---

[1] The other joining Defendants were voluntarily dismissed.  *See* ECF No. [206].
[2] The other moving Defendants were voluntarily dismissed.  *See* ECF No. [206].

have been fully briefed. *See* ECF Nos. [126], [135], [161], [162], [163], [164], [184], [187], [188], [190], [196], [203], [209], [212], [242]. The Court has carefully reviewed the motions, all supporting and opposing briefing and submissions on each of the motions, the record in this case, and applicable law. The Court has had the benefit of oral argument from the parties on the motions to dismiss the Verified Complaint at a hearing held on May 20, 2015. *See* ECF No. [223]. For the reasons set forth below, the Court dismisses, on grounds of *forum non conveniens*, all of the claims asserted by Plaintiffs in the Verified Complaint; determines independently that personal jurisdiction is lacking as to MGG, Green Tech and MG Norway as to those claims; dismisses or stays all of the cross-claims asserted by Royal Caribbean against Green Tech; and dismisses, for *forum non conveniens*, the cross-claims asserted by AMT against Green Tech and MG Norway.

## I.    BACKGROUND

This action stems from injuries suffered by Plaintiff, a Polish welder and pipefitter, while working on board the Defendant Vessel in 2012. According to the Verified Complaint, Plaintiff worked over a period of several months in early and late 2012 installing and repairing an experimental exhaust scrubber system on the Vessel. Plaintiff claims that unsafe working conditions and materials caused him to suffer an ischemic stroke in December, 2012. After an initial misdiagnosis, Plaintiff was removed from the Vessel when it docked in Fort Lauderdale, Florida, and was taken to Broward Health Medical Center for treatment. Plaintiff remains here in South Florida. On April 15, 2014, Plaintiff and his wife, also Polish, initiated suit in this forum against fifteen foreign Defendants, several of which have been dismissed from this action. The remaining Defendants are RCCL and Royal Caribbean International, both Liberian companies; the Bahamian-flagged Vessel; Kjetil Gjerstad, a Norwegian individual whom

Plaintiff claims captained the Vessel; MGG, MG Norway, Green Tech and Bengt Peter Kenny Strandberg, all Norwegian companies (and one of their officers or owners, also Norwegian) involved in the development and manufacture of the scrubber system; and AMT, a Welsh company based in the United Kingdom, who, by contract with ship.zim, a Polish company not joined to this action, arranged for Plaintiff's employ and insurance aboard the Vessel.  In their Verified Complaint, Plaintiffs assert the following claims:  negligence under the Jones Act, 46 U.S.C. § 30104 (Count I); breach of the implied warranty of seaworthiness (Count II); failure to provide maintenance, cure and unearned wages (Count III); failure to pay earned wages (Count IV); and negligence (Count V).   Counts I through III are asserted against RCCL, Royal Caribbean International, the Vessel, MGG, MG Norway, Green Tech, Strandberg and AMT; Counts IV and V are asserted against those Defendants and Gjerstad.[3]

On May 8, 2014, the Vessel filed a motion to dismiss the Verified Complaint for lack of admiralty jurisdiction.  ECF No. [17].  On June 6, 2014, RCCL filed a motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e), arguing that Plaintiffs had improperly lumped together the (then) fifteen named Defendants in the same Counts and had improperly incorporated all general factual allegations within each Count of the Verified Complaint.  ECF

---

[3] Plaintiffs also assert claims for loss of consortium (Count VI); a maritime lien against the Vessel (Count VII); and negligence against CEGA Group Services Ltd. ("CEGA") (Count VIII).  CEGA was voluntarily dismissed from this action.  ECF Nos. [59], [86].  Plaintiffs asserted a maritime lien against the Vessel in Count VII with respect to the liability alleged in Counts I thorough V.  *See* Compl. ¶ 268.  The Court relied on those allegations to issue an arrest of the Vessel.  ECF Nos. [3], [8].  RCCL and RCL satisfied the security demanded by providing Plaintiffs a Letter of Undertaking in consideration for them refraining from arresting, attaching, or otherwise detaining the Vessel.  ECF No. [15].  "The effect of the release was to transfer the lien from the ship to the fund the security represented."  *Industria Nacional Del Papel, CA. v. M/V Albert F*, 730 F.2d 622, 625 (11th Cir. 1984); *see also S & S Diesel Marine Servs., Inc. v. M/V F-TROOP*, 2011 WL 1899402, at *8 (S.D. Fla. May 18, 2011) ("The arrest of a vessel in rem is effectuated to enforce a maritime lien in favor of the party suing the vessel and seeking the arrest.").  Thus, the separate maritime lien claim is, in effect, satisfied.  Finally, Plaintiffs' consortium claim, were the Court to consider it on the merits, would be dismissed in accordance with currently-binding Eleventh Circuit law, which states that general maritime law does not allow recovery of damages for loss of consortium in a personal injury case.  *See, e.g.*, *In re Amtrak "Sunset Limited,"* 121 F.3d 1421, 1429 (11th Cir. 1997) (stating that personal injury claimants in admiralty cases "have no claim for nonpecuniary damages such as loss of society, loss of consortium, or punitive damages"); *Lollie v. Brown Marine Serv., Inc.*, 995 F.2d 1565, 1565 (11th Cir. 1993) (per curiam).  As such, the Court will not consider Count VI-VIII for purposes of its analysis below.

No. [27].  On December 18, 2014, the Court denied both motions.  ECF Nos. [89], [90].  RCCL, Royal Caribbean International, the Vessel and Gjersted filed their answers and cross-claims in early January, 2015.  ECF Nos. [95], [96].  Plaintiffs completed service of process on all of the originally named Defendants in February, 2015.  *See* ECF Nos. [82], [94], [97], [113], [114], [115], [116].  MGG filed its motion to dismiss currently under consideration on January 20, 2015; Plaintiffs, on February 13, 2015, requested that the Court stay consideration of MGG's motion in order to conduct jurisdictional discovery.  ECF No. [127].  On February 4, 2015, the Royal Caribbean Parties filed a motion to strike Plaintiffs' jury demand, which Gjerstad joined.  ECF Nos. [109], [151], [176].  Green Tech and MG Norway filed their motions to dismiss on March 2, 2015.  On March 9, 2015, and March 27, 2015, Plaintiff's filed motions to strike certain of the Royal Caribbean Parties' and Gjerstand's affirmative defenses.  ECF Nos. [150], [168].  This matter was transferred to the undersigned on March 31, 2015.  ECF No. [170].  On April 1, 2015, resolving several identical requests, the Court set aside the Clerk's entry of default as to AMT.  ECF Nos. [102], [107], [138], [148], [180].  Also on April 1, 2015, the Court denied Plaintiff's motion to stay consideration of the MGG Motion to Dismiss, ECF No. [173], and set briefing deadlines with respect to that motion and several other motions to dismiss (including the Green Tech and MG Norway Motions to Dismiss), ECF Nos. [177], [179].  On April 8, 2015, the Court denied the motion to strike Plaintiffs' jury demand.  ECF No. [191].  On April 8, 2015, and April 27, 2015, the Court disposed of Plaintiffs' motions to strike certain affirmative defenses.  ECF Nos. [194], [205].  AMT filed its answer and cross-claims on April 23, 2015. The MGG, Green Tech and MG Norway Motions to Dismiss were ripe for adjudication as of May 1, 2015; on request of the parties, the Court scheduled and heard argument on those motions on May 20, 2015.  *See* ECF No. [207].  Green Tech's Motion on Royal Caribbean's Cross-

5

Claims, and the Motion on AMT's Cross-Claims, became ripe for adjudication on June 5, 2015, and June 15, 2015, respectively.

The central question here is whether this Court is the proper forum in which to determine Plaintiff's claims.

## II.   *FORUM NON CONVENIENS*

In the admiralty context, assessing dismissal for *forum non conveniens* requires two successive analyses.  First, the court must determine if U.S. law applies to the case, using a non-exhaustive eight-factor inquiry (often referred to as a choice-of-law analysis).  If so, the court should retain jurisdiction.  If not, then second, the court must undertake the traditional *forum non conveniens* analysis:  whether the movant has established the existence of an adequate and available alternative forum, and whether the balance of private and public factors weigh in favor of dismissal or retention of the matter.  The Court will address each in turn.

### A.   *Forum Non Conveniens* **as a Threshold Issue**

The Supreme Court has made clear that *forum non conveniens* may be resolved before issues of subject matter or personal jurisdiction if doing so would serve the interests of fairness or judicial economy.  *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007) ("If . . . a court can readily determine that it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss on that ground.  . . . But where subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course."); *see also GDG Acquisitions, LLC v. Gov't of Belize*, 749 F.3d 1024, 1028 (11th Cir. 2014) (citing *Sinochem*, 549 U.S. at 432 ("A district court . . . may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when

6

considerations of convenience, fairness, and judicial economy so warrant.")); *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1331 (S.D. Fla. 2010) ("*Sinochem* . . . reaffirmed that district courts can dismiss a case under forum non conveniens without first establishing their own jurisdiction (personal or subject matter) . . . ."). The Court determines that the present case warrants consideration of MGG's request to dismiss this action for *forum non conveniens* as a threshold issue.

### B.     The *Forum Non Conveniens* Choice of Law Analysis

"It is well established that a case should not be dismissed on *forum non conveniens* grounds if, in a case brought under the Court's admiralty jurisdiction, United States maritime law is applicable." *Belik v. Carlson Travel Group, Inc.*, 26 F. Supp. 3d 1267, 1274 (S.D. Fla. 2013) (citing *Szumlicz v. Norwegian Am. Line, Inc.*, 698 F.2d 1192, 1195 (11th Cir. 1983) ("[I]f United States law is applicable, the American court should retain jurisdiction rather than relegate the controversy to a foreign tribunal.") (citation omitted)); *see also Popescu v. CMA CGM*, 2009 WL 5606131, at *6 (S.D. Fla. Nov. 5, 2009) ("First, the court must decide, under choice of law principles, whether it should apply United States law to the case.  If so, the court should not dismiss the case for *forum non conveniens*."); *Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1348 (S.D. Fla. 2008) ("Generally, when a plaintiff's claims support admiralty jurisdiction, the court will apply federal admiralty law.").

"The first step in determining whether an action should be dismissed for *forum non conveniens* is to determine whether United States law *should* be applied to the case." *Membreno v. Costa Crociere S.p.A.*, 425 F.3d 932, 936 (11th Cir. 2005) (emphasis added) (citing *Szumlicz*, 698 F.2d at 1195).  *Cf.*, *e.g.*, *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1171 (11th Cir. 2009) (where *forum non conveniens* is not at issue, court should only undertake a choice of law

analysis if a conflict of laws actually exists).  The Eleventh Circuit has made clear that "when confronted with making a choice between applying federal maritime law and the law of a foreign country," courts are to examine the non-exhaustive list of factors set forth and expanded upon by the Supreme Court in *Lauritzen v. Larsen*, 345 U.S. 571 (1953), and *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306 (1970).  *Cooper*, 575 F.3d at 1174.

> The Supreme Court has set out eight factors that should be considered in determining whether the Jones Act and the general maritime law of the United States should be applied: (1) the place of the wrongful act; (2) the flag under which the ship sails; (3) the allegiance or domicile of the injured party; (4) the allegiance of the defendant shipowner; (5) the place of the contract between the injured party and the shipowner; (6) the accessibility of a foreign forum; (7) the law of the forum; and (8) the shipowner's base of operations.

*Membreno*, 425 F.3d at 936 (citations omitted).  A "complete choice of law analysis requires that [a court] examine the base of operations of *all parties*," and that only factors relevant to the claims at issue be considered.  *Cooper*, 575 F.3d at 1175-76 (emphasis added); *see also Belik*, 25 F. Supp. 3d at 1277 ("[A] complete choice of law analysis . . . necessitates an analysis of the base of operations of all of the [d]efendants . . . as well as consideration of all factors as applied to all parties that are relevant to a policy of adjudicating [each at-issue claim] in this forum.").

"Because this choice of law question is a threshold issue to determining whether [a] case should be dismissed for *forum non conveniens*, [the p]laintiff carries the burden of demonstrating United States maritime law is applicable."  *Vasquez v. YII Shipping Co.*, 2012 WL 6114840, at *1 (S.D. Fla. Dec. 10, 2012) (citing *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004) (explaining that a motion seeking dismissal based on *forum non conveniens* is properly brought pursuant to Rule 12(b)(3) as a motion to dismiss for improper venue); *see also Belik*, 26 F. Supp. 3d at 1273 ("A motion to dismiss based on *forum non conveniens* is a motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3).") (citing *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1290 (11th Cir. 1998)).  Although

"the court may consider matters outside the pleadings, particularly when the motion is predicated upon key issues of fact," *Webster v. Royal Caribbean Cruises, Ltd.*, 124 F. Supp. 2d 1317, 1320 (S.D. Fla. 2000), it "must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Wai*, 315 F. Supp. 2d at 1268 (citations omitted).

