UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

AT LAW AND IN ADMIRALTY

CASE NO.: 14-60885-CIV-BLOOM

ANDREZEJ TARASEWICZ, individually, and
JOANNA PASCHILKE TARASEWICZ,
individually,

        Plaintiffs,

vs.

ROYAL CARIBBEAN CRUISES LTD., et al.,

        Defendants.

_____/

**<u>PLAINTIFFS' RESPONSE IN OPPOSITION TO GREEN TECH MARINE AS AND
MARINE GLOBAL NORWAY AS'S MOTION FOR SANCTIONS</u>**

## I.    INTRODUCTION

Green Tech Marine AS ("GTM") and Marine Global Norway AS ("MGN") have filed a Motion for Sanctions, arguing that pursuant to this Court's inherent power to impose sanctions, as well as the provisions of 28 U.S.C. § 1927, Plaintiffs and their attorneys have engaged in various forms of bad-faith conduct that purportedly warrant the imposition of sanctions. In actuality, GTM and MGN have identified conflicting testimony among witnesses and discrepancies in the accounts given by a stroke victim with well-documented cognitive impairment, loss of memory, and loss of executive function. As for Plaintiffs' counsel, all pleadings and conduct throughout this litigation have been undertaken in good faith, without any vexatious intent, and without any intent to "multiply proceedings." Because there is no basis for the imposition of sanctions, Plaintiffs and their counsel request that GTM and MGN's Motion be denied.

## II.    STATEMENT OF FACTS

Plaintiff Andrzej Tarasewicz worked on the M/V "Liberty of the Seas," owned by Defendant RCCL, between October and December 2012. Although there is a dispute concerning how long he continued working on the ship, he testified that he worked until the day he was evacuated from the ship, December 13, 2012. Deposition of Andrzej Tarasewicz, Vol. 3 (ECF No. [255-1]) pp. 285-86. While working on the ship, Plaintiff was exposed to hazardous working conditions, including sulfur dioxide and other toxic chemicals, lack of proper personal protective equipment, and extremely high temperatures. *See generally* Complaint (ECF No. [1]); Deposition of Andrzej Tarasewicz. These conditions directly contributed to his stroke, which was first diagnosed after he was evacuated from the ship, several hours after collapsing.

Plaintiffs initiated this action against several defendants. Due to the fact that many initially named defendants, including GTM and MGN, were located in Scandinavian countries, Plaintiffs had to engage in the mandatory process of having the complaint translated and served through the procedures set forth in the Hague Convention. Among other things, these procedures involve waiting for foreign "central authorities" to perfect service, a step over which the party initiating legal action has no control. As a result, it was several months before GTM, MGN, and related companies were served. After motions to dismiss were filed, and upon discussing the matter with defense counsel, Plaintiffs' counsel determined that several of these parties could be

dismissed. This Court approved of the dismissal, and noted in its Order that each party was to "bear its own fees and costs." ECF No. [206]

The deposition of Andrzej Tarasewicz took place over four days between January 6, 2015, and March 5, 2015. GTM and MGN did not participate in this deposition, either in person or by phone. In addition to testifying about his work, Mr. Tarasewicz was also asked about the contact he had had with his co-workers from the ship. He testified that he had virtually no contact with any of them, but had communicated via telephone phone once with Leszek Augustynek. ECF No. [255-1], pp. 243-44.

Notably, throughout the deposition, Mr. Tarasewicz experienced difficulties with understanding questions, remembering various details, and giving answers that logically responded to questions. Additionally, the entire deposition was a cumbersome process of interpreting English to Polish, then Polish to English, resulting in understandable frustration for both Mr. Tarasewicz and counsel conducting the deposition. *See, e.g.* Deposition of Andrzej Tarasewicz, Vol. 1 (ECF No. [153-2]): p. 27 (difficulty understanding question about airline ticket); p. 55 (plaintiff's counsel points out that plaintiff has brain damage); Vol. 2 (ECF No. [153-3] pp. 144-45 (difficulty translating questions, witness states that problems with memory make it difficult to reconstruct work history in 2009); pp. 147-48 (more difficulty understanding and questions about work history between 2002 and 2011); pp. 155-157 (difficulty understanding and answering questions about work equipment on "Liberty of the Seas"); Vol. 3 (ECF No. [254-1] p. 241 (difficulty understanding question about "name day" and work performed after name day); p. 245 (returns to question of work after name day because of misunderstanding the question); p. 259 (Poles are immune from disease since childhood); p. 270 (told ship doctor that he was hot and sweating; then translation problem); Vol. 4 (ECF No. [255-1] p. 327-28 (difficulty understanding questions about hours worked per day); pp. 344-345 (cannot remember e-mail between brother and GTM); pp. 359-60 (trouble with memory, part of his treatment is memory exercises); p. 367 (difficulty following questioning about his past wages); pp. 405-06 (discussion in Russian, defense counsel observes "I think it's getting off the rails here.").[1]

---

[1] These page references correspond approximately to the following videos:
Day 1, tape I, 47:00-49:30;
tape II, 7:20-8:05;
Day 2, tape I, 55:00-57:20; 1:00:50-1:05:45; 1:20:30-1:25:35;
Day 3, tape I, 29:20-31:45;

After this deposition, and before Leszek Augustynek's deposition, Plaintiffs produced all text messages between Malgorzata Kon (co-counsel for Plaintiffs) and Mr. Augustynek, which among other things disclosed that Mr. Tarasewicz had seen Mr. Augustynek on one occasion after his stroke, in March 2014. *See* ECF No. [273-34] (Exhibit to MGG Motion). Plaintiffs also produced Mr. Tarasewicz's cellular phone records (ECF No. [273-44]), which suggested a much larger number of text messages between him and Mr. Augustynek than he had recalled in his deposition.[2]

While this discovery was taking place, this Court was considering the various Motions to Dismiss, which this Court ultimately granted. Plaintiff Andrzej Tarasewicz has filed a Motion for Reconsideration.[3]  In that Motion, in communications to defense counsel, and in Plaintiff's Reply in support of that Motion, Plaintiff's counsel has consistently made clear that Plaintiff does *not* seek reconsideration of this Court's decision to dismiss GTM, MGN and Marine Global Group AS ("MGG").