### 1. Analysis of the Choice of Law Factors

#### a. Place of the Wrongful Act

In the *forum non conveniens* analysis, the place of the wrongful act is where the defendant engaged in the conduct giving rise to liability, not where the plaintiff's resulting injury occurred. *See Lauritzen*, 345 U.S. at 583 (holding that the place of the wrongful act is "the place where the *acts giving rise* to the liability occurred, the lex loci delicti commission," and not, for example, the place where the liability manifested itself) (emphasis added); *Cooper*, 575 F.3d at 1175 ("Here, we agree with the district court that the wrongful act occurs where the construction of the defective product took place and not in the place where the injury occurred – a remote area in the sea where the ship happened to have been at the time the effects of the defect came to fruition."); *Rationis Enters, Inc. of Panama v. Hyundai Mipo Dockyard Co., Ltd.,* 426 F.3d 580, 587 (2d Cir. 2005) ("[T]he place of the wrongful act is not where the vessel sinks, but where the negligence occurs."); *Kriti Filoxenia Special Maritime Enterprises v. YA-SA Denizcilik Sanayi Ve Ticaret A.S.*, 442 F. App'x 167, 169 (5th Cir. 2011). (holding, in an action for physical damages and loss of use damages involving the collision of maritime vessels in Nigeria, that the place of the wrongful act was Nigeria, despite the vessel being placed out of use while undergoing dry dock repairs, resulting in the claimed injuries, in Turkey).

Here, the complained-of wrongful acts relevant to Plaintiff's Jones Act, unseaworthiness and common law negligence claims – the manufacture of the exhaust scrubber and Plaintiff's

exposure to unsafe working conditions – took place all but exclusively outside of the United States and mostly in international waters. Plaintiff alleges that he worked on board the Vessel, as part of what he describes as the Polish or Slavic crew, from January, 2012 through April, 2012, and again, beginning in September, 2012 through December 13, 2012, when he suffered a stroke and was transported to a hospital in Florida. Compl. ¶¶ 96-98, 125-127. Installation of the scrubber system – ninety-eight percent of the components of which had been fabricated in Europe – began in Rome, Italy (at the port of Civitavecchia) in October, 2011, and continued thereafter at sea as the Vessel travelled from port to port in Europe, from Malaga and Cadiz in Spain to Tenerife and LaPalma in the Canary Islands. ECF No. [99-13] (Strandberg Decl.) ¶ 25; ECF No. [195-2] (3d Strandberg Decl.) ¶ 24; ECF No. [195-5] (letter of intent between Green Tech and RCCL, stating that installation of scrubber would take place during the "Vessel's operations in the waters of the Atlantic Ocean, Caribbean Sea and/or Mediterranean Sea"); ECF No. [233] (5/20/15 Hr'g Tr.) at 26:1-13; ECF No. [144-1] (2d Strandberg Decl.) (98% of the scrubber components were manufactured in Sweden, Denmark, Norway and Switzerland, and 2% in Cleveland, Ohio by a non-party supplier). Thereafter, the Vessel proceeded across the Atlantic, where work on the scrubber system continued as the Vessel made cruises from Fort Lauderdale, Florida to Belize and Cozumel, Mexico. Strandberg Decl. ¶ 25; ECF No. [99-18] (Vessel Log for 2012). The Vessel's deck log indicates that, while traversing the Caribbean, the Vessel was only present in Port Everglades, Florida for about 9.5 hours per week. Vessel Log; Strandberg Decl. ¶ 25. That is, over a period of sixty-eight days late in 2012, the Vessel spent a total of seventy-seven hours, or less than four percent, of its time in Florida. Vessel Log. Central storage for material used in installing the scrubber was located in Barcelona, Spain. 3d Strandberg Decl. ¶ 24. The scrubber project was started and ended in Europe. 3d Strandberg

Decl. ¶ 24.   Furthermore, the welding and pipefitting work – so called "hot work" – which Plaintiff alleges led to his injuries could not have occurred, on Plaintiff's own admission, during those few hours when the Vessel was in port in Fort Lauderdale due to local safety regulations. ECF No. [153-3] (Plaintiff. Dep. Tr. Vol. 2) at 134:20-24; ECF No. [235-1] (Sieniek Dep. Tr.) at 198:1-4, 200:25-201:9; Strandberg Decl. ¶ 28.

The analysis is identical for Plaintiffs' maintenance, cure and wages claims.   Even when considering claims for failure to provide maintenance and cure or pay wages, the place of the wrongful act is neither where the defendants were situated when they allegedly failed to provide maintenance, cure or payment, nor where the plaintiff was located when he did not receive the maintenance, cure, or wages. Rather, it is the place of the defendant's wrongful acts which caused the plaintiff's underlying physical injuries.   *See Vasquez v. YII Shipping, Ltd.*, 559 F. App'x 841, 844 (11th Cir. 2014) ("*Vasquez III*") (identifying the place of the wrongful act as the place of plaintiff's injuries, in the Bahamas, and not in the Dominican Republic and Miami, Florida, where defendant failed to pay for plaintiff's treatment and wages); *Williams v. Cruise Ships Catering*, 299 F. Supp. 2d 1273, 1279 (S.D. Fla. 2003) (making no distinction in assessing place of the wrongful act – physical injury to an employee which occurred on the high seas – between Jones Act and maintenance, cure and failure to treat claims).

*Vasquez* is instructive on this point.   There, an acetylene tank on the defendant's vessel exploded while the ship was docked in the Bahamas, causing the plaintiff to suffer severe burns. *See Vasquez v. YII Shipping Co.*, 2011 WL 5119006, at *1 (S.D. Fla. Oct. 28, 2011) *vacated*, 692 F.3d 1192 (11th Cir. 2012) ("*Vasquez I*"); *Vasquez v. YII Shipping Co.*, 2012 WL 6114840, at *4 n.7 (S.D. Fla. Dec. 10, 2012) *aff'd*, 559 F. App'x 841 (11th Cir. 2014) ("*Vasquez II*").   The plaintiff   sued   for   negligence   under   the   Jones   Act,   unseaworthiness,   failure   to   provide

maintenance and cure, and failure to treat. *See Vasquez I*, 2011 WL 5119006, at *1. The plaintiff alleged that the failure to provide maintenance and cure occurred in Florida because the defendant failed to pay for his medical treatment in Miami. *Vasquez v. YII Shipping, Ltd.*, Case No. 11-CV-60248, ECF No. [1] at ¶¶ 5, 22 (S.D. Fla. Oct. 28, 2011). Nevertheless, both the district court and the Eleventh Circuit treated the Bahamas, where plaintiff was injured, and not Florida, where the plaintiff's claims for maintenance, cure and failure to treat fully accrued, as the place of the wrongful act for purposes of the *forum non conveniens* analysis. *See Vasquez I*, 2011 WL 5119006, at *13; *Vasquez III*, 559 F. App'x at 844.

The same analysis applies here. Plaintiff alleges that the Defendants failed to properly pay for his medical treatment and to remit earned and unearned wages while he was located in Florida. But the place of the wrongful act for purposes of those claims is the place of the Defendants' conduct which allegedly precipitated the injuries Plaintiff suffered on account of unsafe working conditions aboard the Vessel.

All told, there is no aspect of the wrongful conduct which gave rise to Plaintiff's alleged injuries and the Defendants' purported liability which did or could have occurred in the United States – or, at most, so infinitesimal a percentage of such conduct to render it irrelevant. Normally, "[t]he test of location for the wrongful act or omission, however sufficient for torts ashore, is of limited application to shipboard torts, because of the varieties of legal authority over waters she may navigate." *Callasso v. Morton & Co.*, 324 F. Supp. 2d 1320, 1326 (S.D. Fla. 2004) (quoting *Lauritzen,* 345 U.S. at 583). That said, this factor is somewhat significant under the facts here for two reasons. First, none of the parties, Plaintiff included, anticipated engaging in the conduct through which the allegedly wrongful acts occurred in this jurisdiction. The scrubber was to be installed in international waters, and Plaintiff was to work on that installation

while the Vessel was at sea.  Second, the type of activity Plaintiff claims caused his injuries were prohibited by U.S. law from being performed at port in Florida.  Thus, the vagaries of international sea travel which typically lead courts to afford little weight to the location of the wrongful act in the *forum non conveniens* choice of law analysis compels the opposite evaluation here:  The wrongful acts at issue were never intended to and could not have occurred here in the U.S. and, in fact, did not occur, providing meaningful support for concluding that an action stemming from those acts should not be tried in this forum.

### b.      Law of the Flag

The Supreme Court has stated that "[p]erhaps the most venerable and universal rule of maritime law relevant to our problem is that which gives cardinal importance to the law of the flag . . . the weight given to the ensign overbears most other connecting events in determining the applicable law."  *Lauritzen*, 345 U.S. at 584-85; *see also Bautista v. Cruise Ships Catering & Serv. Int'l, N.V.*, 350 F. Supp. 2d 987, 989 (S.D. Fla. 2003) *aff'd sub nom. Bautista v. Cruise Ships Catering*, 120 F. App'x 786 (11th Cir. 2004) (weighing the law of the flag against application of U.S. law).  "However, 'as the practice of flags of convenience has grown, our courts on occasion have pressed beyond the formalities of more or less nominal foreign registration to enforce against American shipowners the obligations which our law places on them.'"  *Callasso*, 324 F. Supp. 2d at 1327 (quoting *Sigalas*, 776 F.2d at 1517).  That is, to the extent a vessel is flagged abroad for convenience, this factor is of little significance.  *See Belik*, 26 F. Supp. 3d at 1277 n.9 (law of the flag factor irrelevant where vessel flew flag of convenience); *Vesuna v.C.S.C.S. Int'l, N.V.*, 2009 WL 4543319, at *3 (S.D. Fla. Nov. 30, 2009) *aff'd sub nom. Vesuna v. CSCS Int'l N.V.*, 405 F. App'x 371 (11th Cir. 2010) (same).

13

All parties concur that the Vessel is a Bahamian flagged commercial passenger ship and that its owner, RCL, is a Liberian company – i.e., the Bahamian flag is one of convenience.  That said, the Vessel does regularly ply the Caribbean and makes port in the Bahamas – indicating that its flag is not fully one of mere convenience.  Taken together, the Court does not afford the law of the flag significant weight, but notes that this factor does not weigh in favor of applying U.S. law.

### c.    Allegiance or Domicile of the Injured Party

Plaintiffs are both citizens of and domiciled in Poland (although Plaintiff currently resides in South Florida).[4]  Accordingly, this factor disfavors application of U.S. law.

Plaintiffs argue that their Polish citizenship "only militate[s] against application of American law if the policies behind Polish law, as they relate to a Polish plaintiff, were impeded by application of the Jones Act," ECF No. [126] (Plaintiffs' Response to the MGG Motion to Dismiss) at 16. However, this contention confuses a choice of law inquiry for purposes of assessing the convenience of the U.S. forum in the admiralty context with a true conflict of laws analysis.  Courts normally will not engage in a choice of law analysis to determine which substantive law applies unless a conflict of laws exists.  *See Fioretti v. Massachusetts Gen. Life Ins. Co.*, 53 F.3d 1228, 1234 (11th Cir. 1995) (If a false conflict exists, "the court should avoid the conflicts question and simply decide the issue under the law of each of the interested states."); *Dresdner Bank AG v. M/V Olympia Voyager*, 446 F.3d 1377, 1381 (11th Cir. 2006) (same).  However, as explained above, in assessing *forum non convenience* in admiralty, the choice of law factors are imported to determine as a threshold issue whether U.S. or foreign law should apply.  *Membreno*, 425 F.3d at 936 ("The first step in determining whether an action

---

[4] The Supreme Court addressed this factor to the "allegiance or domicile" of the injured party, rather than to the party's nationality or citizenship, to counteract the legal fiction that "the nationality of the vessel for jurisdictional purposes [is] . . . attributed to all her crew."  *Lauritzen*, 345 U.S. at 586-87.

should be dismissed for *forum non conveniens* is to determine whether United States law should be applied to the case.").   There is no conflict of laws prerequisite for undertaking that assessment.

### d.      Allegiance or Domicile of the Defendants

Not a single Defendant in this matter is incorporated or domiciled in the United States:[5] RCCL and Royal Caribbean International are both incorporated in Liberia, Compl. ¶¶ 14, 16; the Vessel is flagged in the Bahamas and owned by RCL, a Liberian company, Compl. ¶¶ 18-19; MGG, MG Norway and Green Tech are interrelated Norwegian companies and Strandberg, one of their owners and/or officers, is a citizen of Norway, Compl. 24, 26-28, 30-32, 49-52, 58-60; Gjerstad is a resident of Norway, Compl. ¶ 20; and AMT is a an active United Kingdom private limited company organized in Wales, Compl. ¶ 62.   This factor, therefore, stands against the application of U.S. law.