Notwithstanding that Plaintiff is no longer pursuing claims against GTM and MGN in this Court, those companies have filed a Motion for Sanctions, arguing that Plaintiff, among other things, is engaging in vexatious conduct toward them by seeking to revive his claims against other parties.

## III.   ARGUMENT

GTM and MGN's Motion has no support in the law or in the record. It is instead an attempt to circumvent the general Maritime law, which adopts the American Rule,[4] by exploiting

---

tape II 00:10-2:30; 27:55-28:36; 51:50-53:00;
Day 4, tape I, 24:40-26:10; 1:02:30-1:06:40;
tape II, 13:56-16:00; 28:35-29:52; 1:50:00-1:51:50.
Plaintiff will file a Motion under separate cover for leave to submit these videos as exhibits.

[2] Although Plaintiffs do not dispute the authenticity of the cellular phone records, no witness has testified concerning what these records mean – for instance, each entry with Mr. Augustynek's phone number could represent a distinct text message, or could represent an attempt to send a text message, which may or may not have been successful. Regardless, it is clear from the records that the number of text messages was greater than what Mr. Tarasewicz recalled.

[3] Because the Motion for Reconsideration does not seek reconsideration of this Court's decision to dismiss the loss of consortium claim, the Motion was filed on behalf of Andrzej Tarasewicz only.

[4] MGN and GTM are Norwegian companies, and are therefore likely accustomed to litigating in a court system in which prevailing parties generally recoup fees and costs from non-prevailing parties.

the inconsistencies in the testimony of a plaintiff who has suffered a stroke, and mischaracterizing Plaintiff's counsel's efforts to narrow the issues of this case as bad-faith and vexatious conduct. In so doing, GTM and MGN have themselves multiplied this litigation, and have furthermore done so without any good-faith basis.

GTM and MGN make several false statements in their Motion, which is particularly troubling since they are at the same time accusing Plaintiff and his counsel of "egregious" conduct. Taken in order:

- Plaintiffs initiated this case "without having a shred of evidence supporting . . . jurisdiction over multiple Swedish and Norwegian Defendants." ECF No. [278], p. 5.

Plaintiffs were generally aware that these "Swedish and Norwegian Defendants" had participated in a scrubber installation project on a Florida-based cruise ship, had solicited business in Florida, and had sent employees to Florida. Prior to initiating this action, Plaintiff had pursued a workers' compensation claim against RCCL, which defended on the basis of allegedly not being his employer. In support of that defense, RCCL provided Plaintiff's counsel with the contract between RCCL and GTM (*see* ECF No. [220-2] pp. 45-81). This contract suggests that Green Tech was potentially a borrowing employer, and also refers to Marine Global Group AS (*id.*, p. 61). Naturally, more evidence was acquired after filing this case. With regard to GTM and MGN, the evidence concerning jurisdictional contacts is discussed below. With regard to the companies that Plaintiffs dismissed from this action before responding to Motions to Dismiss, those companies never challenged Plaintiffs' good-faith basis for bringing this action, nor did they ever contest the propriety of this Court's Order requiring them to maintain responsibility for their own fees and costs. *See* Order, ECF No. [206].

- Plaintiffs and their counsel initiated this case "knowing that Mr. Tarasewicz stopped working after November 30, 2012 before suffering a stroke nearly two weeks later" ECF No. [278], p. 5

Mr. Tarasewicz has testified that he worked on the ship up until the date he was evacuated. He informed his counsel of this work history prior to this action being initiated. If GTM and MGN were still parties to this case, they could not even have summary judgment granted on this issue, since there remains a dispute of fact on the point. It is outlandish to suggest to this Court that his alleged failure to work in December 2012 is "fact" in light of the record. If they wish to disprove this allegation, GTM and MGN could submit to this Court's jurisdiction

4

and continue litigating this claim. Until they prevail on this issue with a finder of fact, they should not be heard to proclaim the truth or falsity of any testimony.

Furthermore, GTM and MGN appear to suggest that if he had not worked in December, Plaintiff's case would have no basis. This is plainly false as well. Plaintiff's wage claim is based on his work in both November and December. As discussed more fully in Plaintiff's Reply in Support of Motion for Reconsideration, ECF No. [292] pp. 6-7 (and authorities cited therein), even if he had not earned wages in December, he would be entitled to unearned wages (sick pay). Finally, GTM and MGN appear to suggest that Mr. Tarasewicz's stroke could not be caused by his work conditions unless he worked in December. There would not appear to be any scientific support for that assumption, and to the contrary, Plaintiff contends that the work performed in October and November  2012 directly contributed to the evolving stroke that Plaintiff suffered in December.

- Plaintiffs did not sue ship.Zim because they wished "to circumvent Polish law under which Mr. Tarasewicz would not be entitled to compensation" ECF No. [278] p. 5

Plaintiffs initiated this action against the parties Plaintiffs believed were most likely ultimately responsible for Mr. Tarasewicz's wages, as well as for the actual work conditions on the ship. Wieslaw Zimmerman (who evidently constitutes ship.Zim for all intents and purposes) was not on the ship from October through December and could not be thought to be responsible for working conditions. Furthermore, Plaintiffs have consistently alleged that Plaintiff was employed by a borrowing employer on the ship, which would render ship.Zim's status as payroll employer irrelevant. As set forth in Plaintiff's Reply in Support of his Motion for Reconsideration (ECF No. [292]), p. 7, it is unlikely that the supposed "contract" was an actual contract at all, let alone an enforceable one.