### e.      Place of Contract

In the stereotypical scenario, the contract at issue in this analysis runs between a sailor and his ship-owning employer.   Normally, "[t]his factor is "entitled to little weight because a 'seaman takes his employment, like his fun, where he finds it.'"   *Callasso*, 324 F. Supp. 2d at 1328 (quoting *Sigalas*, 776 F.2d at 1517); *see also Lauritzen*, 345 U.S. at 589 ("[T]he place of contract is [not] a substantial influence in the choice between competing laws to govern maritime tort.").   More precisely, the contract or contracts a court considers under this factor must be

---

[5] Based on Plaintiff's allegations in the Verified Complaint that all of the Defendants were Plaintiff's employer(s) (under either a joint venture theory or pleading in the alternative), the Court examines the allegiance and domicile of all of  the Defendants here.   *See Cooper*, 575 F.3d at 1175-76 (addressing domicile of all defendants, not only shipowner); *Marriott v. Sedco Forex Int'l Res., Ltd.*, 827 F. Supp. 59, 65 (D. Mass. 1993) (citing *Kukias v. Chandris Lines, Inc.*, 839 F.2d 860, 862 (1st Cir. 1988)) ("Where the plaintiff's employer is not the shipowner, but rather an entity hired to operate the vessel, a court must consider the allegiance of the plaintiff's employer as well as the allegiance of the shipowner."); *see also Belik*, 25 F. Supp. 3d at 1277 ("[A] complete choice of law analysis . . . necessitates . . . consideration of all factors as applied to all parties that are relevant to a policy of adjudicating [each at-issue claim] in this forum.").

relevant to the liability against the defendants at issue in the plaintiff's claims. *See Belik*, 26 F. Supp. 3d at 1279; *Cooper*, 575 F.3d at 1175 n. 14. Accordingly, the extent to which this factor informs the determination of whether U.S. law should apply turns on how fortuitous the place of contract was under the given facts.

Where the contract contains a governing law provision, that jurisdiction is treated as the place of contract for these purposes. *See Lauritzen*, 345 U.S. at 588-89 (1953) ("The place of contracting in this instance . . . was fortuitous . . . But if contract law is nonetheless to be considered, we face the fact that this contract was explicit that the Danish law and the contract with the Danish union were to control."). Where there is no choice of law provision, courts have described the place of contract as the place where the contract was signed. *See Vasquez III*, 559 F. App'x at 844; *Rozanska v. Princess Cruise Lines, Ltd.*, 2008 WL 8883868, at *4 (S.D. Fla. Aug. 5, 2008) (assessing where "the terms of the employment contract were *presented* to the Plaintiff" (emphasis added)); *Belik*, 26 F. Supp. 3d at 1279 n.12 ("[A]s a general rule that the place of contracting is the place of acceptance.") (quotation omitted).

There are several contracts in the mix here – *none* of which are situated here in the U.S. Plaintiff appears to have executed employment contracts directly with ship.zim and AMT. *See* ECF No. [99-1] (Beard Decl.) ¶¶ 2-3; ECF No. [99-2] (document, in Polish with English translation, executed in 2012 by Plaintiff with AMT referring to his employment with ship.zim); ECF No. [99-3] (letter from AMT confirming Plaintiff's employment with AMT). Those contracts were executed in Europe and appear to be governed by Polish or English law. *Id*. The agreement between RCCL and Green Tech, which called for Green Tech to provide workers (ultimately, Plaintiff) to deliver, install and modify the scrubber system on the Vessel, is governed by English law. ECF No. [95-1] § X. Green Tech subcontracted with AMT to staff

Plaintiff aboard the Vessel.  While the parties have not presented that subcontract to the Court for review, no one has suggested the extremely unlikely possibility that it was executed in this country or called for the application of  U.S. law.

The parties here executed abroad contracts governed by foreign law.  That reality was well-planned, rather than fortuitous.  This factor weighs against the application of U.S. law.

### f.        Accessibility of a Foreign Forum

Accessibility of a foreign forum in the traditional sense of convenience to the parties will be discussed below.  *See Cooper*, 575 F.3d at 1175 n.14 ("The accessibility of the foreign forum factor . . . is more pertinent to a *forum non conveniens* test than to a choice of law analysis.").

Plaintiffs raise the issue of the "practical" inaccessibility to Plaintiff of any forum but this one.  Plaintiffs assert that "[Plaintiff] is currently residing in Florida because he cannot safely be transported to Poland and treated there," and argue that, consequently, "[h]e cannot meaningfully participate in litigation in another forum."  Pls. Resp. at 5-6.  In support, they submit a letter, dated in November, 2014, from one of Plaintiff's treating physicians here in North Palm Beach, Florida.  ECF No. [126-6] (the "Lichtblau Letter").  The doctor states that:

> Due to experiencing ongoing seizures and blackouts, Andrezej Tarasewicz is unable to fly and return to his home country.  Such a trip could result in "death" if he should suffer a seizure on board a plane and has no access to immediate medical care.

> Due to the type of seizures, we are unable to predict when the seizures will happen or what triggers them.  Andrezej Tarasewicz requires constant care and supervision; therefore, he is unable to travel at this time, especially a long trip to Poland.

*Id*. at 1-2.

In the first instance, the Lichtblau Letter does not categorically prohibit Plaintiff from traveling to Europe by air.  Rather, it opines that Plaintiff would suffer life threatening consequences if he were to do so without "access to immediate medical care" and "constant care

and supervision."  As it so happens, Plaintiff was afforded that very opportunity in the weeks immediately following his stroke and hospitalization in Florida.

Plaintiff's hospital records at Broward Health Medical Center from January 2013 demonstrate that Plaintiff was cleared for discharge and scheduled for transport via air ambulance to an accepting facility and physician in Gdansk, Poland.  Bead Decl. ¶¶ 8-9; ECF No. [99-9] (Plaintiff's "Discharge Planning" records).  Arrangements and complete coverage for the air ambulance was provided by CEGA as part, it appears, of Plaintiff's employment insurance.  Plaintiff, however, "refused" transport by air ambulance, refused repatriation to Poland, and decided to remain in the United States.  *Id.*  The record is muddled, and the parties dispute, whether Plaintiff chose to remain in Florida in order to pursue legal remedies here or because he legitimately felt that he should not travel in his condition.  *Compare* Discharge Planning document at entry for 1/17/13 ("he states that his intent is to file emergency workers comp suite [sic] today and tomorrow to file a jones complaint in federal court") *with id.* at entry for 1/11/13 ("he stated that he is not returning to Poland unless he can walk").  Regardless, there was no medically relevant opinion requiring Plaintiff to remain in the United States.  To the contrary, he was cleared for discharge.  The choice was his.

In any event, Plaintiff's residency in Florida does not automatically restrict his practical access to a foreign forum.  Plaintiffs do not suggest that Plaintiff cannot gain access to a foreign forum while located in Florida.  Rather, they posit that, due to the inconvenience the distance would present, Plaintiff would be unable to "meaningfully participate" in his litigation.  At least from the perspective of whether U.S law should apply, the fact that Plaintiff may be required to press his claims from afar does render the foreign forum inaccessible. Accessibility qua convenience will be discussed in the traditional *forum non conveniens* analysis below.

18

The unfortunate reality is that Plaintiff's current residency in Florida is a result of his own decision to refuse transport by air-ambulance when he was medically cleared to do so and, rather, to stay here.  That decision cannot anchor this case in this forum.  This factor does not support the application of U.S. law.

### g.  Law of the Forum

"The seventh factor, the law of the forum, 'is entitled to little weight because 'fortuitous circumstances . . . often determine the forum.'" *Membreno*, 425 F.3d at 936 (quoting *Sigalas v. Lido Mar., Inc.*, 776 F.2d 1512, 1517 (11th Cir. 1985); *see also Belik*, 26 F. Supp. 3d at 1282 ("Due to 'fortuitous circumstances,' the law of the forum is generally 'of little relevance in United States courts.'") (quoting *Reino de España, v. Am. Bureau of Shipping, Inc.*, 691 F.3d 461, 467 n. 8 (2d Cir. 2012)).  Further, the fact that "a law of the forum is applied to plaintiffs who voluntarily submit themselves to it is no argument for imposing the law of the forum upon those who do not." *Lauritzen*, 345 U.S. at 592.

The facts in *Belik* are a telling foil to those here.  There, the plaintiff, a resident of New York with travel limitations due to his injuries, filed suit in this district pursuant to a choice of law clause in a contract relevant to only some of the defendants.  *Belik*, 26 F. Supp. 3d at 1282. Here, by contrast, Plaintiff was brought here for immediate treatment but was thereafter afforded the opportunity to leave and return to his home country for medical care.  Neither does he have any contractual reason to have filed suit in this Court.  To the extent the law of the forum is entitled to any weight in this analysis, it counts for even less under the circumstances here.

### h.  Defendants' Base of Operations

In examining this final factor, the Court must look to the Defendants' "operational ties and substantial contacts with the United States." *Homen v. M/V SCM TEPUY II*, 2006 WL

3626301, at *7 (S.D. Fla. Aug. 2, 2006) *reconsideration denied in rel. part*, 2006 WL 4460876 (S.D. Fla. Sept. 26, 2006); *see Williams v. Cruise Ships Catering*, 299 F. Supp. 2d 1273, 1279 (S.D. Fla. 2003) ("As noted in *Rhoditis*, it is necessary to look beyond corporate formalities to examine both the ship's and shipowner's operational contacts with the United States."). Here, Plaintiffs have alleged that all of the corporate Defendants were Plaintiff's employers. Accordingly, the Court's inquiry focuses on all of the Defendants and not narrowly on the Royal Caribbean Parties. *See Vesuna v. CSCS Int'l N.V.*, 405 F. App'x 371, 373 (11th Cir. 2010) (affirming application of this factor to plaintiff's catering company employer and cruise ship-owner); *Reyes v. Cruise Ship Catering & Servs. Int'l, N.V.*, 2006 WL 2389441, at *3 (S.D. Fla. May 25, 2006) (referring to the "the employer *or* shipowner's base of operations" in analyzing this factor (emphasis added)).

"Case law cautions that the base of operations factor should not be dispositive of the choice of law inquiry." *Vasquez II*, 2012 WL 6114840, at *2 (citing *Chiazor v. Transworld Drilling Co., Ltd.*, 648 F.2d 1015, 1018 (5th Cir. 1981)). However, "[i]f the defendants have a *substantial* base of operations in the United States, this factor can alone justify the application of United States law." *Membreno*, 425 F.3d at 936 (emphasis added); *see also Rozanska v. Princess Cruise Lines, Ltd.*, 2008 WL 8883868, at *4 (S.D. Fla. Aug. 5, 2008) (finding U.S. law applicable because cruise ship operator's base of operations was in United States).

The parties agree that, at least for present purposes, the Royal Caribbean Parties' primary and substantial base of operations is here in Florida. *See, e.g.*, ECF No. [126-7] (Florida Department of State, Division of Corporations entry for RCCL). In this entire analysis, this is the only fact which would counsel application of U.S. law. However, none of the other Defendant-employers have extensive (or, in some cases, any) operational ties to the United

States, let alone a substantial basis of operations here.  MGG, Green Tech and MG Norway operate out of Norway and Sweden and AMT out of the UK.  Therefore, as a whole, this factor does not support applying U.S. law to this action.

### 2.    U.S. Law Should Not Be Applied To Plaintiffs' Claims

Application of the *Lauritzen* factors to the facts at bar strongly disfavors the application of U.S. maritime law to Plaintiffs' claims.  While those factors are non-exhaustive, Plaintiffs have not identified any other compelling reason to do so.  Accordingly, the Court will turn to the traditional *forum non conveniens* analysis.

### C.    The Traditional *Forum Non Conveniens* Analysis

"Dismissal on *forum non conveniens* grounds is within the district court's range of discretion when trial in the plaintiff's chosen forum would impose a heavy burden on the defendant or the court and an adequate alternative forum is available."  *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254-55 (1981)); *see also Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052, 1056 (11th Cir. 2009) ("The doctrine of *forum non conveniens* permits a court with venue to decline to exercise its jurisdiction when the parties' and the court's own convenience, as well as the relevant public and private interests, indicate that the action should be tried in a different forum.").  Although a plaintiff's choice of forum is generally entitled to deference, "[b]ecause the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."  *Piper*, 454 U.S. at 266; *see also King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382 (11th Cir. 2009) ("A foreign plaintiff's choice of forum, however, is a weaker presumption that receives less

deference."); *Popescu*, 2009 WL 5606131 at at *11 ("Courts give less deference to a foreign plaintiff's choice of forum than that of a domestic plaintiff").

"This tool 'is to be favored' for ensuring that federal courts only hear 'those cases where contacts with the American forum predominate.'" *Villeda Aldana v. Fresh Del Monte Produce, Inc.*, 2007 WL 3054986, at *3 (S.D. Fla. Oct. 16, 2007) *aff'd sub nom. Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283 (11th Cir. 2009) (quoting *Sigalas v. Lido Maritime, Inc.*, 776 F.2d 1512, 1519 n. 10 (11th Cir. 1985)). "[T]he more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons – such as attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case, the habitual generosity of juries in the United States or in the forum district, the plaintiff's popularity or the defendant's unpopularity in the region, or the inconvenience and expense to the defendant resulting from litigation in that forum – the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a forum non conveniens motion by showing that convenience would be better served by litigating in another country's courts." *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 72 (2d Cir. 2001).

"[A] *forum non conveniens* dismissal is appropriate where: (1) the trial court finds that an adequate alternate forum exists which possesses jurisdiction over the whole case, including all of the parties; (2) the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice; (3) if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; and (4) the trial judge ensures that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice." *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283,

1289-90 (11th Cir. 2009); *see also King*, 562 F.3d at 1381 (*forum non conveniens* movant must demonstrate "that (1) an adequate alternative forum [is] available, (2) the public and private factors weighs in favor of dismissal, and (3) the plaintiffs [can] reinstate their suit in the alternative forum without undue convenience or prejudice") (quotation omitted).   The moving party "bears the burden of demonstrating an adequate alternative forum is available."  *King*, 562 F.3d at 1382; *see also Sun Trust Bank v. Sun Int'l Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1262 (S.D. Fla. 2001) ("The defendant has the initial burden of establishing that an adequate alternative forum exists with jurisdiction *over the whole case*.") (emphasis added).