- "Mr. Tarasewicz offered what can only be considered a bribe to the only witness partially favorable to him." ECF No. [278] p. 5

Here, GTM and MGN are obviously referring to Leszek Augustynek, who testified that he received a strange text message from Mr. Tarasewicz, in which Mr. Tarasewicz texted in broken, ungrammatical Polish that Mr. Augustynek "would not have to work hard" anymore, as Mr. Tarasewicz was planning to establish a foundation, in which Mr. Augustynek could have some role. *See* Deposition of Leszek Augustynek, Vol. 2 (ECF No. [246-2], pp. 276-79. There is

absolutely no context for this text message. Mr. Augustynek was clear that there was no discussion between him and Mr. Tarasewicz regarding any testimony that Mr. Augustynek would give in this case, or whether he would give any testimony at all. *Id.* For his part, Mr. Tarasewicz has no memory of sending such a text message. *See* Declaration of Andrzej Tarasewicz, attached hereto. Assuming that he did, and that he has forgotten (as he likely would, considering the state of his cognitive abilities and memory impairment), there is no basis to conclude that this was anything other than a strange text message that Mr. Augustynek saw and disregarded. It would certainly not be rational to consider it an actual "bribe" or offer of employment, since Mr. Tarasewicz was confined to a medical treatment facility after suffering a severe stroke, and could not be expected to have any capacity to establish a foundation, in Poland or anywhere else.

For GTM and MGN to truly *believe* that this was a "bribe," they would have to disregard the medical records that Plaintiffs' counsel provided to them, in which it is detailed that Mr. Tarasewicz suffers from cognitive impairment, loss of memory, and loss of executive function. *See* Decl. of Craig Lichtblau, M.D., Exhibit 2 (report of Richard A. Hamilton, Ph.D., Bates Numbered TarasewiczPLTF1488-1495).[5] The details of the text message in question show signs of cognitive impairment (the message was ungrammatical and generally did not make sense) and loss of executive function (which entails a lack of judgment, inability to make appropriate decisions, and inability to plan for the future). Clearly, Mr. Augustynek recognized that the message was a product of Mr. Tarasewicz's stroke. It is only GTM, MGN, and their counsel that would pretend that he has not suffered a stroke, and that messages like the one described by Mr. Augustynek could be taken seriously at all, let alone considered a "bribe."

- Plaintiffs have "acknowledge[ed]" that "there had never been adequate basis for naming any of the Norwegian and Swedish entities as Defendants in this case or opposing the motions to dismiss." ECF No. [278] p. 8

This is perhaps the most egregious falsehood appearing in the Motion. Counsel for GTM and MGN has made this blatantly false statement, evidently in an attempt to have this Court believe that Plaintiffs' counsel has communicated off the record with opposing counsel to "acknowledge" having acted in bad faith. Plaintiff's counsel has never suggested that they had no adequate basis for any pleading in this case. To the contrary, as discussed below, there is

---

[5] This Report was produced to all defendants as part of Plaintiffs' initial Rule 26 disclosures.

ample evidence to conclude that this Court could have exercised personal jurisdiction over GTM and MGN. The fact that they would resort to fabricating statements by Plaintiff's counsel is evidence enough that their Motion is without merit.[6]

Notwithstanding that their entire motion rests on misrepresenting the record in this case, GTM and MGN advance theories that they are entitled to have another party pay their legal fees pursuant to this Court's inherent powers to sanction parties for committing a fraud on the court, and under the provisions of 28 U.S.C. § 1927 (relating to sanctions for bad-faith, "vexatious" conduct). Because neither theory supports the imposition of sanctions, Plaintiffs respectfully request that this Court deny the Motion for Sanctions filed by GTM and MGN.

A.      **"Fraud on the Court"**

GTM and MGN appear to conflate the concepts of dismissal for "fraud on the court" and sanctions under this Court's inherent power. At the outset, Plaintiffs cannot understand why GTM and MGN would be requesting a dismissal due to fraud or any other reason, since there are no claims pending against them, and therefore none that could be dismissed. Nevertheless, Plaintiffs will address the arguments under both standards.

Regarding sanctions under the "inherent power" theory, this Court has set forth the standard more than adequately:

> 'Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates.' *Anderson v. Dunn,* 6 Wheat. 204, 227, 5 L.Ed. 242 (1821). Accordingly, 'it is firmly established that the power to punish for contempts is inherent in all courts.' *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 [](1991) . . . 'The imposition of sanctions [when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons] transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy." ' *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46 [](1991).
>
> 'The inherent power "is both broader and narrower than other means of imposing sanctions." While the other sanction mechanisms only reach certain individuals or conduct, "the inherent power extends to a full range of litigation abuses" and

---

[6] The syntax of this statement may suggest that the "acknowledgment" was to be found in Plaintiff's Motion for Reconsideration. Obviously, no such statement appears in that motion. Regardless of where GTM and MGN suggest this "acknowledgment" occurred, it is a fundamentally dishonest misrepresentation.

> "must continue to exist to fill in the interstices.' ' *Peer v. Lewis,* 606 F.3d 1306,
> 1314 (11th Cir.2010) . . . Jurists are cautioned that '[b]ecause of their very
> potency, inherent powers must be exercised with restraint and discretion.'
> *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 [] (1991)

*Miccosukee Tribe of Indians of Florida v. Cypress*, No. 12-22439-CIV, 2015 WL 235433, *10

(S.D.Fla. Jan. 16, 2015) (additional citations omitted).

On the other hand, dismissal for "fraud on the court" is warranted only

> 'where it can be demonstrated, clearly and convincingly, that a party has
> sentiently set in motion some unconscionable scheme calculated to interfere with
> the judicial system's ability impartially to adjudicate a matter by improperly
> influencing the trier or unfairly hampering the presentation of the opposing party's
> claim or defense.' . . .

> [D]ismissal for fraud . . . is the most extreme remedy and must be reserved for
> those situations where the 'defaulting party's misconduct is correspondingly
> egregious.'

*Inverpan S.A. v. Am. Express Bank Int'l*, No. 07-22071-CIVKING, 2009 WL 150657, at *4-5

(S.D. Fla. Jan. 21, 2009) (quoting and citing *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115 (1st Cir.