### 1.    Availability and Adequacy of an Alternative Forum

"Availability and adequacy warrant separate consideration."  *Leon v. Million Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir. 2001).  The Court will address each in turn.

### a.    An Available Foreign Forum Exists

Ordinarily, an alternative forum is available simply "when the defendant is 'amenable to process' in the other jurisdiction."  *Piper*, 454 U.S. at 255 n. 22 (citation omitted).  Even absent explicit stipulation to jurisdiction by all defendants, an alternative forum may still be "available" when, in the court's determination, the law of the foreign forum authorizes jurisdiction over the case.  *See In re W. Caribbean Crew Members*, 632 F. Supp. 2d 1193, 1200 (S.D. Fla. 2009).

Here, MGG has undertaken to submit itself to the jurisdiction of both the English and Polish courts (and, as a Norwegian company, is subject to suit in Norway).  Strandberg Decl. ¶ 45.  Green Tech and MG Norway, joining in the MGG Motion to Dismiss, are in the same position.[6]  *See* ECF No. [209-9] (4th Strandberg Decl.) ¶ 30 (re Green Tech).  AMT, a UK company, is subject to suit in the UK, and on its own admission appears to have conducted

---

[6] While Strandberg's declaration does not specify that he has individually submitted to jurisdiction in Poland or the UK, his counsel has repeatedly stated that *all* Defendants, presumably including Strandberg himself, are amenable to suit there.  *See, e.g.*, 5/20/15 Hr'g Tr. at 18:2-16.

substantial business in Poland.  *See* ECF No. [102].  RCCL, Royal Caribbean International and RCL maintain offices in Poland and the UK and considerable operations in the UK.[7]  *See* ECF No. [209-8] (RCCL and RCL company details).  Accordingly, subject to verification discussed below, the Court concludes that the courts of the United Kingdom and Poland are available to hear this action.

### b.        Those Alternative Fora Are Adequate

"An alternative forum is adequate if it provides for litigation of the subject matter of the dispute and potentially offers redress for plaintiffs' injuries."  *King*, 562 F.3d at 1382. An alternative forum is "presumed" adequate unless the plaintiff makes some showing to the contrary.  *Leon*, 251 F.3d. at 1312.  "An adequate forum need not be a perfect forum," but it must provide a satisfactory remedy.  *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001); *see also Brokerwood Int'l (U.S.), Inc. v. Cuisine Crotone, Inc.*, 104 F. App'x 376, 384 (5th Cir. 2004) ("Mere differences in the foreign forum's law do not automatically render a foreign forum inadequate, so long as the plaintiff is not deprived of all remedies, or is not limited to a clearly unsatisfactory remedy.").

The adequacy of the courts of the United Kingdom is beyond serious question.  *See, e.g.*, *Rolls-Royce Commercial Marine, Inc. v. New Hampshire Ins. Co.*, 2010 WL 5067608, at *4 (S.D. Fla. Dec. 7, 2010) (confirming the adequacy of UK courts) (citing *Society of Lloyds v. Ashenden*, 233 F.3d 473, 476 (7th Cir. 2000) ("Any suggestion that [the English] system of courts does not provide impartial tribunals or procedures compatible with the requirements of

---

[7] With respect to the Vessel, because the *res* has been replaced by a Letter of Undertaking, its availability as a Defendant is portable.  *See, e.g., Sigalas*, 776 F.2d at 1515 n.3, 1522 (affirming dismissal for *forum non conveniens* where a vessel was named as a defendant *in rem* and where the plaintiff accepted a letter of undertaking In exchange for forbearing her right to perfect a seizure of the vessel).  To the extent relevant (the parties appear to agree that Gjerstad was not the captain of the Vessel during the relevant time period, *see* ECF No. [220-1] (Gjerstad Dep. Tr.); 5/20/15 Hr'g Tr. at 18:2-16), Gjerstad regularly travels to England for work purposes.

due process of law borders on the risible. The courts of England are fair and neutral forums. The English judicial system is the very fount from which our system developed; a system which has procedures and goals which closely parallel our own.") (quotations and citations omitted)). *See also* ECF No. [209-7] (Horne Decl.) (declaration of Green Tech's UK counsel opining and summarizing cognate causes of action available under UK law for Plaintiffs' claims asserted here). MGG has submitted a declaration of Polish counsel that the type of claims asserted by Plaintiffs here could all be brought before a Polish court of general jurisdiction. ECF No. [190-1] (Długosz Decl.). Neither Plaintiffs nor RCCL has presented contradicting evidence or rebutted the presumption of adequacy. Accordingly, subject to verification addressed below, the Court concludes that the courts of the United Kingdom and Poland are adequate alternative fora.

### 2.    Private Factors

As first articulated by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947), the "[p]ertinent private interests of the litigants include [1] relative ease of access to evidence in the competing fora, [2] availability of witnesses and compulsory process over them, [3] the cost of obtaining evidence, and [4] the enforceability of a judgment." *Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1356 (11th Cir. 2008); *see also Aldana v. Del Monte Fresh Produce N.A., Inc.*, 578 F.3d 1283, 1292 (11th Cir. 2009) (noting also "possibility of view of premises"). "[T]he Court must consider not only the possible advantages of the [foreign] forum, but also its disadvantages." *Campbell v. Starwood Hotels & Resorts Worldwide, Inc.*, 2008 WL 2844020, at *3 (S.D. Fla. July 23, 2008).

"Perhaps the most important 'private interest' of the litigants is access to evidence." *Ford*, 319 F.3d at 1308. *See also*, *e.g.*, *Da Rocha v. Bell Helicopter Textron, Inc.*, 451 F. Supp. 2d 1318, 1324 (S.D. Fla. 2006) (dismissal for *forum non conveniens* supported by "the quantity

and quality of the evidence located in [foreign jurisdiction]"); *J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co.*, 515 F. Supp. 2d 1258, 1273 (M.D. Fla. 2007) (noting that "case will be costly and time consuming wherever it is litigated," held that private interest factors weighed in favor of dismissal where most documents were located abroad and were in foreign language, witnesses could be more easily compelled to testify in foreign forum, and non-movant could compel discovery from unwilling parties in the Unites States via 28 U.S.C. § 1782); *Lisa, S.A. v. Gutierrez Mayorga*, 441 F. Supp. 2d 1233, 1239 (S.D. Fla. 2006) (concluding that the vast majority of potential witnesses and documents were located abroad, and that the costs associated with any potential litigation would be far greater if the action were to proceed in Florida, implied parallel between private interest factors of location of and ease of access to evidence, and the conduct giving rise to the claim).

"When considering the availability of evidence and witnesses, the Court 'must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action.'" *Montgomery v. Oberti*, 945 F. Supp. 2d 1367, 1375 (S.D. Fla. 2013) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988)). "A correct 'private interest' analysis begins with the elements of the plaintiff's causes of action. The court must then consider the necessary evidence required to prove and disprove each element. Lastly, the court should make a reasoned assessment as to the likely location of such proof." *Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir. 2003).

Here, the overwhelming majority of the documentation and witnesses relevant to Plaintiff's claims and the Defendants' asserted and potential defenses are located abroad – in Poland, the UK and Norway. To the extent Plaintiff's Jones Act and common law negligence

claims require discovery regarding the purpose, design, manufacture and installation of the exhaust scrubber, that evidence is located in Norway and other Scandinavian countries. Evidence and testimony regarding Plaintiff's work conditions and background health (specifically, smoking and alcohol consumption, centrally relevant to several of the Defendants' asserted defenses regarding the cause of Plaintiff's stroke) – such as testimony from Plaintiff's fellow workers and Plaintiff's past medical records – are located in Poland.  Evidence and experts regarding Plaintiff's employment, employment contracts, non-governmental and employee insurance, and Polish universal health insurance – relevant to Plaintiff's theories of employment and joint-employment, Plaintiff's claims for maintenance and cure, and the Defendants' defenses related to Plaintiff's activities while working, potentially contributing to his injuries and stemming from Plaintiff's decision not to return to Poland for treatment – are either located, or much more easily accessed, in the UK and/or Poland.  MGG, MG Norway, Green Tech, AMT, their personnel, and their business files, are located and more easily accessed in Norway and the UK.  Plaintiff's Polish employer, non-party ship.zim, who may not be subject to this Court's subpoena power, is located in Poland.

Inspection of the Vessel and the installed scrubber system, i.e., Plaintiff's work environment, would be more easily done here in Florida – at least during that part of the year when the Vessel cruises between destinations in the Caribbean and Fort Lauderdale.  However, the Vessel spends roughly half the year (June to November) in the Mediterranean.  Accessing the Vessel from the UK or Poland while it is at port in Spain, France or Italy is eminently practical and not prohibitively less convenient.

RCCL maintains its base of operations in Florida.  Access to its staff and records would be easier had here.  That said, the only evidence and witnesses within RCCL's control critical to

Plaintiffs' claims and – more important – the assessment of damages are those related to the alleged initial misdiagnosis of Plaintiff's stroke.  That evidence is presumably located in the district.  The same goes for Plaintiff's medical records from his hospitalization in Florida. Taking this into account, the Court notes that the parties have already produced a fair amount of this evidence, and the remainder, while certainly less convenient for RCCL, must be weighed against the lion's share of the evidence and parties located abroad.

The Court acknowledges the potential financial hardship Plaintiff may face if forced to relocate to a foreign forum in order to continue this litigation.  Again, "if" – the Court is unaware of any physical presence requirement before the Polish or English courts, and Plaintiff has already been deposed here.  In any event, as the Court previously explained, Plaintiff's presence in Florida results ultimately from his own choice to remain here.  Whatever inconvenience inures is of his own making.

The Court concludes that access to evidence and witnesses and the relative costs associated with discovery weigh solidly in favor of dismissal.

### 3.    Public Factors

In the Eleventh Circuit, "[a] trial court will look at the private interests first and then, if the balance of the private interests are found "to be in equipoise or near equipoise," it will "determine whether or not factors of public interest tip the balance in favor of a trial in a foreign forum."  *King*, 562 F.3d at 1382 (quoting *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir. 1983)).  The "[r]elevant public interests include [1] the familiarity of the court(s) with the governing law, [2] the interest of any foreign nation in having the dispute litigated in its own courts, and [3] the value of having local controversies litigated locally."  *Renta*, 530 F.3d at 1356-57 (citing *Gilbert*, 330 U.S. at 508-09).  Notably, in considering these factors, the district

court "need not make an explicit finding as to which country's law applies," but simply that *some* foreign law will likely apply. *Lisa*, 441 F. Supp. 2d at 1240.

Because the Court concludes that the private interests align strongly in favor of trial abroad, it need not engage in a determination of the public interests. That said, it is clear that the public interests favor dismissal as well. The parties' employment relationship and the issues surrounding Plaintiff's health insurance are governed by foreign law. Further, "[t]he meaning of an employment contract for a job located [abroad] is precisely the sort of dispute where there is a local interest in deciding the interpretation of the agreement." *Huang v. Advanced Battery Technologies, Inc.*, 2010 WL 2143669, at *8 (S.D.N.Y. May 26, 2010) (granting dismissal for forum non *conveniens*) (citing *Gilbert*, 330 U.S. at 508; *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 74 (2d Cir. 2001)). Finally, it is reasonable to conclude that the United Kingdom and Poland would have a vested policy interest in determining whether a Polish employee, with a British secondary insurer and with access to Poland's national health care system but with U.S. medical bills, was injured by his employers' conduct and what the proper relief may be.

### 4.    Dismissal for Forum Non Conveniens Is Appropriate

Based on the foregoing, the Court determines that the courts of the United Kingdom and Poland are both available and adequate alternative fora for entertaining Plaintiffs' claims; that the private factors weigh solidly in favor of trying this action elsewhere; and that, to the extent necessary to the analysis, the public factors counsel trial abroad. Accordingly, dismissal of Plaintiffs' claims for *forum non conveniens* in favor of either a British or Polish forum is appropriate. *See Vesuna v. CSCS Int'l N.V.*, 405 F. App'x 371, 373 (11th Cir. 2010) (affirming dismissal for *forum non conveniens* in favor of multiple foreign fora (Italy, India, and the Netherlands)).

**D.      Severance of Claims or Parties for Purposes of *Forum Non Conveniens***

The parties have devoted considerable attention (on their own initiative and on the Court's subsequent instruction) to whether some aspect of Plaintiffs' action should remain in this forum should the Court determine (as it has) that dismissal for *forum non conveniens* is warranted.   Specifically, MGG and the Defendants joining in its motion highlight Plaintiff's "medical malpractice" claim against RCCL and its related entities, and suggest that it may be appropriate for the Court to sever that claim (or claims) and adjudicate it here.   For their part, RCCL and Plaintiffs argue that claim- or party-severance and retention is impermissible in the *forum non conveniens* context, and that the relative convenience of trying the medical negligence claim requires retention by the Court of the entire case.