1989); *Vargas v. Peltz*, 901 F. Supp. 1572 (S.D. Fla. 1995)) ("something far more egregious"

than withdrawal of complaint verification for lack of personal knowledge, and inability to recall

dates and events in deposition, was required to justify sanctions, especially considering that

plaintiff had suffered a stroke). *See also Martin v. Automobili Lamborghini Exclusive, Inc.*, 307

F.3d 1332, 1336 n.2 (11th Cir. 2002) (sanctions appropriate for discovery abuse, threatening

letters, forged attorney signatures); *Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC*,

No. 12-22539-CIV, 2014 WL 5816585, at *8 (S.D. Fla. Nov. 10, 2014) (sanctions inappropriate

where there was a dispute of fact in the record concerning whether a document had been

fraudulently manufactured).

Courts require clear and convincing evidence of misconduct in order to impose sanctions.

*Barash v. Kates*, 585 F. Supp. 2d 1347, 1365-66 (S.D. Fla. 2006) (collecting cases).  Courts are

split regarding whether false testimony, standing alone, can warrant sanctions or dismissal of the

case. *Id.* At a minimum, though, the party seeking sanctions would have to prove clearly and

convincingly that there was false testimony, as opposed to a dispute in the record. *Latele*

*Television, supra.*

8

The following are the purported bases for concluding that Plaintiffs and/or their counsel have engaged in the sort of bad-faith, vexatious, oppressive conduct to support the imposition of sanctions, or, alternatively, the purported bases for concluding that Plaintiffs have engaged in an "unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter". *Inverpan, supra*.

<u>Mr. Tarasewicz and/or his counsel allegedly lie about having received threats</u>

To initiate this action, the Plaintiffs filed a Verified Complaint seeking, inter alia, to foreclose *in rem* maritime lien rights against the M/V "Liberty of the Seas". Per the Federal Rules of Civil Procedure and the Local Rules of this Court, a number of motions (*See generally,* ECF Nos. [1]-[11]) were filed to obtain the warrant of arrest to serve upon the vessel. As is typical in the maritime industry, the motions necessary to obtain the warrant of arrest were filed as "emergency motions." The motions were filed on an emergency basis given that the vessel is mobile and could be moved beyond the jurisdiction of this court at any moment. With regard to the "Liberty of the Seas", the vessel had the ability to enter international waters in a matter of minutes and was scheduled for a transcontinental crossing at our about the time the Verified Complaint was filed. In order prevent the vessel from being rescheduled for an immediate departure out of the jurisdiction upon the Defendants' discovery of the Plaintiffs' intent to assert an *in rem* claim, the Plaintiffs requested that the warrant of arrest be issued on an emergency basis. The Plaintiffs further requested that the case be sealed until such time as the warrant was served securing jurisdiction over the defendant vessel.

The <u>non-ship owning</u> Defendants now strangely assert that the Plaintiff should be sanctioned for filing the motion to seal the record because the motion contained a statement that Plaintiff had received threatening phone calls and unwelcome visitors. While it is true that this information was provided to Plaintiffs' counsel by Mr. Tarasewicz,[7] the emergency motions and the motion to seal the record were based on the fact that the vessel would be in port for only a limited time, and could leave the jurisdiction before the warrant was served. This is clearly reflected in the motions and Judge Zloch's order granting the motion to seal the record until the vessel was served. That the Plaintiff was threatened has little, if anything, to do with the

---

[7] In his deposition, he recalled none of these details. Plaintiffs note that one aspect of his post-CVA condition is that he has difficulty forming new long-term memories. *See* Lichtblau Decl. In other words, he forgot. This is not egregious conduct.

exigency related to the arrest of the vessel, and was clearly not the motivating factor behind the motions or the Court's ruling sealing the documents. This is confirmed by the fact that the warrant was immediately forwarded by Plaintiff's counsel to the Defendant vessel owner. The order sealing the record was also lifted as soon as the vessel owners posted security.

The Plaintiff's course of action is nothing new or novel, and is certainly not sanctionable. Maritime complaints seeking the arrest, attachment or garnishment of property are filed in all cases seeking to foreclose maritime lien rights for tort, provision of necessaries, salvage, etc. In fact, filing maritime complaints seeking the arrest of property under seal is a necessary result of the e-filing system given that the maritime industry, including the maritime bar (especially in South Florida), often monitor PACER for *in rem* claims being filed. As Defense counsel is fully aware, prior to e-filing, a maritime Plaintiff would walk his complaint through the Courthouse, obtain the warrant to deliver to the US Marshal within a few hours and the vessel would be arrested before any opportunity arose to flee the jurisdiction. With e-filing, the Complaint and the emergency motions necessary to obtain a warrant are now immediately public record and available on the internet within minutes of filing. Accordingly, if a maritime Plaintiff does not file under seal, he risks the vessel fleeing the jurisdiction before the US Marshal arrests. In this regard, it is important to remember that the US Marshal devotes staff for civil arrests at its convenience, and that criminal matters are given priority. Accordingly, it can be days before the US Marshal has the manpower to devote a Marshal to arrest the vessel even after the warrant is issued. During this time, it is critical that the complaint remain under seal, which is why the Plaintiff filed the motion in this matter. There is nothing new, novel, out of the ordinary or unusual about this. Sanctions are unwarranted.

<u>Mr. Tarasewicz and/or his counsel allegedly offer compensation to Augustynek</u>

Mr. Tarasewicz has no memory of the text message in question.  *See* Declaration of Andrzej Tarasewicz (attached to this Response). Mr. Augustynek testified that it seemed like it came from someone who was not quite in his right mind. Deposition of Leszek Augustynek, Vol. 2 (ECF No. [246-2]) pp. 276-79.  There is no evidence that Mr. Augustynek took it seriously, or even that anyone reasonably could take it seriously. Defendants have known since the time of initial disclosures that Mr. Tarasewicz has impairments related to (1) cognitive ability, (2) forming long-term memories, and (3) executive function (which pertains to the ability to make responsible decisions and plan for the future). *See* Lichtblau Decl., Ex. 2.