Dispensing with RCCL and Plaintiffs' "whole case" doctrine, it is true that, with respect to the choice of law analysis, "a court must view *the case as a whole* in order to determine which law can be most fairly applied to govern the contractual relationship," *Callasso*, 324 F. Supp. 2d at 1326 (quoting *Sigalas*, 776 F.2d at 1517; emphasis added), and that, in the traditional analysis, the moving party must "establish[] that an adequate alternative forum exists with jurisdiction *over the whole case*, *Sun Trust Bank*, 184 F. Supp. 2d at 1262 (emphasis added).   However, viewing the case as a whole in assessing whether U.S. law should apply does not necessarily require treating each claim or party identically in the final analysis.   In addition, the Court has concluded that the UK and Polish courts *do* have jurisdiction over all parties and claims.   The issue then, having made that determination, is whether the Court is required to dismiss the entirety of Plaintiffs' action.

"In cases involving multiple defendants, when dismissal on *forum non conveniens* grounds would further 'the administration of justice,' but venue in the alternative forum is not

appropriate for one or more of the defendants, the Court may sever claims against those defendants if they are alleged to be only indirectly connected to the conduct forming the primary basis of the action." *Warter v. Boston Sec., S.A.*, 380 F. Supp. 2d 1299, 1307 (S.D. Fla. 2004) (citing *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968)); *see also Snee v. Sunrise Props. Ltd.*, 2009 WL 2163179, at *5 (S.D. Fla. July 17, 2009) (citing *Warter* for determination that inclusion of nominal defendant would not bar dismissal for *forum non conveniens*); *Banco Latino v. Gomez Lopez*, 17 F. Supp. 2d 1327, 1333 (S.D. Fla. 1998) (severing and retaining claims of one U.S. plaintiff while dismissing remainder for *forum non conveniens*); *Blum v. Gen. Elec. Co.*, 547 F. Supp. 2d 717, 724 (W.D. Tex. 2008) (severing and dismissing certain claims based on *forum non conveniens* and, citing *Warter*, noting that it was unaware of any "authority contradicting [the] assertion that where a dismissal pursuant to the doctrine of *forum non conveniens* is warranted for some [parties], there exists sufficient cause to sever otherwise properly joined parties"); *Erausquin v. Notz, Stucki Mgmt. (Bermuda) Ltd.*, 806 F. Supp. 2d 712, 730 (S.D.N.Y. 2011) (severing claims brought solely to create CAFA jurisdiction and consequently dismissing remaining claims for *forum non conveniens*).  *But see Windt v. Qwest Commc'ns Int'l, Inc.*, 544 F. Supp. 2d 409, 415 (D.N.J. 2008) (refusing to "sever the case into 'local' and 'foreign' claims for the purpose of (1) dismissing [one] claim as a matter of law, and then (2) dismissing the remaining [foreign] law claims on the grounds of *forum non conveniens*. . . . The doctrine of *forum non conveniens* is intended to avoid trial in inappropriate forums, not to avoid meritless suits, and could be employed only with respect to the entire case, not individual claims.") (quotation omitted).

That is, if the situation warranted, the Court could sever some part of an action and dismiss the remainder for *forum non conveniens*. The case at bar, however, does not lend itself to such treatment. Two critical issues require that conclusion.

First, Plaintiffs have nowhere articulated a separate "medical malpractice" or "medical negligence" claim, let alone asserted such claim separately against RCCL or the Royal Caribbean Parties. Plaintiffs assert claims for negligence under the Jones Act and for common law negligence (Counts I and V of the Verified Complaint), and assert those two claims against all of the various Defendants.[8] Their allegations that Plaintiff was subjected to negligent treatment and misdiagnosis on board the Vessel is subsumed within those claims. Keeping Plaintiffs' "medical negligence" claim would require that the Court dissect factual allegations, elements of a sub-cause of action, and certain Defendants from Plaintiffs' stated complaint. Such selective reimagining of Plaintiffs' claims is improper, and the Court declines to undertake it.[9]

Second, the misdiagnosis issue is logically interconnected with the remainder of Plaintiffs' causes of action. Whatever the determination of liability on Plaintiff's unsafe workplace and maintenance and cure claims, damages will turn on the attribution of responsibility for the full range of Plaintiff's injuries. True, this Court could adjudicate a separate claim against the Vessel's onboard doctor (and the parties response for his or her actions), in effect conducting a damages trial parallel to a determination of underlying liability. But there appears to be no good reason to do so. It would certainly be ironic to dismiss this case for purposes of convenience and then shackle the parties and the foreign tribunal with the inconvenience of parallel and interconnected proceedings.

---

[8] Gjerstad escaped being named in Count I.
[9] Relevant to this determination, Plaintiffs have had multiple occasions to reexamine the statement and formulation of their claims, and at each turn, have defended the precise articulation of their claims in the Verified Complaint. *See, e.g.*, ECF No. [191] (order denying motion to strike Plaintiffs' jury demand).

### E.    Contingent Dismissal

Dismissal for *forum non conveniens* may be made contingent on the foreign court's acceptance of the case and exercise of jurisdiction over the claims and parties.  *Ford v. Brown*, 319 F.3d 1302, 1310-11 (11th Cir. 2003) (approving conditional dismissal for *forum non conveniens*); *see also*, *e.g.*, *In re Banco Santander Sec.-Optimal Litig.*, 732 F. Supp. 2d 1305, 1331 (S.D. Fla. 2010) *aff'd sub nom. Inversiones Mar Octava Limitada v. Banco Santander S.A.*, 439 F. App'x 840 (11th Cir. 2011) ("[A] district court can resolve personal jurisdiction questions on a motion to dismiss for *forum non conveniens* by conditioning dismissal on the foreign tribunal's exercise of personal jurisdiction over the defendants.") (citing *Magnin v. Teledyne Continental Motors,* 91 F.3d 1424, 1430-31 (11th Cir. 1996) (approving conditional dismissals for *forum non conveniens*).   While the Court has been appraised that courts in the United Kingdom and Poland would take jurisdiction over all claim and parties here, *see supra* § II.C.1.b, the Court will make dismissal of Plaintiffs' claims here contingent on actual acceptance of this case by a court in one of those jurisdictions (assuming Plaintiffs elect to reassert their claims abroad).

### III.   PERSONAL JURISDICTION

Three of the Defendants – MGG, Green Tech and MG Norway – argue that the Court lacks personal jurisdiction over them with respect to Plaintiffs' claims asserted in the Verified Complaint.

### A.    Legal Standard Under Rule 12(b)(2)

A party may move for dismissal under Rule 12(b)(2) for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2).  "[T]he plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant."  *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988) (citing *Delong v. Washington Mills*, 840 F.2d 843, 845 (11th Cir.1988);

*Bracewell v. Nicholson Air Service, Inc.*, 748 F.2d 1499, 1504 (11th Cir. 1984). "Allegations in the complaint are accepted as true to the extent they are uncontroverted by defendant's non-conclusory affidavits or deposition testimony." *Fru Veg Mktg., Inc. v. Vegfruitworld Corp.*, 896 F. Supp. 2d 1175, 1180 (S.D. Fla. 2012) (citing *Morris*, 843 F.2d at 492); *see Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1317 (11th Cir. 2006) ("The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits.") (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). "After a plaintiff has established a prima facie case for jurisdiction and the defendant has filed affidavits contesting jurisdiction, the plaintiff bears the burden of proving sufficient jurisdiction by affidavits or other sworn statements." *Abramson v. Walt Disney Co.*, 132 F. App'x 273, 276 (11th Cir. 2005); *see also Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) (stating same burden shifting framework). In meeting that burden, the plaintiff's evidence must be credited even if it conflicts with the defendant's. *See Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1356 (11th Cir. 2000) ("If there is conflict between the plaintiff's and the defendant's allegations or in the evidence, the plaintiff's evidence is to be believed and all reasonable inferences must be drawn in his favor.").

**B.      Determining Personal Jurisdiction**

"As with diversity cases, in determining whether personal jurisdiction exists in admiralty cases, a federal court must look to the long-arm statute of the state where it sits and the cases that interpret that statute." *Johns v. Taramita*, 132 F. Supp. 2d 1021, 1027 (S.D. Fla. 2001) (citing *Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1072-74 (11th Cir.1999) (applying Florida long-arm statute to determine whether personal jurisdiction exists over defendant to suit in admiralty); *Shaffer v. Tiffany Yachts, Inc.*, 1996 WL 870734, *2 (S.D. Fla. Oct.31, 1996) (same)); *see also Sculptchair*, 94 F.3d at 626-27 ("When

jurisdiction is based on a federal question arising under a statute that is silent regarding service of process, Rule 4(e) of the Federal Rules of Civil Procedure directs us to look to the state long-arm statute in order to determine the existence of personal jurisdiction." (citing *Cable/Home Communication v. Network Prod's*, 902 F.2d 829, 855 (11th Cir. 1990)); *Ahern v. Pac. Gulf Marine, Inc.*, 2008 WL 706501, at *6 (M.D. Fla. Mar. 14, 2008) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104-08 (1987)) ("Because Plaintiffs have alleged no federal statute governing service of process, Florida's long-arm statute controls, as interpreted by the Florida Supreme Court, even in this federal question case.").[10]

A district court must engage in a two-part inquiry to determine whether it may exercise personal jurisdiction over a nonresident defendant. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996). "First, the court must determine whether the applicable state statute governing personal jurisdiction is satisfied." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (citing *Sculptchair*, 94 F.3d at 626). If the requirements of (here) Florida's long-arm statute are satisfied, "then the court must inquire as to,

---

[10] The court in *Zeus Projects Ltd. v. Perez y Cia. de Puerto Rico, Inc.*, 187 F.R.D. 23 (D.P.R. 1999), provided the following helpful explanation of this issue:

> In cases where a federal court's subject matter jurisdiction is based on admiralty or a federal question, it is true that the court's jurisdiction over parties is national in scope. The limits on the court's personal jurisdiction are based in the Due Process clause of the Fifth Amendment, not in the Fourteenth Amendment as is true for diversity cases. When the Fifth Amendment is the controlling guideline, due process provides that a court will have personal jurisdiction over an individual who has the sufficient contacts with the United States as a whole rather than with a particular forum state or territory. Notwithstanding the scope of a federal court's personal jurisdiction in such cases, the court's power over individuals is subject to an important limitation. This limitation takes the form of service of process. Service of process and personal jurisdiction are closely related; they are, however, distinct concepts. Thus, while it may be true that a court faced with an admiralty or federal question has personal jurisdiction over any defendant located in the United States, it is also true that the defendant must be served pursuant to a federal statute or civil rule. Service is proper on an individual located outside the forum when a federal statute authorizes service or when that individual would be subject to the jurisdiction of a state court in the state where the federal court is located. [Where t]here is no federal statute providing for service on defendants in admiralty cases . . . is necessary to determine whether [defendant] would be subject to the jurisdiction of a local [] court. To make this determination, the Court must look to [the state's] long-arm statute.

*Id*. at 28-29 (quotations and citations omitted).

(1) whether defendant has established sufficient "minimum contacts" with the state of Florida; and (2) whether the exercise of this jurisdiction over defendant would offend 'traditional notions of fair play and substantial justice'" under the Due Process Clause of the Fourteenth Amendment. *Future Tech.*, 218 F.3d at 1249 (quoting *Sculptchair*, 94 F.3d at 626; *Int'l Shoe v. Washington*, 326 U.S. 310 (1945)); *see Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) ("Due process requirements are satisfied when *in personam* jurisdiction is asserted over a nonresident corporate defendant that has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.") (quotation omitted).

"A defendant can be subject to personal jurisdiction under Florida's long-arm statute in two ways: first, section 48.193(1)(a) lists acts that subject a defendant to specific personal jurisdiction – that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida, Fla. Stat. § 48.193(1)(a); and second, section 48.193(2) provides that Florida courts may exercise general personal jurisdiction – that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida-if the defendant engages in "substantial and not isolated activity" in Florida, id. § 48.193(2)." *Carmouche v. Tamborlee Mgmt., Inc.*, --- F.3d ---, 2015 WL 3651521, at *2 (11th Cir. June 15, 2015)

### C.     Specific Jurisdiction Over the Norwegian Defendants Is Lacking

Specific personal jurisdiction under Florida's long-arm statute, Fla. Stat. § 48.193, exists when a showing is made that the foreign defendant has engaged in specifically-enumerated conduct relating to her asserted cause of action by which the defendant "purposively avails itself the privilege of conducting activities" within Florida, thus invoking the benefits and protections of its laws, and such that the defendant "should reasonably anticipate being haled into court there." *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993) (discussing

36

minimum contacts for purposes of specific jurisdiction consistent with due process); *Fraser v.*

*Smith*, 594 F.3d 842, 847-48 (11th Cir. 2010) (discussing specific jurisdiction under Florida's

long arm statute).

> Personal jurisdiction over nonresident defendants in Florida is limited to situations where the cause of action arises from the doing of business in Florida or the cause of action has some other connection to a specified act committed in Florida.  This has been described as the "connexity" requirement that must be met before jurisdiction over a nonresident can be sustained.  It is clear that doing business in this state is not a sufficient basis, standing alone, upon which to predicate long-arm jurisdiction.  There must also be some nexus or connection between the business that is conducted in Florida and the cause of action alleged.