It is a reasonable enough conclusion that Mr. Tarasewicz engaged in very poor decision-making.  It is a great leap to conclude that this message was intended to convey, or actually did convey, to Mr. Augustynek that he should testify in this case, or that he should testify in a certain way, or that he would financially benefit from this lawsuit in any way. To be sure, it would be unusual for any rational adult to receive a text message like that one from a stroke victim in inpatient treatment, in a foreign country, and base any future decision-making on the contents of the message.

To the extent GTM and MGN may be referring to Mr. Augustynek's testimony about having received a child's toy from Plaintiffs' counsel, this polite gesture was not compensation for any statement or testimony, but instead was done to make up for the fact that Plaintiffs' counsel had taken up a great deal of Mr. Augustynek's time on a day when he had a limited amount of time to do some shopping while briefly off a ship.  *See* Declaration of Malgorzata Kon (attached to this Response).

The only legal authority cited in this section of GTM and MGN's Motion is *Platypus Wear, Inc. v. Horizonte Fabricacao Distribuicao Importacao Exportacao Ltda*, No. 08-20738-CIV, 2010 WL 625356 (S.D. Fla. Feb. 17, 2010). There, this Court denied a motion for sanctions regarding an alleged monetary inducement to a witness, concluding that the witness's testimony did not support the conclusion that he had been offered employment by the defendant's counsel, and furthermore that any question of whether there had been an attempt to offer such employment was properly a question for the jury. 2010 WL 625356 at *6.

As in *Platypus Wear*, this case involves a witness who testified that he did not think he had been offered employment by Plaintiff. Because there was never any offer to compensate Mr. Augustynek for any testimony in this case, and because the "bribe" in question never occurred, there is no basis to sanction Plaintiffs or his counsel. To the extent GTM and MGN are sincere in their professed belief that an attempt to bribe took place, this is a question that should be submitted to a jury.

<u>Mr. Tarasewicz "Lied" in his deposition about working in December and communicating with Augustynek</u>

As set forth above, Mr. Tarasewicz testified that he worked on the M/V "Liberty of the Seas" through December 13, 2012. Marek Sieniek and Leszek Augustynek testified that he did not work after November 30. Any experienced attorney should recognize this as a classic dispute

of material fact. It may be that a factfinder does not believe Mr. Tarasewicz's testimony, but until that occurs, it cannot be said that Mr. Tarasewicz's testimony is false for any reason, and certainly not as a result of intentional deceit.

It is, however, clear that Mr. Tarasewicz understated the amount of contact he had had with Mr. Augustynek in his deposition. As with so many other discrepancies in testimony, this must be viewed through the lens of his medical condition. People who have not suffered strokes can often forget many details of their lives over the course of two years. With stroke victims experiencing significant memory loss, it becomes simply absurd to argue that these discrepancies are the result of a conscious scheme to defraud. *See Inverpan, supra* (sanctions not warranted where stroke victim had inconsistent recollections and withdrew verification to complaint).

GTM and MGN's arguments are belied by the fact that Mr. Tarasewicz himself signed an authorization to permit the retrieval of the very cellular phone records that contradicted his testimony. Because the cellular provider would not accept that authorization, Plaintiffs' counsel ultimately served a subpoena for the records, and provided them to defense counsel *in native, searchable format* on the very day the provider responded to the subpoena.[8] If this had been a scheme to defraud, it would have to be considered very poorly executed, since counsel for all defendants were able to have Microsoft Excel search for Mr. Augustynek's phone numbers (which Plaintiffs' counsel also provided) and see how many entries there were. In fact, counsel clearly did so at the deposition of Mr. Augustynek. *See* Deposition of Leszek Augustynek, Vol. 3, ECF No. [246-3], pp. 552-53.

This Court considered more disconcerting circumstances without imposing sanctions in *McCarthy v. Am. Airlines, Inc.*, No. 07-61016-CIV, 2008 WL 2517129 (S.D. Fla. June 23, 2008). In that case, a plaintiff failed to disclose the existence of several treating physicians, despite being asked to name them in interrogatories. He also failed to disclose a relevant previous injury. This Court determined that these failures, when considered alongside the plaintiff's openness in other contexts, did not rise to the level of an "unconscionable scheme," and denied the defense motion, noting that any failures to disclose relevant information would at most be matters for the jury to consider when evaluating credibility.

---

[8] E-mails evidencing this production are attached hereto, collectively, as **Exhibit A**.

Because Plaintiffs assisted in gathering the very evidence that contradicts Mr. Tarasewicz's testimony, it cannot be said that there has been a scheme to defraud or deceive anyone, including this Court.

<u>Plaintiffs allegedly sued "Norwegian and Swedish entities that had<br/>absolutely no connection to the facts of this case"</u>

Prior to filing this case, Plaintiffs' counsel researched the various Norwegian and Swedish companies that were ultimately named as Defendants, employing Andrews International to assist with investigative services. It was, however, unclear what their various roles were in the scrubber project. Green Tech Marine, AS had an obvious role as a signatory to the contract with RCCL. The related companies seemed to be involved in some way with the prototype scrubber, and it proved difficult to pare down the defendants with sufficient certainty to risk letting the statute of limitations expire. Yara International acquired GTM before Plaintiffs filed suit, and Plaintiffs' counsel could not discern whether Yara had acquired any liabilities of GTM and if GTM was still an independent company amenable to service. Once GTM was served and filed its Motion to Dismiss, it became clear that Yara was an unnecessary party.  Plaintiffs then dismissed Yara.[9]

This chain of events is not extraordinary, and represents Plaintiffs' efforts to pare down the case early so that it included only the necessary parties. Since these companies formed a sort of Scandinavian "alphabet soup," it was hardly bad faith for Plaintiffs and their counsel to have exercised some caution before dismissing several defendants. Even Michael Thomas (principal of former Defendant AMT) expressed confusion over the various functions of these companies during the scrubber project. *See* Deposition of Michael Thomas, ECF No. [256-1], pp. 14-15, 139-40.