*Polski Linie Oceaniczne v. Seasafe Transp. A/S*, 795 F.2d 968, 971 (11th Cir. 1986) (quoting

*Bloom v. A.H. Pond Co.*, 519 F. Supp. 1162, 1168 (S.D. Fla. 1981)).  The connections invoked

by Plaintiffs here include "operating a business . . . or business venture" in Florida; "committing

a tortious act" within Florida; and causing injury within to persons within the state "arising out of

an act or omission by the defendant outside the state, if, at or about the time of the injury, either

(a) [t]he defendant was engaged in solicitation or service activities within [Florida]; or (b)

[p]roducts, materials, or things processed, serviced, or manufactured by the defendant anywhere

were used or consumed within this state in the ordinary course of commerce, trade, or use."  Fla.

Stat. §§ 48.193(1)(a)(1), (2) & (6).

    As established above in the Court's discussion of the location of the wrongful act in the

*forum non conveniens* context, the tortious activity alleged by Plaintiffs here did not occur within

Florida and Plaintiff was not in Florida "at or about the time of [his] injury."  The Defendants'

alleged negligence in creating an unsafe work environment for Plaintiff (regarding all aspects of

the design, manufacture and installation of the scrubber system) took place abroad.  Plaintiff's

exposure to that unsafe environment and his (allegedly) consequent stroke likewise took place

outside of the State of Florida.  Again, due to safety regulations, Plaintiff's work could not have

been conducted in U.S. waters.  Further, Plaintiff's own allegations make clear that he was in fact in international waters, and not in Florida, when he suffered his stroke.  Plaintiff alleges that "[o]n or about the week of December 9, 2012 . . . his head started to hurt and he fell to his cabin's floor."  Compl. ¶ 170.  "Later that same day . . . [a] crewman told [] Plaintiff that he had blood vessels 'shot' in his eyes and that [he] also showed symptoms of clamminess, sweats and general ill health."  *Id*. ¶ 171.  Shortly thereafter that same day, "Plaintiff lost the use of his left hand."  *Id*. ¶ 172.  The next day, Plaintiff was instructed not to work – "to stay in the workshop rather than heading to the chimney given that he could not use his left hand."  *Id*. ¶ 173.  Later that day, "Plaintiff began to notice numbness and tingling in his left side extremities and fell, losing consciousness until the following morning.  [] Plaintiff was also experiencing blurry vision which was worsening by the day."  *Id*. ¶ 174.  Next, "[o]n or about the early morning of December 13, 2012," Plaintiff was told to report to the ship infirmary, where he "was told to lie down on a bed that had also been prepared for his arrival following which he was wheeled to an ambulance.  [] Plaintiff lost consciousness at this time."  *Id*. ¶ 175.  Plaintiff was then transported by ambulance from the Vessel to the critical care unit as Broward General Hospital.  Id.  ¶ 176. As the Vessel's log makes clear, the Vessel was in Port Everglades and at port in Fort Lauderdale during the week of December 9, 2012 only on December 13, 2012, when Plaintiff was taken to hospital.  *See* Vessel Log.  Therefore, Plaintiff's injuries manifested themselves while he and the Vessel were still outside the jurisdiction, before they entered U.S. waters or made port at Port Everglades.  Whatever the extent of MGG, Green Tech and MG Norway's contribution to Plaintiff's injuries, their activity cannot substantiate the Court's personal jurisdiction over them under Fla. Stat. §§ 48.193(1)(a)(2) or (6).

"In order to establish that a defendant is 'carrying on business' for the purposes of the long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 106 F. Supp. 2d 1278, 1281 (S.D. Fla. 1999) *aff'd*, 218 F.3d 1247 (11th Cir. 2000) (citing *Sculptchair*, 94 F.3d 627; *Dinsmore v. Martin Blumenthal Associates, Inc.*, 314 So. 2d 561, 564 (Fla. 1975)); *see also Airplay Am., LLC v. Cartagine*, 2009 WL 909521, at *2 (S.D. Fla. Apr. 2, 2009) (defendant's "attendance at board meetings or his direct communications with [company's] directors and investors" insufficient to constitute operating a business in Florida); *Tara Prods., Inc. v. Hollywood Gadgets, Inc.*, 2010 WL 1531489, at *12 (S.D. Fla. Apr. 16, 2010) ("[T]elephonic and electronic communications from [outside Florida] into Florida . . . alone cannot constitute 'conducting business' in Florida for purposes of establishing personal jurisdiction under Fla. Stat. § 48.193(1)(a)."); *Gulf Atl. Transp. Co. v. Offshore Tugs, Inc.*, 740 F. Supp. 823, 831 (M.D. Fla. 1990) ("Although the [] agreement was arguably a "business venture," defendants did not operate, conduct, engage in, or carry on the business venture in Florida.  All performance pursuant to the [] agreement was in places other than in Florida."); *Henriquez v. El Pais Q'Hubocali.com*, 500 F. App'x 824, 829 (11th Cir. 2012) (displaying advertisements in the state insufficient to constitute operating for jurisdictional purposes).  "The fact that a foreign defendant contracts with a Florida resident is not enough to establish personal jurisdiction over the foreign defendant." *Wallack v. Worldwide Machinery Sales, Inc.*, 278 F. Supp. 2d 1358, 1366 (M.D. Fla. 2003).

Plaintiffs seek to treat MGG, Green Tech and MG Norway as in effect one entity for purposes of their activity relevant to Plaintiffs' claims.  Granting that treatment, *arguendo*, there is no evidence that those entities engaged in business activity in Florida sufficient to establish

connexity jurisdiction.[11]   None of the Norwegian Defendants maintained an office or personnel

in Florida.   MGG or Green Tech considered opening an office in Miami in 2009 or 2010, and

leased property for that purpose.   But the market turned, the proposed U.S.-based entity was

never incorporated, and the office never opened.   Strandberg Decl. ¶¶ 10-14.   Green Tech

negotiated its agreement with RCCL to manufacture and install the scrubber from its offices in

Norway.   *Id.* ¶ 17.   Strandberg, on behalf of Green Tech, visited RCCL's offices in Florida in

2011 to discuss the technical aspects of the scrubber system.   *Id.* ¶ 18.   Strandberg, also on behalf

of Green Tech, visited the Vessel while docked at Port Everglades on three occasions to inspect

the progress of work on the scrubber system.   *Id*.   He also attended a trade show in Florida

(although, it appears, in 2013, after Plaintiff's exposure and stroke).   Green Tech (and, on

Plaintiffs' theory, MGG and MG Norway as well) indeed contracted with a U.S.-based company

to install the scrubber which Plaintiff claims caused his injuries – and that contract was certainly

relevant to that U.S.-based company's business in Florida.   But those activities, taken together,

simply do not amount to conducting a business or business venture in Florida.[12]

Plaintiffs have also alleged that MGG, Green Tech and MG Norway participated in a

joint venture with RCCL and its related entities to manufacture and install the scrubber system.

Compl. ¶¶ 83-88.   They aver that personal jurisdiction over the Norwegian Defendants exists on

---

[11] MGG and MG Norway reject Plaintiffs' disregard for the corporate distinctions between the various Norwegian Defendants and their related entities.   *See* MGG Motion to Dismiss at 14; MG Norway Motion to Dismiss at 6-7.   As they highlight, MGG owns a minority position in Marine Global Holding AS (and held a 70% interest in that entity prior to early 2014), which in turn fully owns MG Norway, which in turn owns 92.92% of Green Tech.   *See* Strandberg Decl. ¶¶ 4-7.   However, there is no evidence that the various entities failed to observe corporate formalities, that any Defendant other than Green Tech contracted with RCCL or agreed to manufacture and install the scrubber system, or that Standberg acted in connection with the RCCL agreement and the scrubber system on behalf of any entity other than Green Tech.   Absent acceptance of Plaintiffs' assumptive ascription of Green Tech's actions to MGG and MG Norway, the Court would have no basis on which to engage in this analysis of personal jurisdiction over those Defendants.

[12] Plaintiffs argue that the Norwegian Defendants "could hardly be surprised that [their] participation in the passenger cruise industry brought [their] scrubber system into Ft. Lauderdale, the Mecca of the cruise line industry." ECF Nos. [12] at 18; [162] at 7.   Establishing personal jurisdiction on that basis would radically expand the notion of "conducting business" in the state, and ignores the requirement, under Florida's long-arm statute in the products-liability context, that the plaintiff be in the state "at or about the time of the injury."

CASE NO. 14-CIV-60885-BLOOM/Valle

that basis.  *See Sutton v. Smith*, 603 So. 2d 693, 699 (Fla. 1st DCA 1992) ("Where an agreement

for joint venture made outside the forum state contemplates and results in performance in

substantial part within the forum state, the non-resident members of the joint venture have

exercised sufficient minimum contacts within the forum state to support the forum state's

exercise of personal jurisdiction over them.").   Under Florida law, for a joint venture to exist,

there must be a contractual relationship establishing:   "(1) a community of interest in the

performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary

interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any

losses which may be sustained."  *Jackson-Shaw Co. v. Jacksonville Aviation Auth.*, 8 So. 3d

1076, 1089 (Fla. 2008) (quoting *Kislak v. Kreedian*, 95 So. 2d 510, 515 (Fla. 1957)).   "The

absence of one of the elements precludes a finding of a joint venture."  *Id.* (citing *USA*

*Independence Mobilehome Sales, Inc. v. City of Lake City*, 908 So. 2d 1151, 1158 (Fla. 1st DCA

2005); *Austin v. Duval County Sch. Bd.*, 657 So. 2d 945, 948 (Fla. 1st DCA 1995)).   Plaintiffs

have produced no evidence whatsoever that those elements are present here.  To the contrary, the

declarations filed and contracts submitted in evidence reflect commercial terms between separate

parties for sale and services – sale of the designed and manufactured scrubber system and

service, as in installation, of the same.  There is no mention of a community of interest or profit

and loss sharing.  Plaintiffs' unsupported allegations cannot stand in the face of the evidence

submitted against them.   *See, e.g.*, *Ash v. Royal Caribbean Cruises Ltd.*, 991 F. Supp. 2d 1214,

1218 (S.D. Fla. 2013) ("Unable to demonstrate either a principal/agent or joint venture

relationship between RCCL and [an independent contractor], the plaintiffs' argument for

personal jurisdiction under section 48.193(1)(a) fails."); *L.O.T.I. Grp. Prods. v. Lund*, 907 F.

Supp. 1528, 1532 (S.D. Fla. 1995) ("Plaintiff's interest in characterizing the [defendants']

relationship as "alter ego" or "agent-principal" is not supported by the affidavits, memoranda, or testimony."); *Panama Shipping Lines, Inc. v. Ciramar Int'l Trading, Ltd.*, 2009 WL 742675, at *2 (S.D. Fla. Mar. 20, 2009) (dismissing where plaintiff failed to demonstrate alter ego relationship); *C-B Kenworth, Inc. v. Gen. Motors Corp.*, 118 F.R.D. 14, 16 n.2 (D. Me. 1987) (dismissing Swedish subsidiary who had no connection with the joint venture with the U.S. defendant).

### D.     General Jurisdiction Over the Norwegian Defendants Is Lacking

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011).  As articulated by Florida's long arm statute, a defendant may be haled into a Florida court if it is "engaged in substantial and not isolated activity within [the] state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity."  Fla. Stat. § 48.193(2).

> While Florida's specific jurisdiction requires the plaintiff to establish connexity between the injuries suffered and the defendant's contacts, Florida's general jurisdiction does not.  *See Woods v. Nova Companies Belize Ltd.*, 739 So. 2d 617, 620 (Fla. 4th DCA 1999) (citing *Helicopteros*, 466 U.S. at 416.  If [the p]laintiff relies on Fla. Stat. § 48.193(2), then [the p]laintiff must show that [the defendant] engaged in substantial activity in Florida.  Florida courts have interpreted "substantial and not isolated activity" to mean "continuous and systematic general business contact."  *Id.*  Indeed, in order for a defendant to fall within Florida's general jurisdiction, a defendant's contacts "must be so extensive to be tantamount to [the] defendant being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in the forum state's courts in any litigation arising out of any transaction or occurrence taking place anywhere in the world."  *Exhibit Icons, LLC v. XP Companies, LLC*, 609 F. Supp. 2d 1282, 1295 (S.D. Fla. 2009).

*Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1341 (S.D. Fla. 2014) *aff'd sub nom.* *Carmouche v. Tamborlee Mgmt., Inc.*, --- F.3d ---, 2015 WL 3651521 (11th Cir. June 15, 2015) (internal citations omitted). "[B]ecause general personal jurisdiction is based on contacts unrelated to the cause of action being litigated, the due process requirements for general jurisdiction must be assessed under a 'stricter standard' than those for specific jurisdiction. *Aronson v. Celebrity Cruises, Inc.*, 30 F. Supp. 3d 1379, 1386 (S.D. Fla. 2014) (quoting *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000)).