In any event, the decision to name related companies with similar names cannot be considered bad faith or "fraud" where it was Plaintiff's own decision to dismiss them prior to any motion to dismiss being heard or even fully briefed.

---

[9] Yara filed its Motion to Dismiss contemporaneously with all other defendants represented by Eric Christu. If Yara had communicated any concerns to Plaintiffs' counsel prior to filing its Motion, it is likely that Plaintiffs would have dismissed Yara earlier.

This case presents many undisputed material facts. For instance, no one disputes that Mr. Tarasewicz worked on the M/V "Liberty of the Seas" in October and November 2012, performing modifications to the prototype scrubber system. No one disputes that he suffered a stroke at some point prior to being evacuated from the ship on December 13, 2012, and that it was not diagnosed on the ship. No one disputes that he has significant health problems secondary to this stroke. There remain disputes concerning the cause(s) of the stroke and the details of what work Mr. Tarasewicz did and did not do aboard the ship.  As this Court observed in *Gyasi v. M/V "ANDRE"*, No. 07-23282-CIV, 2008 WL 162644 (S.D. Fla. Jan. 16, 2008), issues such as these are questions of fact that must be put through the ordinary discovery and fact-finding processes before anyone can be considered a "fraud."

 For the foregoing reasons, there is no basis to conclude that Plaintiffs or their counsel have engaged in anywhere near the sort of conduct that justifies the imposition of sanctions under this Court's inherent powers[10], or the dismissal of Plaintiffs' claims for "fraud on the court."

### B.    Sanctions under 28 U.S.C. s. 1927

The second purported basis for sanctions identified in GTM and MGN's Motion is 28 U.S.C. § 1927, the entire text of which is:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

"[T]his section is not a 'catch-all' provision for sanctioning objectionable conduct by counsel." *Schwartz. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). In order to be sanctioned under this statute, "an attorney must engage in unreasonable *and* vexatious conduct; this conduct must multiply the proceedings; and the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." *Schwartz*, 341 F.3d at 1225 (emphasis in original). Even if counsel's "performance did not rise to the highest standards of the profession,"

---

[10] For the sake of completeness, Plaintiffs also note that this Court must consider Plaintiffs' financial ability to pay sanctions prior to imposing them.  *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, I337 (11th Cir. 2002). In the case of Mr. Tarasewicz, there is no such ability, since he will never be fit for gainful employment again. *See* Lichtblau Decl. However, since he has done nothing to warrant the imposition of sanctions, this principle is inapplicable.

sanctions are not warranted unless there is bad faith. *Smith v. Grand Bank & Trust of Florida*, 193 F. App'x 833, 836 (11th Cir. 2006) (citation omitted); *Schwartz*, 341 F.3d at 1225. Section 1927 is "intended to deter an attorney from *intentionally* and unnecessarily delaying judicial proceedings". *LaSalle Nat'l Bank v. First Conn. Holding Group, LLC,* 287 F.3d 279, 288 (3d Cir.2002) (emphasis in original). *See also Amlong & Amlong, P.A. v. Denny's, Inc.,* 500 F.3d 1230, 1239–42 (11th Cir.2007) (noting that unreasonable and vexatious conduct under section 1927 occurs "only when the attorney's conduct is so egregious that it is tantamount to bad faith").

Plaintiffs will address the purported grounds for Section 1927 sanctions as alleged by GTM and MGN:

Plaintiffs had no basis for believing that the court could
exercise jurisdiction over GTM and MGN

Plaintiffs most assuredly had a good-faith basis to assert that this Court had at least specific personal jurisdiction over GTM and MGN. Under Florida's long-arm statute, the defendant's contacts with the forum need not be the "proximate cause" of the alleged injury – a "nexus" is sufficient. *Damoth v. Reinitz*, 485 So.2d 881, 883 (Fla. 2d DCA 1986); *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So.2d 79, 82 (Fla. 1st DCA 1994). The Due Process clause is satisfied if the defendants' contacts with the forum "are related to the cause of action alleged in the complaint" (*Madara v. Hall*, 816 F.2d 1510, 1516 n.7 (11th Cir. 1990) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8 & 9 (1984)), as long as there the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

In this case, there is evidence that would tend to show that Green Tech was the borrowing employer of the entire Polish team on the ship, including Plaintiff. *See Generally* Contract between RCCL and GTM (ECF No. [ ECF No. [220-2] (contractor sign-in sheets); Deposition of Marek Sieniek, Vol. 1 (ECF No. [251-1], p. 16 (Peter Strandberg was supervisor), p. 17 (Strandberg/Green Tech was "main boss"), p. 26 (Strandberg/Green Tech was employer). There is evidence that this team worked in Florida while employed by Green Tech. *See* Deposition of Marek Sieniek, Vol. 2 (ECF No. [251-1]) p. 271.

There is further evidence that the scrubber installation contract, including GTM's obligation to perform modification and repair work, arose from contacts with Florida. *See* ECF No. [184-1] (Declaration of Lucia Schneider); RCCL's Response to GTM's Motion to Dismiss, ECF No. [164] pp. 5-7.  These contacts include MGN's participation. *See* ECF No. [256-2] (exhibits to Michael Thomas deposition, including e-mails and invoices involving GTM, MGN, MGG, and Florida-based businesses).

Obviously, the central allegation in this case is that Plaintiff's injuries occurred because of his work on this scrubber project, and therefore all jurisdictional contacts associated with the scrubber project provide a "nexus" to this cause of action. Under these circumstances, Plaintiffs would have a colorable appellate issue concerning this Court's decision on personal jurisdiction grounds. The fact that Plaintiff has elected not to pursue this appellate issue does not indicate any bad faith or vexatious conduct in opposing the Motion to Dismiss.

Finally, GTM and MGN omit that RCCL also "vigorously" opposed motions to dismiss on jurisdictional grounds. Apparently, GTM and MGN assert that Plaintiffs' opposition was in bad faith, but not RCCL's. In fact, both oppositions were based on substantial evidence.