As the Court's previous discussion makes clear, the activity Plaintiffs highlight "are not 'so substantial' as to make this one of those 'exceptional' cases in which a foreign corporation is 'at home' in a forum other than its place of incorporation or principal place of business." *Carmouche v. Tamborlee*, --- F.3d ---, 2015 WL 3651521, at *3. *See also id.* (rejecting assertion of personal jurisdiction where defendant "ha[d] a Florida bank account and two Florida addresses, one of which is a post-office box, purchas[ed] insurance from Florida companies, fil[ed] a financing statement with the Florida Secretary of State, join[ed] a non-profit trade organization based in Florida, and consent[ed] to the jurisdiction of the Southern District of Florida for all lawsuits arising out of its agreements with [a co-defendant]"); *Fraser*, 594 F.3d at 844, 847 (holding that Florida courts could not exercise general personal jurisdiction over a foreign defendant even though the defendant maintained a website accessible from Florida, advertised in several publications circulated in the United States, including the Miami Herald, procured liability insurance through a Florida insurance agent, purchased about half of its boats in Florida, and sent employees and representatives to Florida for training and to promote its services); *Aronson*, 30 F. Supp. 3d at 1386 (finding no personal jurisdiction over defendant despite allegations that defendant attended annual cruise industry conference in Miami,

submitted bids to Miami-based cruise ship operators annually via e-mail, was a member of a Florida-based trade organization, derived majority of its business from sales of tours to the Florida-based cruise lines, promoted its tours onboard the cruise ships, was paid by the cruise line from a Florida account, purchased insurance from a Florida-based broker, and consented to the jurisdiction of the Florida courts in its contracts with Florida tour operators); *E & H Cruises, Ltd. v. Baker*, 88 So. 3d 291, 294 (Fla. 3d DCA 2012) (attending business development-specific events in Florida for several years insufficient to constitute systematic and continuous contact and establish personal jurisdiction).

### E. The Court Cannot Exercise Personal Jurisdiction Over MGG, Green Tech and MG Norway

For the foregoing reasons, were to Court to exercise jurisdiction over Plaintiffs' claims (rather than dismiss those claims for *forum non conveniens*, as the Court has determined to do), it would not have personal jurisdiction over MGG, Green Tech and MG Norway with respect to those claims.

## IV.  ROYAL CARIBBEAN'S CROSS-CLAIMS

Green Tech requests dismissal of the cross-claims asserted against it by Royal Caribbean for lack of personal jurisdiction, improper venue, and for insufficient service of process; asserts that RCL is not a proper party to this case (and urges dismissal of its cross-claims on that basis); and argues, in the alternative, that Royal Caribbean's cross-claims are subject to arbitration. Ultimately, resolution of Green Tech's Motion on cross-claims turns on the Court's holding that RCCL agreed to submit its contractual claims against Green Tech to arbitration abroad.

### A. Background

Royal Caribbean's cross-claims against Green Tech stem from an agreement entered into between RCCL and Green Tech in September, 2011, for sale and installation of Green Tech's

Scrubber Emissions Control System ("SECS").  Cross-Compl. ¶ 11; *see* ECF No. [95-1] (the "Agreement").[13]  Royal Caribbean alleges that Green Tech breached the Agreement in several respects, and asserts the following claims against Green Tech:  breach of contract, brought by RCCL (Count I); contractual indemnity by RCCL (Count II); common law indemnity by RCCL (Count III); common law indemnity by RCL (Count IV); and contribution by RCCL and RCL (Count V).[14]

Prior to execution of the Agreement, in August, 2011, RCCL and Green Tech entered into a Letter of Intent ("LOI") outlining the terms of a prospective definitive agreement.  ECF No. [195-5] (the LOI).[15]  The LOI provides:

> Neither [RCCL] nor [Green Tech] intends for this Letter of Intent to be a definitive agreement other than as expressly set forth herein.  Neither of the parties is legally bound to the other (whether under this Letter of Intent or otherwise) until terms and conditions related to this transaction are negotiated and incorporated into a Definitive Agreement signed by all applicable parties.  Until such Definitive Agreement is executed, except for these Binding Provisions [including the instant provision] neither party shall have any legal or equitable duty or obligation to the other.  This Agreement shall be governed by English law.  Any dispute, controversy or claim arising out of or in connection with this Agreement, or the breach, termination, or invalidity thereof shall be finally settled by arbitration.  The place of arbitration will be London.  This Letter of Intent may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same document.

LOI at p. 3 ¶ 3.  The LOI also provides that "[i]f a Definitive Agreement is executed . . ., this Letter of Intent shall be superseded in all respects by the terms and conditions of the Definitive

---

[13] The Agreement is attached to, submitted with, and referenced throughout the Royal Caribbean Cross-Complaint.  *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) ("A court's review on a motion to dismiss is limited to the four corners of the complaint.  A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims.") (quotation omitted).

[14] Royal Caribbean also asserts claims for indemnity and contribution against AMT.  AMT has separately answered with respect to those claims, ECF No. [200]; the claims are not subject to Green Tech's Motion on Cross-Claims, but are addressed by the Court in the conclusion to this Order.

[15] While the Court references the copy of the LOI submitted by Green Tech in support of their instant motion, the Royal Caribbean Parties submitted the identical document as an exhibit to a declaration submitted in opposition to Green Tech's Motion to Dismiss the Verified Complaint.  *See* ECF No. [184-3]. As discussed *infra*, the LOI is incorporated into the Agreement and, therefore, properly considered on Green Tech's Motion to Dismiss the Cross-Claims.

Agreement.   The Definitive Agreement shall then govern the entire transaction from the beginning." *Id.* at 3.

The Agreement – which all parties agree is the definitive agreement contemplated by the LOI – specifically refers to the LOI in its recitals.  *See* Agmnt. at 1.  The recitals are specifically incorporated into the Agreement.  *Id.* § IV.AA.  The Agreement further provides that "this written Agreement and the documents referred to herein . . . constitute the entire Agreement between the parties with respect to the subject matter hereof . . . ." *Id.* § IV.P.

The Agreement contains the following salient provisions:

**Arbitration**.  Any disagreement regarding the interpretation or the operation of this Agreement shall be determined by final and binding arbitration in accordance with the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with the said rules.  Arbitration shall take place in London, England.  The arbitration procedures shall be conducted in the English language.

**Exhibits and Schedules**.  All Exhibits and Schedules attached to this Agreement are incorporated herein and made a part hereof, but it is understood that to the extent any such Exhibits and/or Schedules conflict with the terms and/or conditions of the foregoing provisions in this Agreement, then the applicable foregoing provisions in this Agreement shall be deemed to control.

Agmnt. §§ IV.Y, DD.

Schedule F to the Agreement – the Purchase Order Terms and Conditions – contains its own section on "jurisdiction," which provides as follows:

(a) *Orders within the United States*.  Any action or proceeding arising out of or relating to an Order placed with a SUPPLIER in the United States of America shall be initialized and litigated in any federal or state court located in Miami, Florida, SUPPLIER hereby submits to the jurisdiction of all courts located in Miami, Florida with respect to any action or proceeding arising out of such Order, and SUPPLIER hereby waives any venue or other objection it may have to any such proceeding being brought in any court located in Miami, Florida.

(b) *Orders outside the United States*.  Any disagreement arising out of or related to an Order placed with a SUPPLIER outside of the United States of America shall be determined by binding arbitration under the Florida International Arbitration Act in accordance with the International Arbitration Rules of the

American Arbitration Association (the "AAA").   The arbitration shall be conducted in Miami, Florida before a single arbitrator.  Each party shall bear its owns costs and expenses in preparing for and participating in the arbitration hearing except that each party shall pay one-half of the compensation payable to the arbitrator, one-half of any fees to the AAA and one-half of any other costs related to the hearing proceedings.   The arbitration award shall be final and binding on the parties, and judgment on the award may be entered in any court having jurisdiction.

Agmnt. Sched. F § 22.   Schedule F is self-defined as an "Order," and the Agreement itself identifies Green Tech as the "SUPPLIER."  Agmnt. at 1; Agmnt. Sched. F at 1 § A.

## B.      Standard for Dismissal or Stay in Favor of Arbitration

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), provides that pre-dispute agreements to arbitrate "evidencing a transaction involving commerce" are "valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  It directs federal courts, "upon being satisfied that [an] issue involved in [a] suit or proceeding is referable to arbitration under such an agreement, [] on application of one of the parties [to] stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3.  The FAA reflects "a liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011).

Generally, the issue of whether a particular dispute is subject to an arbitration agreement is a matter of law to be decided by the Court.   *See*, *e.g.*, *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Investments*, 553 F.3d 1351, 1366-67 (11th Cir. 2008); *Int'l Underwriters AG & Liberty Re-Insurance Corp., S.A. v. Triple I: Int'l Invs., Inc.*, 533 F.3d 1342, 1344 (11th Cir. 2008); *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001) ("Whether a party has agreed to arbitrate an issue is a matter of contract interpretation"). That is, the "threshold issue of arbitrability . . . is for the courts to decide unless the parties stipulate otherwise." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 647

(1986). "Under both federal and Florida law, there are three factors for the court to consider in determining a party's right to arbitrate: (1) a written agreement exists between the parties containing an arbitration clause; (2) an arbitrable issue exists; and (3) the right to arbitration has not been waived." *Sims v. Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004) (citing *Marine Envtl. Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003) and *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999)); *see also Beaver v. Inkmart, LLC*, 2012 WL 3834944, at *2 (S.D. Fla. Sept. 4, 2012) ("In reviewing a motion to compel arbitration, courts must consider three factors: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived."). Further, "[the FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983). Faced with a facially valid arbitration agreement, the burden is on the party opposing arbitration to demonstrate that the agreement is invalid or the issue otherwise non-arbitrable. *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000) ("[T]he party seeking to avoid arbitration bears the burden of establishing that Congress intended to preclude arbitration of the statutory claims at issue."); *Sims v. Clarendon Nat. Ins. Co.*, 336 F. Supp. 2d 1311, 1314 (S.D. Fla. 2004) ("The party opposing a motion to compel arbitration or to stay litigation pending arbitration has the affirmative duty of coming forward by way of affidavit or allegation of fact to show cause why the court should not compel arbitration.") (quotation omitted).

"By its terms, the [FAA] leaves no room for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470

U.S. 213, 213 (1985) (emphasis in original); *see also Telecom Italia*, 248 F.3d at 1114 ("Absent some violation of public policy, a federal court must refer to arbitration any controversies covered by the provisions of an arbitration clause.").   Thus, if the aforementioned criteria are met, the Court is required to issue an order compelling arbitration.  *John B. Goodman Ltd. P'ship v. THF Const., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003) ("Under the FAA, 9 U.S.C. § 1 *et seq.*, a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute."); *Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366 (11th Cir. 2008) ("The role of the courts is to rigorously enforce agreements to arbitrate.") (citation omitted).

## C.    The Agreement's Arbitration Clause Governs and Is Controlling

The arbitration clause in the Agreement – and not the arbitration language in either the LOI or the Purchase Order – governs RCCL's contractual cross-claims against Green Tech, and mandates arbitration of those claims.

Green Tech argues that the broad arbitration provision in the LOI requires dismissal of Royal Caribbean's cross-claims.   Indeed, the LOI is specifically incorporated into the Agreement.  However, by its own terms, the provisions of the LOI are "superseded in all respects by the terms and conditions" of the parties' then-contemplated and later-executed definitive Agreement.  The language of the LOI and the Agreement is clear:  the LOI is incorporated into *and* superseded by the express terms of the Agreement.  *Accord, e.g., Liberty USA Corp. v. Buyer's Choice Ins. Agency LLC*, 386 F. Supp. 2d 421, 426 (S.D.N.Y. 2005) (interpreting New York and Ohio law and holding that forum selection clause in agreement explicitly incorporated into contemporaneously executed agreement was superseded by the terms of the later

agreement).  The Agreement, which contains its own explicit arbitration clause, supersedes the LOI's provision on arbitration.

That said, and Royal Caribbean's protestations notwithstanding, the arbitration clause in the Agreement clearly covers the contract-based cross-claims asserted against Green Tech here. That clause provides that "[a]ny disagreement regarding *the interpretation or the operation* of this Agreement shall be determined by final and binding arbitration . . . [to] take place in London, England."  Agmnt. § IV.Y (emphasis added).  RCCL asserts that Green Tech breached its contractual duties under the Agreement by, *inter alia*, failing to pay Plaintiff's wages and to properly maintain insurance coverage for RCCL's benefit, and that Green Tech, also in breach of its contractual obligations under the Agreement, has failed to indemnify RCCL with respect to Plaintiffs' claims in the instant action.  Green Tech disagrees.  That disagreement regards the "interpretation" (i.e., what were Green Tech's obligations under a proper interpretation of the Agreement) or "operation" (i.e., did Green Tech act in accordance with or in abrogation of its obligations under the Agreement) of the Agreement.  Counts I and II of the Counter-Complaint fall squarely within the scope of the parties' agreement to arbitrate.[16]  *See Hemispherx Biopharma*, 553 F.3d at 1366-67 (court determines contract language regarding arbitrability); *Int'l Underwriters*, 533 F.3d at 1344 (same).

Royal Caribbean – both to establish venue in the Royal Caribbean Cross-Complaint and in opposing Green Tech's motion to dismiss the cross-claims – invokes the jurisdiction and forum-selection language in the Purchase Order, Schedule F to the Agreement.  Whatever the

---

[16] If this were not plain from the arbitration-selection language in the Agreement, the Court would, nonetheless, refer these claims to arbitration.  Here, the parties to the Agreement determined to submit to arbitration not only claims relating to the operation of the Agreement, but also disagreements over interpretation of the Agreement.  *See AT & T Techs*, 475 U.S. at 647 (parties can refer threshold issue of arbitrability to arbitration); *Moses H. Cone*, 460 U.S. at 24-25 ("any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .").

import of those provisions, the Agreement is crystal clear:  to the extent any schedule to the Agreement conflicts with the terms or conditions of the Agreement itself, the applicable provisions of the Agreement control.  *See* Agmnt. § IV.DD.  If the Purchase Order directs the parties to litigate their disagreements over the operation of the Agreement in a forum other than arbitration in London (such as before this Court), that direction is non-controlling.