<u>Filing motion for reconsideration</u>

Plaintiff wishes to highlight that GTM and MGN are claiming it is ***vexatious toward them*** for Plaintiff to have filed a Motion for Reconsideration ***with respect to other parties***. Plaintiff cannot fathom how GTM and MGN considered it necessary to expend legal fees addressing a Motion that did not involve any claims asserted against them in this Court, let alone how they can consider those legal fees to be Plaintiffs' responsibility.

Beyond this fundamental point, the Motion is still pending and has not been decided, so cannot be said to have been filed in bad faith. Second, even if it is denied, Plaintiffs have made good-faith arguments that the original order was based on an erroneous application of law. Third, there is no evidence that it was filed with a vexatious motive or with an intent to "multiply proceedings." GTM and MGN's argument is simply a grasp at straws.

<u>Discovery requests</u>

There is one sentence in GTM and MGN's Motion concerning some discovery requests and responses, and even this slight mention constitutes "much ado about nothing." Plaintiffs served limited jurisdictional discovery upon GTM and MGN in the form of Requests to Produce on April 7, 2015 (attached hereto as **Exhibit B**). GTM and MGN served "responses" on May 11 (attached hereto as **Exhibit C**). The responses largely state that there are no documents, and are unclear with respect to whether some other documents exist, whether they are privileged, and when and how they will be produced in the future.[11] Between the time of the requests and the responses, this Court set a hearing on motions to dismiss, and RCCL and AMT had supplied ample evidence of GTM and MGN's jurisdictional contacts with this forum. Plaintiffs discerned that obtaining any of the potentially responsive documents from GTM and MGN would likely entail disputes over privilege and the manner and time of production. Since Plaintiffs had obtained evidence from other parties, and since May 11, 2015 was mere days before the hearing on motions to dismiss, it appeared that time would be better spent preparing for argument. Plaintiffs' decision not to follow up on this discovery was not a bad-faith or vexatious decision, but simply a judicious use of resources.

<u>Bad faith in bringing loss of consortium claim</u>

Mr. Tarasewicz and his wife are married. He testified that he is not planning to divorce his wife.[12] Deposition of Andrzej Tarasewicz, Vol. 4 (ECF No. [255-1] p.363.  Plaintiffs' loss of consortium claim was filed with Mrs. Tarasewicz's knowledge and permission.  The fact that they have been separated is a matter for the jury to consider in assessing damages.  *See Botag Mfg., Inc. v.* Kleinicke, 370 So.2d 92, 93 (Fla. 4th DCA 1979) (award of "zero dollars" for loss of consortium was "fair award" where jury heard evidence that separation began prior to accident). GTM and MGN have been aware of the separation since they began participating in this case,

---

[11] All documents exchanged by other parties in this case were produced electronically in PDF format. There is no indication of why GTM and MGN did not produce what was clearly a limited universe of documents in this manner, but instead opted to state that they would produce them at some unspecified future time.

[12] Plaintiffs are aware that a notation in Dr. Hamilton's report mentions that Mr. Tarasewicz is "divorced." This is an error, and anyway is contradicted by Mr. Tarasewicz's testimony.

since Mr. Tarasewicz testified on that point on the first day of his deposition. *See* ECF No. [153-2] p. 19.  A loss of consortium claim does not fail due simply to separation without divorce, and there has been no effort to obstruct access to evidence concerning the separation.

Claims of "abandonment"

Plaintiff contends that the defendants in this action effectively abandoned him in the United States to fend for himself. This allegation accurately reflects Mr. Tarasewicz's belief. *See* Hamilton Report (Ex. 2 to Lichtblau Decl.) p.3.  In opposition to this allegation, the defense group has consistently pointed to medical records indicating that a doctor at Broward Health told Mr. Tarasewicz that there was "a bed" for him in Poland. *See* ECF No. [99-1] (Beard Decl.) and Exhibit 8 thereto.  Mr. Tarasewicz was also informed that CEGA, an insurance company, arranged for a helicopter to remove him from the hospital and take him to Poland. There is no indication that anyone communicated with him in any meaningful way to assuage his legitimate concerns that there was no opportunity for medical treatment in Poland, nor was there any guarantee that CEGA or anyone else would maintain responsibility for medical expenses in Poland. The only guarantee was that CEGA would not pay for any further treatment in the United States. In other words, he may have been abandoned, but he was told beforehand that he would be abandoned. All arguments concerning the quality of care he was to receive in Poland have been supplied only after this lawsuit was filed, and a jury could conclude that these self-serving representations do not correspond to the reality that was awaiting Mr. Tarasewicz in Poland at that time. This allegation is supported by the evidence, was not brought in bad faith, does not represent vexatious conduct, and has not "multiplied proceedings."

Mr. Tarasewicz abused alcohol

The extent to which Mr. Tarasewicz consumed alcohol on the ship is a subject of much dispute. Mr. Tarasewicz acknowledges having consumed a significant amount of alcohol the night of his "name day" party, November 30, 2012.  Marek Sieniek testified that he saw Mr. Tarasewicz in the crew bar with a beer in front of him on one occasion between November 30 and December 13.  Deposition of Marek Sieniek, Vol. 1 (ECF No. [252-1] pp. 141-42, 146.

18

Royal Caribbean has produced receipts allegedly representing Mr. Tarasewicz's purchases of alcohol, which themselves do not suggest an amount of alcohol sufficient to case incapacitation.

Beyond this testimony, the "evidence" of Mr. Tarasewicz's drunkenness consists of witnesses' assumptions and the rumors they have heard. In particular, the rumor that Mr. Tarasewicz stole a bottle of liquor from a shop in the ship originates with an unidentified ship employee who spoke to Mr. Augustynek and informed him that a bottle had been stolen and that it may have been Mr. Tarasewicz who stole it. Sieniek Vol. 2 (ECF No. [251-1]) pp. 263-66; Augustynek Vol. 2 (ECF No. [246-2]) pp. 257-58. No witness with firsthand knowledge can say that any liquor was stolen from the ship at all, let alone by Mr. Tarasewicz. All testimony on this subject is inadmissible hearsay.