In any event, it is entirely unclear that following the relevant language in the Purchase Order would counsel a different result.  The Purchase Order speaks of "an Order placed with a SUPPLIER in the United States" and, alternatively, "an Order placed with a SUPPLIER outside the United States."  Agmnt. Sched. F § 22.  Royal Caribbean attaches the geographic modifier to the "Order" at issue – the Purchase Order – which it understands is localized here in the United States.  However, as discussed above, the work contemplated by the Agreement and the Purchase Order was, both by intention and in practice, performed overwhelmingly outside of the United States.  Furthermore, a more direct reading of the Purchase Order would modify "SUPPLIER," not "Order," and Green Tech – the "SUPPLIER" here – is based in Norway.  Either of those later interpretations would call for arbitration (but, arbitration to be conducted here in south Florida).  Because the arbitration-selection clause in the Agreement governs, the Court need not resolve the comma-failure ambiguity in the Purchase Order.

### D.   RCL's Cross-Claims Are Improperly Pleaded

A cross-claim may only be asserted against co-parties in the action.  FED. R. CIV. P. 13(g) ("A pleading may state as a cross-claim any claim by one party against a coparty . . . ."); *U. S. Agr. Processors Mktg. Serv., Inc. v. Quinonez Hermanos, S.A.*, 73 F.R.D. 87, 89-90 (S.D. Fla. 1976) ("The language of 13(g) is clear that any cross-claim must be in part 'against a co-party'" and therefore "authorize(s) the assertion of . . . cross-claims . . . against . . . co-parties, but not

against strangers to the litigation.").  Counts IV and V are asserted against Green Tech by RCL.

Plaintiffs named RCL as a Defendant, but did not make RCCL a party to this action.  RCL first

appeared in this action as claimant and owner of the Defendant Vessel.  *See* ECF No. [16].  That

is, RCL appeared in order to act on behalf of the Vessel.  But that does not make RCL a co-

defendant of Green Tech with respect to the claims asserted by Plaintiffs.  In fact, the only cross-

claims asserted by RCL (and, they are asserted by RCL in its own capacity, not on behalf of the

Vessel) are for indemnity and contribution flowing from potential liability to Plaintiffs – but

RCL has not itself been sued by Plaintiffs.  Neither has RCL been properly joined to this action

in its own capacity (in accordance with Rules 19 or 20), nor has RCL sought to intervene in its

own capacity (in accordance with Rule 24).  Accordingly, Count IV, and Count V as asserted by

RCL, must be dismissed.

### E.     RCCL's Indemnity and Contribution Claims Will Be Stayed

RCCL's remaining cross-claims seek indemnity and contribution from Green Tech.

Those claims will be stayed pending arbitration of RCCL's contractual claims.[17]

Green Tech argues that the indemnity and contribution claims are not yet ripe for

adjudication because RCCL's liability to Plaintiffs has not yet been established, and encourages

the Court to dismiss the cross-claims on that basis.  There is some authority to suggest that

---

[17] Green Tech has subjected itself to specific personal jurisdiction in this forum with respect to the cross-claims asserted by RCCL.  As discussed above, constitutionally, exercising specific jurisdiction is proper when the suit arises out of or relates to the defendant's contacts with the forum.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) ("Due process requirements are satisfied when *in personam* jurisdiction is asserted over a nonresident corporate defendant that has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.") (quotation omitted); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851-54 (2011) (pertaining to specific jurisdiction).  Specific personal jurisdiction under Florida's long-arm statute, Fla. Stat. § 48.193, includes as a basis for jurisdiction breach of a contract requiring performance in Florida.  Fla. Stat. § 48.193(1)(a)(7).  The Agreement contemplated some performance by Green Tech in Florida – at the very least, indemnification for liability in the instant action.  RCCL has sued for breach of that obligation.  While RCCL and Green Tech agreed to arbitrate their dispute abroad, *see supra*, the Court has personal jurisdiction over Green Tech with respect to the Royal Caribbean Cross-Complaint sufficient to support the Court's staying, but eventual consideration, of RCCL's cross-claims for indemnity and contribution.

RCCL's claims are premature.  *See Armstrong v. Alabama Power Co.*, 667 F.2d 1385, 1388 (11th Cir.1982) (suit for indemnification and contribution should be dismissed as unripe where determination of liability on the underlying claim had yet to be made).  However, "contractual indemnity actions [under Florida law] can be filed prior to judgment in the underlying case." *BP Prods. N. Am., Inc. v. Giant Oil, Inc.*, 545 F. Supp. 2d 1257, 1260 (M.D. Fla. 2008) (citing *Chappell v. Scarborough*, 224 So. 2d 791, 796 (Fla. 1st DCA 1969); *see also Pleasant Valley Biofuels, LLC v. Sanchez-Medina, Gonzalez, Quesada, Lage, Crespo, Gomez & Machado LLP*, 2014 WL 1117254, at *2 (S.D. Fla. Mar. 20, 2014) (same, and rejecting argument that indemnification claim was premature).  Identically, "under Florida law, 'a claim for contribution can be brought as a cross-claim or a third party claim, on a contingent basis, prior to the payment.'" *Lexington Ins. Co. v. Morrow Equip. Co., LLC, LC*, 2010 WL 1029961, at *3 (S.D. Fla. Mar. 16, 2010) (quoting *Attorneys' Ins. Fund, Inc. v. Punta Gorda Isles, Inc.*, 547 So. 2d 1250, 1251 (Fla. 2d DCA 1989) and citing *Essex Builders Group, Inc. v. Amerisure Ins. Co.*, 429 F. Supp. 2d 1274, 1289 (M.D. Fla. 2005) ("Florida decisions hold that contingent claims of . . . contribution can be asserted prior to making payment.").

Regardless, because RCCL's common law indemnity and contribution claims (Counts III and V of the Royal Caribbean Cross-Complaint) are intertwined with and dependent on its claims against Green Tech for breach of the Agreement, in the interests of judicial economy, the indemnity and contribution claims will be stayed pending resolution of arbitration in England.[18] *See, e.g., Sanderson v. SPX Cooling Technologies, Inc.*, 2009 WL 426006, at *4-5 (M.D. Fla. Feb. 19, 2009) (finding that contribution claim arose from Florida statute and not the subject agreement, but nevertheless determining to stay consideration of that claim pending completion

---

[18] The Court notes that, to the extent RCL's cross-claims were not dismissed, *see supra*, they would be stayed pending arbitration for the same reasons.

CASE NO. 14-CIV-60885-BLOOM/Valle

of the arbitration proceedings).  *See also Shell Oil Co. v. Altina Associates, Inc.*, 866 F. Supp. 536, 540 (M.D. Fla. 1994) ("[A] court may exercise its inherent discretionary authority to stay cases to control its docket and in the interests of justice and efficiency."); *Cypress Chase Condo. Ass'n A v. QBE Ins. Corp.*, 2011 WL 1544860, at *5 (S.D. Fla. Apr. 15, 2011) ("Federal courts routinely exercise their power to stay a proceeding where a stay would promote judicial economy and efficiency.") (citing *Miccosukee Tribe of Indians of Fla. v. S. Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009)); *cf. Ortega Trujillo v. Conover & Co. Commc'ns*, 221 F.3d 1262, 1264-65 (11th Cir. 2000) (evaluating *sua sponte* imposition of stay for abuse of discretion, and explaining that stay would be inappropriate if not justified by, e.g., simple case management reasons or if immoderately indefinite).

**F.      Dismissal of the Cross-Claims Against Green Tech**

For the reasons discussed above, Counts I and II of the Royal Caribbean Cross-Complaint are dismissed, and the parties are directed to submit those claims to arbitration in accordance with Section IV.Y of the Agreement.  *See Dean Witter Reynolds*, 470 U.S. at 213 (1985); *Telecom Italia*, 248 F.3d at 1114; *John B. Goodman*, 321 F.3d at 1095.  Count III, and Count V as asserted by RCCL, are stayed pending resolution of that arbitration.  Count IV, and Count V as asserted by RCL, are dismissed without prejudice (but with the understanding that, if properly pleaded, would also be stayed).

**V.     AMT'S CROSS-CLAIMS**

AMT asserts cross-claims for common law indemnity and contribution against Green Tech and MG Norway arising from Plaintiffs' claims against AMT.  Green Tech and MG Norway seek dismissal of those claims as premature, for *forum non conveniens*, for lack of personal jurisdiction, and for improper service of process.

54

For the same reasons discussed above, *see supra* section IV.E, AMT's claims for indemnity and contribution are not premature – claims for indemnity and contribution can be brought in the same suit that determines the underlying liability.  However, as to *forum non conveniens*, AMT concedes that dismissal of its cross-claims against Green Tech and MG Norway must follow dismissal of Plaintiffs' claims against those parties and AMT.  *See* ECF No. [242] (AMT's Response) at 1-2, 12.  Because the Court has determined to dismiss for *forum non conveniens* all of Plaintiffs' claims relevant to determining Green Tech and MG Norway's liability as to AMT's cross-claims, *see supra* section II, AMT's cross-claims will be dismissed for the same reasons and on the same conditions.

## VI.   CONCLUSION

For the reasons discussed above, the Court determines that Plaintiffs' claims against all Defendants in this action are dismissed for *forum non conveniens*, in favor of the courts of either the United Kingdom of Poland and subject to the condition set forth below.  Had the Court not so determined, Plaintiffs' claims against MGG, Green Tech and MG Norway would be dismissed for lack of personal jurisdiction by the Court over those Defendants.  Counts I and II of the Royal Caribbean Cross-Complaint are dismissed in favor of arbitration; Count IV, and Count V as asserted by RCL, are dismissed without prejudice; and Count III, and Count V as asserted by RCCL, are stayed pending resolution of that arbitration.  AMT's cross claims are dismissed as well, for *forum non conveniens*.  Finally, Royal Caribbean's claims against AMT will be stayed pending resolution of RCCL's liability to Plaintiffs in the foreign forum.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      The MGG Motion to Dismiss, ECF No. [99], and MG Norway and MGG's joinder in such motion, ECF No. [144], is **GRANTED**, and all claims asserted in

Plaintiffs' Verified Complaint, ECF No. [1] are **DISMISSED for *forum non conveniens***, with the following **conditions**:

a.   In the event Plaintiffs determine to reinstate their claims in a court in the United Kingdom or Poland, such court accepts jurisdiction over all of the claims (or cognate claims) asserted by Plaintiffs' here and reasserted in that forum, and such court finds that it has personal jurisdiction over all of the defendants against whom Plaintiffs have asserted claims here and reasserted claims there.

b.   MGG, MG Norway and/or Green Tech files a notice with this Court within fourteen (14) days of notice of such determination or acknowledgment by a court in the United Kingdom or Poland in which Plaintiffs have reasserted their claims.

2.   The MGG Motion to Dismiss, ECF No. [99], is **GRANTED** with respect to personal jurisdiction by this Court over MGG with respect to Plaintiffs' claims asserted in the Verified Complaint, ECF No. [1].

3.   The Green Tech Motion to Dismiss, ECF No. [142], is **GRANTED** with respect to personal jurisdiction by this Court over Green Tech with respect to Plaintiffs' claims asserted in the Verified Complaint, ECF No. [1].

4.   The MG Norway Motion to Dismiss, ECF No. [143], is **GRANTED** with respect to personal jurisdiction by this Court over MG Norway with respect to Plaintiffs' claims asserted in the Verified Complaint, ECF No. [1].

5.   The Green Tech Motion on Royal Caribbean's Cross-Claims, ECF No. [195], is **GRANTED in part**, as follows:  Counts I and II of the Royal Caribbean Cross-

Complaint, ECF No. [95], are **DISMISSED**, and the parties are directed to **SUBMIT** those claims to arbitration in accordance with Section IV.Y of the (RCCL-Green Tech) Agreement; Count III, and Count V as asserted by RCCL, are **STAYED** pending resolution of that arbitration; and Count IV, and Count V as asserted by RCL, are **DISMISSED without prejudice** (but with the understanding that, if properly pleaded, would also be stayed pending resolution of that arbitration).

6.  Royal Caribbean's claims against AMT asserted in the he Royal Caribbean Cross-Complaint, ECF No. [95], are **STAYED** pending resolution of Plaintiffs' claims before the foreign tribunal.

7.  Green Tech and MG Norway's Motion on AMT's Cross-Claims, ECF No. [230], is **GRANTED in part**, as follows:  the cross-claims asserted by AMT against Green Tech and MG Norway are **DISMISSED for *forum non conveniens***, with the same **conditions** set forth in paragraph 1 above.

8.  This case is administratively **CLOSED**.  The Clerk is directed to **CLOSE** this case for administrative purposes.  Upon resolution of arbitration in accordance with Section IV.Y of the (RCCL-Green Tech) Agreement, either party may request that the Court re-open this matter.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 30th day of June, 2015.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

CASE NO. 14-CIV-60885-BLOOM/Valle

Copies to:
Counsel of Record