There is little doubt that, at some point, people on the ship believed that Mr. Tarasewicz was drunk. However, it is a well-documented phenomenon that stroke victims (especially fairly young ones) are often mistaken for being inebriated, and sometimes are even erroneously denied medical care because of such a mistake.[13] A jury very well could conclude that Mr.Tarasewicz's co-workers simply did not recognize the signs of a stroke.[14]

A jury could also conclude that Mr. Tarasewicz had been drinking alcohol, in which case the very supply of this alcohol would impose liability upon RCCL and the M/V "Liberty of the Seas." *See* Plaintiff's Reply, ECF No. [292] pp. 7-8. Any resolution of these questions is extremely premature, since at present no expert discovery has taken place, and this Court is in no position to determine what did and did not cause Mr. Tarasewicz's stroke.

It is understandable that companies defending a lawsuit such as this one would develop a defense theory that the plaintiff was a drunkard. However, GTM and MGN are asking this Court to accept that theory on hearsay and rumors, without evidence to support it. This Court should decline that invitation. Furthermore, GTM and MGN are asking this Court not only to conclude that this defense is meritorious, but to conclude that it is vexatious and in bad faith for Plaintiffs'

---

[13] *See, e.g.,* "The agony of stroke victims who doctors dismiss as drunk," accessible at http://www.dailymail.co.uk/health/article-2335448/The-agony-stroke-victims-doctors-dismiss-drun.html; "Stroke Victim Held 60 Hours as Drunk Driver," accessible at http://articles.philly.com/1986-11-17/news/26091335_1_stroke-victim-drunken-drive-drunk-driver.

[14] On this point, note Marek Sieniek's testimony describing a typical drunk person, and the similarities between that description and the description of a stroke victim. Sieniek Vol. 2 (ECF No. [251-1]), pp. 236-37 (slurring words, bloodshot eyes, staggering, difficulty with motor skills).

counsel to advance a different theory. This is simply too much of a leap. Plaintiffs' claims are supported by evidence. It is neither vexatious nor in bad faith to advance these claims.

### IV.   CONCLUSION

Once the distortions given to this Court by GTM and MGN are dispensed with, it is clear that this case has been supported both by good faith and substantial evidence since before it was filed. Although GTM and MGN have surely identified significant disputes among the parties, they have not been able to muster any support for the notion that Plaintiffs or their counsel have engaged in any bad-faith or vexatious conduct, or that anyone has set in motion a scheme to defraud any party or this Court. Instead, the Motion is based on the exploitation of Mr. Tarasewicz's documented mental deficits and a casual disregard of the actual record in this case. Green Tech Marine AS and Marine Global Norway AS's Motion for Sanctions should be denied.

Dated this **18**th day of September, 2015.

Respectfully submitted,

/s/      J. Eric Romano
John F. Romano
Florida Bar No. 175700
J. Eric Romano
Florida Bar No. 120091
Jeffrey V. Mansell
Florida Bar No. 112072
Romano Law Group
Post Office Box 21349
West Palm Beach, Florida   33416
Telephone:  (561) 533-6700
Facsimile:   (561) 533-1285
john@romanolawgroup.com
eric@romanolawgroup.com
jeff@romanolawgroup.com
Co-Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 18, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to:


Mario R. Arango, Esquire
De Varona, Arango & Weinstein, LLC
75 Valencia Avenue, Suite 100
Coral Gables, FL   33134
Tel:  (305) 441-7400
Fax:  (305) 441-7888
marango@lawd-a.com
Co-Counsel for Plaintiffs

Malgorzata J. Kon, Esquire
Kon & Associates, L.L.C.
2131 Hollywood Boulevard, Suite 201
Hollywood, FL   33020
Tel:  (954) 925-4102
Fax: (954) 925-4104
mkonlaw@aol.com
Co-Counsel for Plaintiffs

David W. McCreadie, Esquire
Eddie Goodwin, Esquire
Lau, Lane, Pieper, Conley, &
McCreadie, P.A.
Wells Fargo Center, Suite 1700
100 South Ashley Drive
Tampa, FL 33602
Tel: (813) 229-2121
Fax: (813) 228-7710
dmccreadie@laulane.com
Counsel for Defendant RCCL


Michael A. Rodriguez, Esquire
Florida Bar Number: 127256
Blank Rome LLP
1200 North Federal Highway
Suite 312
Boca Raton, FL 33432

Tel: (561) 417-8100
Fax: (561) 417-8101
MRodriguez@blankrome.com
and
W. Cameron Beard, Esquire and
William R. Bennett, III, Esquire
Blank Rome LLP
405 Lexington Avenue
New York, NY 10174
Tel: (212) 885-5000
Fax: (212) 8625001
Counsel for Marine Global Group, AS

Curtis J. Mase
Mase Lara
2601 South Bayshore Drive, Suite 800
Miami, Florida 33133
cmase@maselara.com
Counsel for Defendant Kjetil Gjerstad


Timothy P. Shusta, Esquire
Phelps Dunbar LLP
100 South Ashley Drive, Suite 1900
Tampa, FL  33602
Attorneys for AMT Marine and Industrial Engineering, Ltd.

Eric C. Christu, Esquire
Daria Pustilnik, Esquire
Shutts & Bowen, LLP
525 Okeechobee Boulevard, Suite 1100
West Palm Beach, FL  33401
echristu@shutts.com
dpustilnik@shutts.com
and
Philip A. Buhler, Esquire
Moseley Prichard Parrish Knight & Jones
501 West Bay Street
Jacksonville, FL  32202
pabuhler@mppkj.com

Attorneys for Movants
Green Tech Marine AS
 and
Marine Global Norway, AS

_____*/s/ J. Eric Romano*_____
John Eric Romano
Co-counsel for Plaintiffs